The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

FAITH INTERNATIONAL ADOPTIONS,
a Washington State non-profit corporation;
AMAZING GRACE ADOPTIONS, a North
Carolina non-profit corporation; and
ADOPT ABROAD INCORPORATED, a
Pennsylvania non-profit corporation,

         Plaintiffs,

      v.

MICHAEL R. POMPEO, Secretary for the
United States Department of State, in his
official capacity; CARL C. RISCH,
Assistant Secretary of State for Consular
Affairs, in his official capacity;
THEODORE R. COLEY, Director of the
Office of Children's Issues, in his official
capacity; UNITED STATES
DEPARTMENT OF STATE, and
COUNCIL ON ACCREDITATION FOR
CHILDREN AND FAMILY SERVICES;
INC., a New York not-for-profit corporation,

         Defendants.

Case No. 2:18-cv-00731-RBL

**DECLARATION OF JOHN J. MESKE,
J.D., ON BEHALF OF FAITH
INTERNATIONAL ADOPTIONS, IN
SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

I, John J. Meske, hereby declare as follows:

**I.      John J. Meske's Competency to Make This Declaration.**

     1.      I am over eighteen and am competent to make this declaration based upon

personal knowledge unless otherwise stated.

2.      I am Executive Director of Faith International Adoptions ("FIA"), a 501(c)(3) non-profit child placement and charitable relief agency licensed in the State of Washington.

3.      FIA's organizational structure consists of the Board of Directors, Executive Director, Assistant Director – Social Services, Assistant Director – Human Resources, Administrative Staff, and Social Workers (MSW and MA). Within this structure, we have a wonderful staff. (Kelsey Melvin, Assistant Director; Heather Powers, Human Resources; Shelby Vaver, Administrative; Mary Field, Administrative; and, multiple contracted social workers. Frankie Coleman, Case Manager, recently left his employment with Faith International Adoptions due to the loss of its accreditation.

4.      As FIA's Executive Director, I oversee FIA's operations, and I am personally familiar with them.

5.      Kelsey Melvin, MSW is the Assistant Director and head of Social Services. She provides oversight of the contracted social workers, performs pre-placement reports and post-placement reports, and provides case management. She keeps myself advised as to the case management and client progress in the adoption process, among other things.

6.      Heather Powers is the Assistant Director of Human Resources. She manages employee benefits and provides marketing services.

7.      Shelby Vaver is an Administrative Assistant.  She handles client contact and file management. She keeps me advised as to the client contacts, client concerns and client documentation.

8.      Mary Field is the Manager of Post Placement Services.  She maintains the post placement log and maintains contact with the clients to ensure their compliance with their post placement commitments. She keeps me advised as to the progress the clients are making on post placement reporting and any issues that clients are experiencing post adoption.

II.     **FIA Hague Accreditation History**

9.      FIA was incorporated in 1995.

MESKE DECLARATION IN SUPPORT OF
PLAINTIFFS' MOTION FOR                    - 2 -
PRELIMINARY INJUNCTION

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

10.     FIA has been an agency licensed under Washington law to perform child placement services since 1995.

11.     FIA has been Hague-accredited since 2008. FIA applied for reaccreditation for a 2013-2017 cycle and was approved, setting its expiration date for that cycle at March 31, 2017. FIA then received a one-time, one-year extension to March 31, 2018 under a special State Department regulation. FIA has never had its accreditation refused for renewal. Until now, FIA's experience with the IAA accreditation or reaccreditation application processes has been smooth, for the most part.

12.     FIA began its reaccreditation application in 2017. FIA filed its renewal application, completed its renewal agreement, and paid its renewal fee before December 29, 2017. FIA's site visit was completed in October 2017. As of November 20, 2017, when COA issued guidance for which renewal applications it would handle, FIA was accredited. COA continued to process FIA's latest reaccreditation application until March 31, 2018.

13.     FIA is unaware of any prior instance where the State Department has treated accrediting entity deferrals of reaccreditation decisions as if they were refusals to renew. FIA has understood that COA has broad discretion to defer a reaccreditation decision beyond an accreditation's expiration date.

**III.     Harms to FIA due to the State Department's Action**

14.     FIA will endure financial harm, because it will lose significant revenue over time if its reaccreditation application remains considered as a "refusal to renew" by COA, because FIA will need to apply as if it were a new accreditation applicant. Forcing FIA to proceed as a new applicant, despite no cause for receiving a refusal to renew, cancellation of accreditation, or debarment, would greatly and needlessly extend the time before FIA would be accredited again. This delay would exacerbate the financial losses that FIA would suffer by being forced to follow the latter process.

15.     On average, FIA generates the following revenue to conduct its operations. FIA cannot sustain these losses over a significant period of time, particularly while it awaits an

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

accrediting decision that would require a brand new accreditation application for Hague accreditation status. We are losing fees faster than any overhead costs are decreasing.

| Country | Approximate No. of Adoption Cases Lost per year[1] | Approximate Revenue Cost per Case | Total Projected Loss |
|---|---|---|---|
| Japan (to USA) | 25 | $8,600 | $215,000 |
| Japan (to Canada) | 30 | $8,600 | $258,000 |
| Guinea (to USA) | 10 | $8,600 | $86,000 |
| India (to USA) | 8-10 | $8,600 | $68,800 - $86,000 |
| Togo, Ghana, Tanzania, China (to USA) | 10 | $8,600 | $86,000 |

16.     Given the size of these financial losses, I have had to partially live off of my personal savings while we await this action's resolution.

17.     These financial harms could be minimized if COA could complete processing FIA's reaccreditation application immediately.

18.     The loss of the ability to open new programs, which derives from the financial harms that FIA has begun to feel, harms FIA's ability to fulfill its stated organizational commitment to providing loving and nurturing adoptive parents for children throughout the world who need a permanent family and stated dedication to matching caring parents with children who need them. Further, if FIA is forced to leave the international adoption space, yet another international adoption agency will be unable to serve the families we all love and exist to serve.

19.     These harms to FIA's organizational mission and operations could be minimized if COA could complete processing FIA's reaccreditation application immediately.

20.     FIA will also endure reputational injury from its loss of accreditation. Many prospective adoptive families have come to trust and promote FIA for its commitment to the

---

[1] These figures could be understated going forward and assuming FIA would receive a new Hague accreditation, given the reputational harm that comes along with having a "refusal to renew" on an accredited agency's record. Separately, these projections were based upon the number of FIA's applications, home studies, and completed adoptions from 2017. Although FIA was the only agency operating in Guinea and Japan, and both programs were increasing, FIA used a conservative projection.

MESKE DECLARATION IN SUPPORT OF
PLAINTIFFS' MOTION FOR                                        - 4 -
PRELIMINARY INJUNCTION

1  public interest, to the family as a fundamental social group, and to the best interests of children

2  everywhere. By losing its accreditation for any extended period, FIA's reputation will erode

3  with the public and perhaps even the families who came to trust FIA over many years. Further,

4  even a "refusal to renew" carries lingering negative consequences for adoption agencies that

5  try to reapply for Hague accreditation later.

6      21.    This reputational harm could be minimized if COA could complete processing

7  FIA's reaccreditation application immediately.

8      22.    Applying to IAAME for a new accreditation is not feasible for FIA, given how

9  long a new accreditation process would take, and IAAME has already stated that it would not

10  resume renewal applications where COA left off upon expiration of FIA's accreditation. In

11  either case, however, IAAME is not equipped to begin processing accreditation applications

12  until 2019, because they are a brand new entity and are just becoming familiar with their new

13  role as an accrediting entity for inter-country adoption agencies.

14  **III.    Exhibits**

15      23.    I certify that Exhibit A contains true and correct copies of correspondence

16  between FIA and its representatives and representatives of COA.

17      24.    I certify that Exhibit B is a true and correct copy of the November 15, 2017

18  PCR/Commission Review Report that FIA received from COA.

19      25.    I certify that Exhibit C is a true and correct copy of the February 21, 2018

20  PCR/Commission Review Report that FIA received from COA.

21      26.    I certify that Exhibit D is a true and correct copy of the March 23, 2018

22  PCR/Commission Review Report that FIA received from COA.

23      I declare under penalty of perjury pursuant to the laws of the United States that the

24  foregoing is true and correct.

25      Dated this 21st day of June, 2018, in Washington, D.C..

26

27  _____
   John J. Meske, JD

28  Executive Director, Faith International Adoptions

MESKE DECLARATION IN SUPPORT OF
PLAINTIFFS' MOTION FOR                                   - 5 -
PRELIMINARY INJUNCTION

1

2

**CERTIFICATE OF SERVICE**

3          I hereby certify that on the date below, I caused the foregoing document to be

4   electronically filed with the Clerk of the Court using the CM/ECF system which will send

5   notification of the filing to all counsel of record.

6

7   DATED:  June 21, 2018                    ORRICK, HERRINGTON & SUTCLIFFE LLP

8                                            By:  _/s/ Robert M. McKenna_____
9                                                 Robert M. McKenna (WSBA No. 18327)
                                                  rmckenna@orrick.com

10                                               701 Fifth Avenue, Suite 5600
11                                               Seattle, WA  98104-7097
                                                 Telephone:   206-839-4300
12                                               Facsimile:    206-839-4301

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MESKE DECLARATION IN SUPPORT OF
PLAINTIFFS' MOTION FOR                    - 6 -
PRELIMINARY INJUNCTION

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

# EXHIBIT A

Case 2:18-cv-00731-RBL   Document 21   Filed 06/21/18   Page 8 of 125



**Meske, John <john@faithadopt.org>**

## COA

**Richard Klarberg** <Rklarberg@coanet.org>
Reply-To: Rklarberg@coanet.org
To: john@faithadopt.org

Fri, Oct 6, 2017 at 11:29 AM

| COA Update | Email not displaying correctly?<br>_View it in your browser_. |
|---|---|



Dear Colleague,

As you know, the Department of State (the Department) is requiring COA to make significant changes in the nature and scope of our work in ways which will fundamentally change our responsibilities and role as an accrediting entity and which are inconsistent with COA's philosophy and mission.

Additionally, we have serious concerns regarding the impact of these changes in terms of (a) the potential further reduction in the number of children who are afforded the opportunity of finding permanent homes in the United States by virtue of their countries of origin having found the activities underlying those changes to be an infringement of their sovereign rights or unduly burdensome; (b) the sustainability of small ASPs given the anticipated significantly increased accreditation fees and costs; and, (c) the capacity of prospective adoptive parents to pursue intercountry adoptions due to the pass through of the these costs.

For more than 40 years, COA has been the leading accreditor of agencies providing child welfare services, including domestic and international adoption. We take these responsibilities very seriously. Accordingly, we have advised Assistant Secretary for Consular Affairs, Carl Risch, that these and other changed circumstances will render COA unable to perform its duties as an Accrediting Entity.

The next step will be for COA to meet with the Department to discuss a resolution. If one is not reached, we will continue to provide accreditation services during a 14 month transitional period after which our designation as an accrediting entity will end.

What does this mean for you? For now, please know that it is "business as usual". COA will continue to perform all of its accreditation and monitoring and oversight activities.

Given our long relationship with the Department and the adoption community and our commitment to supporting intercountry adoption, this has been a very difficult decision. It was taken only after lengthy consultations with members of the COA board, our senior staff and most especially with Jayne and her team. _She and they have_

*been and are nothing short of amazing.*

Thank you and have a great weekend.

Richard Klarberg
President & CEO

---

## Did you know COA has a blog?

---

    

**Council on Accreditation |** 45 Broadway, 29th Floor New York, NY 10006 | (866) 262-8088 | www.COAnet.org

Stay Connected! Manage your subscriptions to COA content.

*Copyright © 2017 by Council on Accreditation. All rights reserved.*

6/6/2018
Case 2:18-cv-00731-RBL Document 21 - Filed 06/21/18 - Page 10 of 125
FAITH INTERNATIONAL ADOPTIONS Mail - COA's Withdrawal as an AE and Transition Planning



**Meske, John <john@faithadopt.org>**

---

## COA's Withdrawal as an AE and Transition Planning

**Richard Klarberg** <Rklarberg@coanet.org>
Reply-To: Rklarberg@coanet.org
To: john@faithadopt.org

Mon, Nov 20, 2017 at 8:34 AM

---

| COA Update | Email not displaying correctly? <br> <u>View it in your browser</u>. |
| --- | --- |



Good Morning Colleagues,

I am writing to provide you with an update on COA's future plans as an Accrediting Entity (AE) under the intercountry adoption regulations. As you most likely read in the posting on State's website last Tuesday, we have decided to terminate the Memorandum of Agreement (MOA) with State.  The agreement will terminate on a date to be agreed upon by COA and the Department but no later than December of 2018.

Since that posting, we have been asked by several members of Congress and many others in the international adoption community to reconsider our decision.

We are certainly willing to do so if State is willing to reconsider – or at least pause – changes in the accreditation process which have been required by the Department which materially change our role as an AE as we believe was intended in the Intercountry Adoption Act and which are significantly different from the understanding we had when we entered into the original MOA in 2006 and the July 2016 renewal. They also are different from the way we have worked with families and ASPs for almost 10 years.

Equally concerning is the fact that these changes are projected to result in significantly higher accreditation fees thus negatively impacting the number of adoptees, PAPs and ASPs. We have repeatedly brought this to the attention of State in writing and in person but to no avail.

Today many of you will participate in a conference call regarding COA's withdrawal and the transition from COA to IAAME. It was our suggestion to the Department that one or more conference calls be held for ASPs with COA and IAAME to respond to questions about the transition. Regrettably, COA (and presumably IAAME) were expressly excluded from participating. We are therefore reaching out to you separately to let you know that you can direct your questions about COA's withdrawal to us and - more importantly - to assure you that COA is committed to ensuring a careful and meticulous transition to IAAME.

Please know that we have been in touch with IAAME and have expressed our willingness to support it as it

assumes its responsibilities. COA staff and I are actively coordinating transition plans with IAAME. There are many details to work out and the first of which relates to planning for ASPs currently in process renewing accreditation or approval, those who expire in 2018, and then ASPs who expire in early 2019. Based on our agreement with the Department terminating in December of 2018, COA has determined the following.

Effective immediately COA will not accept applications/agreements for accreditation or approval from ASPs which are not currently accredited or approved. Additionally, COA will only accept applications for renewal from ASPs which:

- are currently accredited or approved with an expiration date sometime in 2018;
- file a complete application, complete the renewal agreement, and make payment of the fee by December 29, 2017; and
- agree to complete a site visit by May 31, 2018.

Because the renewal process takes 13 months, ASPs whose accreditation or approval expires in 2019 will need to file applications for renewal with IAAME.

COA will continue to process and complete its review of all applications currently in process (ASPs who signed accreditation agreements and paid accreditation fees by November 15, 2017).

We continue to be deeply committed to international adoption and to the entire international adoption community. Should our relationship with State end sooner than currently planned for whatever reason, we will work closely with IAAME as needed to transfer any in-process applicants to it.

We will continue to keep you apprised of any developments with regard to any of the above issues. For now, the COA board, volunteers and staff wish you and your loved ones a joyous Thanksgiving.



Richard Klarberg
President & CEO



Council on Accreditation | 45 Broadway, 29th Floor New York, NY 10006 | (866) 262-8088 | www.COAnet.org

Stay Connected! Manage your subscriptions to COA content.

Copyright © 2017 by Council on Accreditation. All rights reserved.



Melvin, Kelsey <kelsey@faithadopt.org>

## Deferral Report

**John Meske** <john@faithadopt.org>                                     Wed, Feb 21, 2018 at 9:10 AM
To: Darrell Woodliff <dwoodliff@coanet.org>
Cc: Kelsey Melvin <kelsey@faithadopt.org>

Hi Darrell.

Thank you so much for your prompt reply and assistance. Will let you know if we receive it today.

Have a nice day.

John J. Meske

On Feb 21, 2018, at 9:07 AM, Darrell Woodliff <dwoodliff@coanet.org> wrote:

> Thank you John for this.  I just spoke with the Commission Dept. and they will be sending it out today.  If
> you do not have it by the COB today, please reach back out to me for me to follow up.  Thanks so much.
>
>
>
>                    **Darrell Woodliff**, MSE | Site Visit Manager
>                    Council on Accreditation
>                    45 Broadway, 29th Floor | New York, NY 10006
> <image001.png>    main (212) 797-3000 x 208 | toll free (866) 262-8088
>                    fax (212) 797-1428
>
>
>                    **website | COA Blog | vCard | email**   <image002.gif><image003.gif><image004.gif><image005.gif>
>
>
> **Confidentiality Note:** This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended
> recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-
> mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.
>
>
>
> <image006.png>
>
>
>
>
> **From:** Meske, John [mailto:john@faithadopt.org]
> **Sent:** Wednesday, February 21, 2018 11:49 AM
> **To:** Darrell Woodliff <dwoodliff@coanet.org>; Kelsey Melvin <kelsey@faithadopt.org>
> **Subject:** Fwd: Deferral Report
>
>
> We received a auto response from Mr. Murch saying that he is out of the office and to contact you.

I am sending you a copy of the email asking that you immediately send us the deferral report. It was due to us two weeks ago.

Thank you for your assistance.

## John J. Meske, JD

Executive Director, Faith International Adoptions

1105 Tacoma Avenue South, Tacoma, WA 98402

Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

---------- Forwarded message ----------
From: **Meske, John** <john@faithadopt.org>
Date: Wed, Feb 21, 2018 at 8:43 AM
Subject: Deferral Report
To: Tobi Murch <tmurch@coanet.org>, Jayne Schmidt <Jschmidt@coanet.org>, Kelsey Melvin <kelsey@faithadopt.org>

Dear Mr. Murch.

I hope that this email finds you well.

As you are aware, on December 22, 2017 Faith International submitted its responses to the PCR report to your office.

On January 23, 2018 you sent us an email telling us that a Deferral Report was being issued and that we would receive it in 15 days. As of today, February 21, 2018, we still have not received the report.

Our COA accreditation is valid through March 31, 2018. We need to receive the deferral report immediately so that we have adequate time to file our response and have our accreditation not lapse.

Please kindly understand that this delay in providing us with the deferral report could cause issues with the accreditation. Please send us the deferral report as soon as possible.

Thank you for your attention to this matter.

**John J. Meske, JD**

Executive Director, Faith International Adoptions

1105 Tacoma Avenue South, Tacoma, WA 98402

Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.



✦ FAITH
INTERNATIONAL

**Meske, John <john@faithadopt.org>**

## Re: Commission Results Available in MyCOA Portal (3084)

**Richard Klarberg** <Rklarberg@coanet.org>                         Tue, Feb 27, 2018 at 6:50 AM
To: Rebecca Slife <rslife@coanet.org>
Cc: "Meske, John" <john@faithadopt.org>, Marissa Kirshenbaum <mkirshenbaum@coanet.org>, Kelsey Melvin <kelsey@faithadopt.org>

Becky - As always a professional and well constructed response. Thanks.
Richard

On Feb 27, 2018, at 9:24 AM, Rebecca Slife <rslife@coanet.org> wrote:

Hello John,

Thank you for your explanation--Kelsey outlined this as well. COA understands that the services that an ASP provides as a Primary Provider are sometimes different for completed cases (i.e. we may be looking at 96.46c, as opposed to 96.46 a, b in reference to the relationship with supervised providers), but that does not exempt an ASP from developing a service plan and determining who is providing or has provided all adoption services, verifying services that that been performed, and operating in accordance with applicable laws or foreign countries. We frequently get questions from ASPs about these types of cases, and I would be happy to talk through the requirements and expectations with you if you have questions.

Thank you,

Becky

**From:** Meske, John [john@faithadopt.org]
**Sent:** Monday, February 26, 2018 3:53 PM
**To:** Rebecca Slife
**Cc:** Marissa Kirshenbaum; Richard Klarberg; Kelsey Melvin
**Subject:** Re: Commission Results Available in MyCOA Portal (3084)

Hi Rebecca,

Thank you so much for your prompt reply. I am sure that you can understand the stress of all of this. We are working on the responses and will get them out this week.

As far as the home study case that we did for a relative case in Ethiopia, we are making contact with the family to get the information from the Ministry that permitted them to adopt. Please note that their adoption was already complete and their I-600 filed with the Embassy when they contacted us. They were told by the Embassy that they needed to have a home study from a Hague Accredited agency. We provided the home study for the family. We did not participate in their earlier relative adoption as we did not work in Ethiopia. Again, the adoption was already completed by the time the family contacted us. We understand that OCI is now holding us and other agencies as the primary provider even though the adoptions were

16

done prior to the family contacting the agency. In some cases the adoptions were completed years in advance.

Thank you for your help Rebecca. I appreciate this.

John

## John J. Meske, JD

Executive Director, Faith International Adoptions

1105 Tacoma Avenue South, Tacoma, WA 98402

Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

On Mon, Feb 26, 2018 at 12:45 PM, Rebecca Slife <rslife@coanet.org> wrote:

Hello John,

Thank you for being in touch. I had a productive call with Kelsey this morning and it sounds like much of your response is already in process of being compiled. I reviewed your record and see that your PCR response was submitted in December which scheduled the agency to be reviewed on 1/18/2018. On 1/22/2018 the Commission notified you of the results of this meeting and stated that the deferral report would be sent to you within 15 business days, which would be 2/12/2018. I believe it was sent to you on 2/21/2018. I apologize for the delay in sending you the repot. As such, I had mentioned to Kayley this morning that when the evidence was compiled and ready to be submitted, I would request whether the Commission (and more specifically the assigned Commissioner) would be able to accept a submission for review at the 3/15 meeting. I hope this is a reasonable option for you; and please let me know if you have any questions as you continue to work on your deferral response.

Thank you,

Becky

17

**From:** Meske, John [john@faithadopt.org]
**Sent:** Monday, February 26, 2018 3:26 PM
**To:** Marissa Kirshenbaum; Richard Klarberg; Kelsey Melvin
**Cc:** Rebecca Slife
**Subject:** Re: Commission Results Available in MyCOA Portal (3084)

Hi Marissa,


Thank you for sending this over on February 21, 2018. We are disappointed that we are now being told that the commission will not look at our responses until March 29, 2018, which is only 2 days prior to our expiration. I am stunned that we are now being put in a position, at no fault of our own, of our accreditation expiring due to the late response in providing us with the PCR report. We provided our initial response to COA on December 21, 2017 and only received the response on February 21, 2018. We have not been provided with an explanation for the length of time it took you to issue the report on February 21, 2018. In January we were told that we would have the report in 15 days. We will gather the remaining items requested and forward it to you hopefully this week. We kindly ask that you then immediately have our case reviewed so that our accreditation does not expire.


Thank you for your immediate attention to this matter.



**John J. Meske, JD**


Executive Director, Faith International Adoptions

1105 Tacoma Avenue South, Tacoma, WA 98402

Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org


The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.


On Wed, Feb 21, 2018 at 5:22 PM, Marissa Kirshenbaum <mkirshenbaum@coanet.org> wrote:




Dear Colleague:

COA's Accreditation Commission has completed its review of Faith International Adoptions, Inc.'s submission and was unable to change all of the ratings in the report. The resulting Commission Report is now available for download under My Documents on Faith International Adoptions, Inc.'s My COA Portal Dashboard. The Commission Report contains specific recommendations and indicates the key areas in which COA is requesting additional evidence.

For your convenience, we have also attached the report to this email as a pdf document.

Please review and follow the PCR/Commission Response Tip Sheet for instructions on how to upload, save, and submit the Commission Evidence requested in the Commission report.

**All Commission Evidence should be submitted to COA by Faith International Adoptions, Inc.'s Commission Response due date, 4/23/2018.** As a reminder, the evidence is submitted using the "Submit Evidence" tab.

The Commission meets regularly to review organization/program/agency responses to the PCR or Commission report. Click here for a list of Commission review dates, and the corresponding due dates for the Commission to receive submitted evidence. You may choose to submit evidence according to these Commission due dates, and when possible, COA will accommodate Commission Review at an earlier meeting.

Sincerely,

Marissa Kirshenbaum
Manager of Accreditation Commission
mkirshenbaum@coanet.org





**FAITH**
INTERNATIONAL

Melvin, Kelsey <kelsey@faithadopt.org>

## Fwd: Deferral Notification (Org ID# 3084 )

**Meske, John** <john@faithadopt.org>
To: Rebecca Slife <rslife@coanet.org>
Cc: Kelsey Melvin <kelsey@faithadopt.org>

Mon, Mar 19, 2018 at 2:08 PM

Rebecca this is crazy. What is missing? Are we to now to transfer all of our cases?

Kelsey please bring me the transfer plans so we can discuss with the Board immediately. We will then send it to Rebecca.

This is very unfortunate.


John


## John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928  |  Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

On Mon, Mar 19, 2018 at 2:05 PM, Rebecca Slife <rslife@coanet.org> wrote:
Hello John and Kelsey,

COA's procedures provide us with 15 days to complete the deferral report. As we are sensitive to the fact your agency is expiring, we will surely prioritize this to complete it more quickly so that you can begin to work on the items that remain deficient.

Regardless, it is likely that the agency's accreditation will expire, given the timing of the next Commission meeting, and you may need to execute your case transfer plan. Please go ahead and begin notifying stakeholders of your pending expiration at this time. I will review your case transfer plan shortly and provide feedback.

You're welcome to be in touch with questions as you work on this.

Becky

**From:** John Meske [john@faithadopt.org]
**Sent:** Monday, March 19, 2018 11:20 AM
**To:** Rebecca Slife; Kelsey Melvin
**Subject:** Fwd: Deferral Notification (Org ID# 3084 )

Hi Rebecca.

You can image our disappointment in receiving this. Can you please let us know what the commission felt that we were deficient in ore response right away?  As you know our accreditation expires on Mar. 31. We are not given enough time to respond if receive the material in 10 days.

Thank you for your cooperation and assistance.

John J. Meske

Begin forwarded message:

> **From:** Tobi Murch <tmurch@coanet.org>
> **Date:** March 19, 2018 at 7:36:06 AM PDT
> **To:** "john@faithadopt.org" <john@faithadopt.org>
> **Cc:** "rslife@coanet.org" <rslife@coanet.org>
> **Subject: Deferral Notification (Org ID# 3084 )**
>
>
> Dear Mr. Meske,
>
> The March 15, 2018 Commission assigned a deferral status to your organization. A report with the specific recommendations from this Commission Meeting will be sent to you within the next fifteen days. If you have any further questions, feel free to contact me at your convenience.
>
> Thank you,
>
> Tobi Murch
> Director of Volunteer Engagement
> 212-797-3000 ex. 272
> tmurch@coanet.org



**Meske, John <john@faithadopt.org>**

## RE: Faith International Adoptions #3084 Active Families

**Rebecca Slife** <rslife@coanet.org>                                            Tue, Mar 20, 2018 at 6:06 AM
To: John Meske <john@faithadopt.org>
Cc: "kelsey@faithadopt.org" <kelsey@faithadopt.org>

Hello John,

In these cases I would first reach out to the central authority for suggestions. If you let me know what countries you are referring to, I can reach out to ASPs who we have record of doing a few cases in the country.

Becky

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Monday, March 19, 2018 11:32 PM
**To:** Rebecca Slife <rslife@coanet.org>
**Cc:** kelsey@faithadopt.org
**Subject:** Re: Faith International Adoptions #3084 Active Families

What are we supposed to with clients where we are the only American agency accredited by the central authority of a country?

John J. Meske

On Mar 19, 2018, at 7:52 PM, John Meske <john@faithadopt.org> wrote:

Hello Rebecca.

I cannot tell you how greatly disappointed that we are in this position. Why is COA not doing everything possible to avoid our accreditation from expiring?

Is it because COA is trying to force the closure of Faith International?

Why can't COA immediately inform us of what they feel we are deficient at? So that we can provide a response immediately to avoid a loss of our accreditation?

22

We have always provided COA with everything requested of us in a timely manner. Has COA done the same for us? Delays have put us in this position.

Do you understand the damage this will cause Faith and the harm on our clients?

John J. Meske

On Mar 19, 2018, at 6:51 PM, Rebecca Slife <rslife@coanet.org> wrote:

Hello Kelsey and John,

I reviewed your case transfer plan and appreciate that you were able to provide it so quickly. I do have some feedback, questions, and required revisions, and look forward to receiving a revised plan addressing my comments below by next Monday, March 26th.

1. COA is able to agree to the plan of having your China and India cases transferred to Children's House International, and your Japan cases transferred to Across the World Adoptions. Your plan also names CHI as accepting all of your African programs cases (Guinea, Ghana, Tanzania, Uganda, and Togo) though we do not see that CHI has a program in any of these countries. In order for COA to agree to this, please confirm 1) whether CHI would need to be authorized to work in these countries and 2) how you are planning to inform clients that you are recommending transferring cases to an ASP without a program in the country

2. Please provide a revised client list that specifies any fees paid for services that have not yet been rendered and are subject to refund

3. Please provide a revised list that includes any clients in post placement phase, as those cases are not yet finalized and therefore have adoption services to be provided and overseen by an accredited ASP.

4. Please provide evidence that any named ASPs has agreed to take cases (an email is sufficient, though you are welcome to provide any agreements you have)

5. Please provide draft communication for your clients of notifying them of the pending expiration and general information regarding the transfer plan.

As you work on this, please let me know if you have any questions.

Becky

23

**From:** Rebecca Slife
**Sent:** Monday, March 12, 2018 1:41 PM
**To:** Rebecca Slife
**Subject:** FW: Faith International Adoptions #3084 Active Families


**From:** Melvin, Kelsey [mailto:kelsey@faithadopt.org]
**Sent:** Friday, March 09, 2018 7:05 PM
**To:** haguecompliance <haguecompliance@coanet.org>
**Cc:** John Meske <john@faithadopt.org>
**Subject:** Faith International Adoptions #3084 Active Families


Hello,


Please find attached our current list of active families. This is being sent to you as requested in the Notification of Expiration of Hague Accreditation letter, which we received from COA on March 1, 2018. If you require any additional information, please let us know.


Thank you,

Kelsey Melvin, MSW

Assistant Director
FAITH INTERNATIONAL ADOPTIONS
1105 Tacoma Avenue South
Tacoma, WA 98402
Phone (253) 383-1928
FAX (253) 572-6662
www.faithadopt.org

This e-mail, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged &/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me via return e-mail or via telephone at (253) 383-1928 and permanently delete the original and any copy of any e-mail and any printout thereof.

24

Faith International Adoptions Mail - Commission Results Available in MyCOA Portal



Meske, John <john@faithadopt.org>

## Commission Results Available in MyCOA Portal

**Tobi Murch** <tmurch@coanet.org>
To: "john@faithadopt.org" <john@faithadopt.org>
Cc: "rslife@coanet.org" <rslife@coanet.org>

Fri, Mar 23, 2018 at 1:10 PM



Dear Colleague:

COA's Accreditation Commission has completed its review of Faith International Adoptions, Inc.'s submission and was unable to change all of the ratings in the report. The resulting Commission Report is now available for download under My Documents on Faith International Adoptions, Inc.'s My COA Portal Dashboard. The Commission Report contains specific recommendations and indicates the key areas in which COA is requesting additional evidence.

For your convenience, we have also attached the report to this email as a pdf document.

Please review and follow the PCR/Commission Response Tip Sheet for instructions on how to upload, save, and submit the Commission Evidence requested in the Commission report.

**All Commission Evidence should be submitted to COA by Faith International Adoptions, Inc.'s Commission Response due date, 4/23/2018.** As a reminder, the evidence is submitted using the "Submit Evidence" tab.

The Commission meets regularly to review organization/program/agency responses to the PCR or Commission report. Click here for a list of Commission review dates, and the corresponding due dates for the Commission to receive submitted evidence. You may choose to submit evidence according to these Commission due dates, and when possible, COA will accommodate Commission Review at an earlier meeting.

Sincerely,

Tobi Murch
Director of Volunteer Engagement
tmurch@coanet.org

25



**Meske, John <john@faithadopt.org>**

## RE: Confirmation of PCR Submission

**Rebecca Slife** <rslife@coanet.org>                                    Tue, Mar 27, 2018 at 6:59 AM
To: "Melvin, Kelsey" <kelsey@faithadopt.org>, John Meske <john@faithadopt.org>

Hello,

I can confirm receipt of your Commission response. I will update you when I know when the agency has been assigned for a review.

**From:** Melvin, Kelsey [mailto:kelsey@faithadopt.org]
**Sent:** Monday, March 26, 2018 8:43 PM
**To:** Rebecca Slife <rslife@coanet.org>; John Meske <john@faithadopt.org>
**Subject:** Confirmation of PCR Submission

Hi Rebecca,

I hope you are well. I am writing to confirm that we have submitted the documents for our most recent PCR report. We expedited our response with the hope that we can receive our re-accreditation before it expires on Saturday. Any help you can provide us in this regard is greatly appreciated.

Thank you,



## Kelsey Melvin, MSW

**Assistant Director**
FAITH INTERNATIONAL ADOPTIONS
1105 Tacoma Avenue South
Tacoma, WA 98402
Phone (253) 383-1928
FAX (253) 572-6662
www.faithadopt.org

This e-mail, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged &/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me via return e-mail or via telephone at (253) 383-1928 and permanently delete the original and any copy of any e-mail and any printout thereof.



**Meske, John <john@faithadopt.org>**

## Re: Confirmation of PCR Submission

**John Meske** <john@faithadopt.org>
To: Rebecca Slife <rslife@coanet.org>
Cc: "Melvin, Kelsey" <kelsey@faithadopt.org>

Tue, Mar 27, 2018 at 7:08 AM

Hi Becky. I hope this can be done this week to avoid having our accreditation expire.

Thank you for your understanding and support.

John J. Meske

On Mar 27, 2018, at 6:59 AM, Rebecca Slife <rslife@coanet.org> wrote:

Hello,

I can confirm receipt of your Commission response. I will update you when I know when the agency has been assigned for a review.

**From:** Melvin, Kelsey [mailto:kelsey@faithadopt.org]
**Sent:** Monday, March 26, 2018 8:43 PM
**To:** Rebecca Slife <rslife@coanet.org>; John Meske <john@faithadopt.org>
**Subject:** Confirmation of PCR Submission

Hi Rebecca,

I hope you are well. I am writing to confirm that we have submitted the documents for our most recent PCR report. We expedited our response with the hope that we can receive our re-accreditation before it expires on Saturday. Any help you can provide us in this regard is greatly appreciated.

Thank you,

<image002.png>

Kelsey Melvin, MSW
Assistant Director
FAITH INTERNATIONAL ADOPTIONS
1105 Tacoma Avenue South
Tacoma, WA 98402
Phone (253) 383-1928
FAX (253) 572-6662
www.faithadopt.org

28



FAITH
INTERNATIONAL

Meske, John <john@faithadopt.org>

## Commission review

Rebecca Slife <rslife@coanet.org>
To: "john@faithadopt.org" <john@faithadopt.org>
Cc: "Melvin, Kelsey" <kelsey@faithadopt.org>

Thu, Mar 29, 2018 at 12:38 PM

Hello John,

I am writing to notify you that, based on the timing of the submission of your Commission response and our review timelines, Faith's response will be reviewed at the next Commission meeting on 4/19/2018. Therefore, the agency's accreditation will expire on 3/31/2018 and COA will request that you implement your case transfer plan immediately. As you complete this, please do not hesitate to contact me with questions. I know that this can sometimes be complex and case-specific questions may arise, and I would be happy to discuss these with you.

Regards,



**Rebecca Slife, LMSW** | Intercountry Adoption Accreditation Manager
Council on Accreditation
45 Broadway, 29th Floor | New York, NY 10006
toll free (866) 262-8088
fax (212) 797-1428

**website | COA Blog | vCard | email** 

**Confidentiality Note:** This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.



Please consider the environment before printing this email.



**FAITH**
INTERNATIONAL

Meske, John <john@faithadopt.org>

## Re: Commission review

**John Meske** <john@faithadopt.org>                                                           Thu, Mar 29, 2018 at 12:47 PM
To: Rebecca Slife <rslife@coanet.org>
Cc: "Melvin, Kelsey" <kelsey@faithadopt.org>, Rklarberg@coanet.org, dsulkosky@aol.com, stewartlawtacoma@gmail.com,
mattjoli@comcast.net

We sent in our response in one business day, this Monday. You are telling us, in light of the expiration date, that the
commission could not review it? This is so bad.

We are so disappointed in COA. We have always been supportive and timely in our responses. It is unbelievable how we
have been treated but I guess we should have expected this.

We will address the transfer plan and seek legal counsel and whatever legal options that are available to us. The damage
this causes cannot begin to be measured. COA needs to insure that all memos, commission activities and everything
done on our case is preserved.

This is beyond any sense of reasonableness.

John J. Meske

On Mar 29, 2018, at 12:38 PM, Rebecca Slife <rslife@coanet.org> wrote:

> Hello John,
>
> I am writing to notify you that, based on the timing of the submission of your Commission response and our
> review timelines, Faith's response will be reviewed at the next Commission meeting on 4/19/2018.
> Therefore, the agency's accreditation will expire on 3/31/2018 and COA will request that you implement
> your case transfer plan immediately. As you complete this, please do not hesitate to contact me with
> questions. I know that this can sometimes be complex and case-specific questions may arise, and I would
> be happy to discuss these with you.
>
>
> Regards,
>
>
>
> **Rebecca Slife, LMSW** | Intercountry Adoption Accreditation Manager
> Council on Accreditation
> 45 Broadway, 29th Floor | New York, NY 10006
> toll free (866) 262-8088
> <image001.png>fax (212) 797-1428
>
>                                                            <image002.gif><image003.gif><
>                 **website | COA Blog | vCard | email**    image004.gif><image005.gif>

**Confidentiality Note:** This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the
intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you
have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system.
Thank you for your cooperation.

 **FAITH**
INTERNATIONAL

**Meske, John <john@faithadopt.org>**

## Re: Commission review

**John Meske <john@faithadopt.org>**
To: Rebecca Slife <rslife@coanet.org>
Cc: "Melvin, Kelsey" <kelsey@faithadopt.org>, Rklarberg@coanet.org, dsulkosky@aol.com, stewartlawtacoma@gmail.com, mattjoli@comcast.net

Thu, Mar 29, 2018 at 1:13 PM

Before this spins completely out of control we are requesting that our case be reviewed immediately if possible in light of the expiration in an effort to avoid the damage and costs that Faith and its families will suffer.

We have been extremely timely in the filing of our responses.

Thank you for this consideration.

John J. Meske

On Mar 29, 2018, at 12:47 PM, John Meske <john@faithadopt.org> wrote:

> We sent in our response in one business day, this Monday. You are telling us, in light of the expiration date, that the commission could not review it? This is so bad.
>
> We are so disappointed in COA. We have always been supportive and timely in our responses. It is unbelievable how we have been treated but I guess we should have expected this.
>
> We will address the transfer plan and seek legal counsel and whatever legal options that are available to us. The damage this causes cannot begin to be measured. COA needs to insure that all memos, commission activities and everything done on our case is preserved.
>
> This is beyond any sense of reasonableness.
>
> John J. Meske
>
> On Mar 29, 2018, at 12:38 PM, Rebecca Slife <rslife@coanet.org> wrote:
>
>> Hello John,
>>
>> I am writing to notify you that, based on the timing of the submission of your Commission response and our review timelines, Faith's response will be reviewed at the next Commission meeting on 4/19/2018. Therefore, the agency's accreditation will expire on 3/31/2018 and COA will request that you implement your case transfer plan immediately. As you complete this, please do not hesitate to contact me with questions. I know that this can sometimes be complex and case-specific questions may arise, and I would be happy to discuss these with you.
>>
>> Regards,
>>
>> <image001.png>**Rebecca Slife, LMSW** | Intercountry Adoption Accreditation Manager
>> Council on Accreditation
>> 45 Broadway, 29th Floor | New York, NY 10006



**FAITH**
INTERNATIONAL

<div align="right">Meske, John &lt;john@faithadopt.org&gt;</div>

## Re: Commission review

**John Meske** &lt;john@faithadopt.org&gt;
To: John Jolibois &lt;jjolibo@co.pierce.wa.us&gt;

<div align="right">Thu, Mar 29, 2018 at 6:06 PM</div>

The best number is 253-383-1928. I really appreciate the support John.

John J. Meske

On Mar 29, 2018, at 5:12 PM, John Jolibois &lt;jjolibo@co.pierce.wa.us&gt; wrote:

What is the best number to reach you at if they want to call you?

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Thursday, March 29, 2018 5:05 PM
**To:** John Jolibois &lt;jjolibo@co.pierce.wa.us&gt;
**Subject:** Re: Commission review

Totally open tomorrow.

Thanks John

John J. Meske

On Mar 29, 2018, at 5:03 PM, John Jolibois &lt;jjolibo@co.pierce.wa.us&gt; wrote:

I have folded in Cantwell's office as well.

What is your schedule like tomorrow and Monday?

- John

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Thursday, March 29, 2018 5:02 PM
**To:** John Jolibois &lt;jjolibo@co.pierce.wa.us&gt;
**Subject:** Fwd: Commission review

This is another agency that has suffered as a result of COA.

John J. Meske

Begin forwarded message:

**From:** chi4adopt &lt;chi4adopt@aol.com&gt;
**Date:** March 29, 2018 at 4:37:39 PM PDT
**To:** John Meske &lt;john@faithadopt.org&gt;
**Cc:** Kelsey Melvin &lt;kelsey@faithadopt.org&gt;
**Subject:** Re: Fwd: Commission review

Oh no, I'm so sorry!!! This is just horrible. I'm so sorry for you, your staff and families, children associated.

I hope the families will just want to sit tight for you. Maybe COA will met again sooner than 19. They could do that. Call Cantwell's office too!! They are aware of this kind of stuff.

32

Let's keep in touch. I'm back Do you want to talk tomorrow?

Thanks, Debbie

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------

From: John Meske <john@faithadopt.org>

Date: 3/29/18 1:10 PM (GMT-08:00)

To: chi4adopt@aol.com

Cc: Kelsey Melvin <kelsey@faithadopt.org>

Subject: Fwd: Commission review

Hi Debbie.

I cannot believe that COA allowed our accreditation to lapse. On Friday afternoon they sent us a commission report asking about the work we do with the agencies in Canada for Japan. We sent it in on Monday. The Commission met today. Rebecca sends this email telling us the next meeting is April 19. I am stunned Debbie.

They are the worst.

I will be filing the Complaint with the SBA and see what legal remedies we have.

We will contact the families tomorrow and advise of their transfer rights.

Thanks for your help.

John J. Meske

Begin forwarded message:

> **From:** John Meske <john@faithadopt.org>
> **Date:** March 29, 2018 at 12:47:49 PM PDT
> **To:** Rebecca Slife <rslife@coanet.org>
> **Cc:** "Melvin, Kelsey" <kelsey@faithadopt.org>, Rklarberg@coanet.org, dsulkosky@aol.com, stewartlawtacoma@gmail.com, mattjoli@comcast.net
> **Subject:** Re: Commission review
>
> We sent in our response in one business day, this Monday. You are telling us, in light of the expiration date, that the commission could not review it? This is so bad.
>
> We are so disappointed in COA. We have always been supportive and timely in our responses. It is unbelievable how we have been treated but I guess we should have expected this.
>
> We will address the transfer plan and seek legal counsel and whatever legal options that are available to us. The damage this causes cannot begin to be measured. COA needs to insure that all memos, commission activities and everything done on our case is preserved.
>
> This is beyond any sense of reasonableness.

33

John J. Meske

On Mar 29, 2018, at 12:38 PM, Rebecca Slife <rslife@coanet.org> wrote:

Hello John,

I am writing to notify you that, based on the timing of the submission of your
Commission response and our review timelines, Faith's response will be reviewed at
the next Commission meeting on 4/19/2018. Therefore, the agency's accreditation
will expire on 3/31/2018 and COA will request that you implement your case transfer
plan immediately. As you complete this, please do not hesitate to contact me with
questions. I know that this can sometimes be complex and case-specific questions
may arise, and I would be happy to discuss these with you.

Regards,

**Rebecca Slife, LMSW** | Intercountry Adoption Accreditation Manager
Council on Accreditation
45 Broadway, 29th Floor | New York, NY 10006
toll free (866) 262-8088
<image001.png> fax (212) 797-1428

**website | COA Blog | vCard | email**   <image002.gif><image003.gif><
image004.gif><image005.gif>

**Confidentiality Note:** This e-mail and any attachments are confidential and may be protected by legal
privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use
of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us
immediately by returning it to the sender and delete this copy from your system. Thank you for your
cooperation.

<image006.png>

34

 **FAITH** INTERNATIONAL

**Melvin, Kelsey <kelsey@faithadopt.org>**

# URGENT

**Meske, John** <john@faithadopt.org>                                    Fri, Mar 30, 2018 at 9:50 AM
To: Richard Klarberg <Rklarberg@coanet.org>, Jayne Schmidt <Jschmidt@coanet.org>, Kelsey Melvin <kelsey@faithadopt.org>, mattjoli@comcast.net, Doug Chalke <doug@sunriseadoption.com>

Hi Richard,

I hope this email finds you well. Happy Easter.

As you are aware, our agency has been in the re-accreditation process with your office since Oct.1, 2017 when we had our site review. We actually started the preparation of documentation in May of 2017 and uploaded the documents well in advance of the site review. We scheduled the site review in October so "that there was sufficient time to complete the re-accreditation process." Our accreditation expires tomorrow on March 31, 2018.

Here is a brief background on what has transpired:

We began preparing for the re-accreditation in May of 2017. The COA volunteers and one staff member came to our office for the site review from Oct. 1-Oct. 4. They left and said how good of an agency we were and how much our adoptive families appreciated us. At that time the site reviewers were presented with case files wherein Faith acted as a supervised provider for the Hague Accredited agencies in British Columbia, Canada in our Japan program. The site reviewers declined to review the files because **"they were not subject to review by COA, per 96.25." This language was written in the Commission Comment dated 1/18/18.**

We got the first response from the site review in late November of 2018. They asked us to redraft some policies and gather some information and send it to them by sometime in January. We completed the responses and sent them in on December 22, 2018.

On January 22, 2018 we received an email from COA saying that the commission issued a Deferral Report and **that we would receive it in 15 days. We did not receive the deferral report until February 26, 2018. That was more than 30 days after being advised that it would be to us in 15 days. We did not receive the commission report until February 26, 2018 asking us to respond by April 23, 208 (which is past our expiration date of March 31, 2018). This delay was due to no fault of Faith International.**

**On March 5, 2018 we submitted our responses and received an email back saying that they would put on the commission for review on March 15, 2018 instead of the previously scheduled review of March 29, 2018.**

**Then late in the day on Friday, March 23, 2018 we received another Deferral Notice asking, for the first time, questions about the work we provide as an exempt provider to the Hague accredited agencies in Vancouver BC. This was commented on in the Commission Report of 1/18/18, where it was noted that these cases were not subject to review by COA. We immediately put the answers together and submitted them on March 26, 2018 hoping they would review the 5 answers on March 29, 2018. This was done in one business day.**

Lastly, on March 29, 2018, we received an email from COA that stated the following:

**I am writing to notify you that, based on the timing of the submission of your Commission response and our review timelines, Faith's response will be reviewed at the next Commission meeting on 4/19/2018. Therefore, the agency's accreditation will expire on 3/31/2018 and COA will request that you implement your case transfer plan immediately. As you complete this, please do not hesitate to contact me with questions. I know that this can sometimes be complex and case-specific questions may arise, and I would be happy to discuss these with you.**

What is important to note is that our submission of our Commission Response was submitted in one business day and uploaded to the portal on Monday, March 26, 2018. In light of our expiration date and the limited information requested we are surprised that the Commission did not review our response.

As a result we are now put in a position of suffering significant damage to our reputation due to our accreditation expiring, at no fault of our own. This damage cannot be measured in monetary value.

I am respectfully requesting your immediate intervention into this matter. Can you please have our response reviewed today in an effort to avoid the lapse in our accreditation  and the damage that will occur if we expire due to COA not reviewing our response. We will have no option but to retain legal counsel, at further great expense to our agency. We would like to avoid this if possible so that is why I am writing this email so that it can be documented. It is 9:48 pm Pacific Time on march 30, 2018.

We have always been supportive of COA and I am respectfully asking for your support and immediate review of our response.

Thank you for very much for your cooperation and assistance.

We

## John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928  |  Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.



Meske, John <john@faithadopt.org>

## Update regarding your pending application for renewal

**Jayne Schmidt** <Jschmidt@coanet.org>                              Fri, Mar 30, 2018 at 1:06 PM
To: "john@faithadopt.org" <john@faithadopt.org>
Cc: Richard Klarberg <Rklarberg@coanet.org>

Dear John,

I hope this email finds you well. Unfortunately, I'm writing to advise you that there may be a change with regards to COA's procedures for reviewing the application you filed for renewal due to a directive COA received from the Department of State.

It has been COA's understanding since drafting a transition plan with IAAME, that COA would complete its review of all applications that were in process at the time COA withdrew as an accrediting entity and applications submitted by ASP expiring in 2018 who signed an agreement and agreed to have a site visit by May of 2018. Earlier this week, we wrote to the State Department and IAAME to advise them of the status of your pending application. We also advised State Department and IAAME of some details of our process for applicants seeking renewal who expire while that application for renewal is pending and asked the Department and IAAME to verify certain implications for IAAME relating to its assumption of Monitoring and Oversight of Accredited Agencies on 4/1/18.

In the event of Expiration of Accreditation for ASPs with Pending Renewal Applications

In the event that any of these ASPs are not granted renewal prior to 3/31, it is our understanding that because they would not be accredited on 4/1 that IAAME will not assume any Monitoring and Oversight Responsibilities over these ASPs and not charge / receive any fees from them, until such time as they are granted accreditation again. COA will transfer the file to IAAME after a final decision is made on their application.

COA will incorporate into its review, any open compliance issues into the Commission's review and decision on the ASPs application to ensure the necessary corrective actions are complete. COA will not charge the ASP a Monitoring and Oversight Fee because they will not be accredited during this lapse. The cost of COA's review of the outstanding compliance issues will be covered by the renewal fee they have already paid.

The Department responded advising COA of the following procedures it should follow:

"With respect to the ASPs mentioned below, if their accreditation expires and they wish to seek accreditation again, they must first request and obtain permission to make a new application for accreditation from COA, while COA is still designated as an AE. If COA grants the ASP permission to reapply, the ASP may apply for accreditation or approval as a new applicant and, per the AE transition Plan, the ASP should file its application with IAAME. The Department recently approved IAAME's policies, procedures and tables of evidence. IAAME may now accept applications for accreditation and approval. After March 31, COA may no longer continue to review or make any decision in relation to the ASP's accreditation application. To the extent COA may be working with the ASP's on corrective action, any corrective action would be moot as of the expiration date as the ASP would no longer be accredited."

37

We have sent 2 additional emails to the Department expressing our concern over their decision to require COA to operate under new and different procedures and requesting they reconsider. We have not yet received a response to our latest request for reconsideration of their decision, but felt it was important to advise you of this situation.

We will keep you apprised of the situation.

If you have questions, please direct them to Richard Klarberg and I.

Best regards,

Jayne Schmidt

Director of Hague Accreditation

Council on Accreditation

## ☘ FAITH
### INTERNATIONAL

Meske, John <john@faithadopt.org>

# Re: Update regarding your pending application for renewal

**John Meske** <john@faithadopt.org>
To: Jayne Schmidt <Jschmidt@coanet.org>
Cc: Richard Klarberg <Rklarberg@coanet.org>

Fri, Mar 30, 2018 at 1:23 PM

Hi Jayne.

This is very disturbing as it appears that COA was advised one week ago that the DOS consider our application in progress to be required to be completed by March. 31. In that light failing to review our final response but us in a grave situation.

To require us to reapply with the new accrediting body would effectively close our agency.

Can you please have our final response be reviewed today or tomorrow to see if our re-accreditation can be issued?

Please try. We should not be in this position and receiving this news the day before our expiration.

It feels that DOS is trying to close our agency for no reason.

Please advise if you can complete the review or extend our accreditation pending a resolution.

John J. Meske

On Mar 30, 2018, at 1:06 PM, Jayne Schmidt <Jschmidt@coanet.org> wrote:

Dear John,

I hope this email finds you well. Unfortunately, I'm writing to advise you that there may be a change with regards to COA's procedures for reviewing the application you filed for renewal due to a directive COA received from the Department of State.

It has been COA's understanding since drafting a transition plan with IAAME, that COA would complete its review of all applications that were in process at the time COA withdrew as an accrediting entity and applications submitted by ASP expiring in 2018 who signed an agreement and agreed to have a site visit by May of 2018. Earlier this week, we wrote to the State Department and IAAME to advise them of the status of your pending application. We also advised State Department and IAAME of some details of our process for applicants seeking renewal who expire while that application for renewal is pending and asked the Department and IAAME to verify certain implications for IAAME relating to its assumption of Monitoring and Oversight of Accredited Agencies on 4/1/18.

In the event of Expiration of Accreditation for ASPs with Pending Renewal Applications

In the event that any of these ASPs are not granted renewal prior to 3/31, it is our understanding that because they would not be accredited on 4/1 that IAAME will not assume any Monitoring and Oversight Responsibilities over these ASPs and not charge / receive any fees from them, until such time as they are granted accreditation again. COA will transfer the file to IAAME after a final decision is made on their application.

39

COA will incorporate into its review, any open compliance issues into the Commission's review and decision on the ASPs application to ensure the necessary corrective actions are complete. COA will not charge the ASP a Monitoring and Oversight Fee because they will not be accredited during this lapse. The cost of COA's review of the outstanding compliance issues will be covered by the renewal fee they have already paid.

The Department responded advising COA of the following procedures it should follow:

"With respect to the ASPs mentioned below, if their accreditation expires and they wish to seek accreditation again, they must first request and obtain permission to make a new application for accreditation from COA, while COA is still designated as an AE. If COA grants the ASP permission to reapply, the ASP may apply for accreditation or approval as a new applicant and, per the AE transition Plan, the ASP should file its application with IAAME. The Department recently approved IAAME's policies, procedures and tables of evidence. IAAME may now accept applications for accreditation and approval. After March 31, COA may no longer continue to review or make any decision in relation to the ASP's accreditation application. To the extent COA may be working with the ASP's on corrective action, any corrective action would be moot as of the expiration date as the ASP would no longer be accredited."

We have sent 2 additional emails to the Department expressing our concern over their decision to require COA to operate under new and different procedures and requesting they reconsider. We have not yet received a response to our latest request for reconsideration of their decision, but felt it was important to advise you of this situation.

We will keep you apprised of the situation.

If you have questions, please direct them to Richard Klarberg and I.

Best regards,

Jayne Schmidt

Director of Hague Accreditation

Council on Accreditation

https://mail.google.com/mail/u/0/?ui=2&ik=9c276dc002&jsver=vpUhMPVvGDU.en.&cbl=gmail_fe_180522.10_p6&view=pt&msg=1627894478dd523b&...

 **FAITH**
INTERNATIONAL

**Meske, John <john@faithadopt.org>**

## RE: Update regarding your pending application for renewal

**Jayne Schmidt** <Jschmidt@coanet.org>
To: John Meske <john@faithadopt.org>
Cc: Richard Klarberg <Rklarberg@coanet.org>

Fri, Mar 30, 2018 at 1:26 PM

Hi John,

The email from State Department (quoted below) responding to our original inquiry earlier this week was not received until today.

Jayne

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Friday, March 30, 2018 4:23 PM
**To:** Jayne Schmidt <Jschmidt@coanet.org>
**Cc:** Richard Klarberg <Rklarberg@coanet.org>
**Subject:** Re: Update regarding your pending application for renewal

Hi Jayne.

This is very disturbing as it appears that COA was advised one week ago that the DOS consider our application in progress to be required to be completed by March. 31. In that light failing to review our final response but us in a grave situation.

To require us to reapply with the new accrediting body would effectively close our agency.

Can you please have our final response be reviewed today or tomorrow to see if our re-accreditation can be issued?

Please try. We should not be in this position and receiving this news the day before our expiration.

It feels that DOS is trying to close our agency for no reason.

Please advise if you can complete the review or extend our accreditation pending a resolution.

41

John J. Meske

On Mar 30, 2018, at 1:06 PM, Jayne Schmidt <Jschmidt@coanet.org> wrote:

Dear John,

I hope this email finds you well. Unfortunately, I'm writing to advise you that there may be a change with regards to COA's procedures for reviewing the application you filed for renewal due to a directive COA received from the Department of State.

It has been COA's understanding since drafting a transition plan with IAAME, that COA would complete its review of all applications that were in process at the time COA withdrew as an accrediting entity and applications submitted by ASP expiring in 2018 who signed an agreement and agreed to have a site visit by May of 2018. Earlier this week, we wrote to the State Department and IAAME to advise them of the status of your pending application. We also advised State Department and IAAME of some details of our process for applicants seeking renewal who expire while that application for renewal is pending and asked the Department and IAAME to verify certain implications for IAAME relating to its assumption of Monitoring and Oversight of Accredited Agencies on 4/1/18.

In the event of Expiration of Accreditation for ASPs with Pending Renewal Applications

In the event that any of these ASPs are not granted renewal prior to 3/31, it is our understanding that because they would not be accredited on 4/1 that IAAME will not assume any Monitoring and Oversight Responsibilities over these ASPs and not charge / receive any fees from them, until such time as they are granted accreditation again. COA will transfer the file to IAAME after a final decision is made on their application.

COA will incorporate into its review, any open compliance issues into the Commission's review and decision on the ASPs application to ensure the necessary corrective actions are complete. COA will not charge the ASP a Monitoring and Oversight Fee because they will not be accredited during this lapse. The cost of COA's review of the outstanding compliance issues will be covered by the renewal fee they have already paid.

The Department responded advising COA of the following procedures it should follow:

"With respect to the ASPs mentioned below, if their accreditation expires and they wish to seek accreditation again, they must first request and obtain permission to make a new application for accreditation from COA, while COA is still designated as an AE. If COA grants the ASP permission to reapply, the ASP may apply for accreditation or approval as a new applicant and, per the AE transition Plan, the ASP should file its application with IAAME. The Department recently approved IAAME's policies, procedures and tables of evidence. IAAME may now accept applications for accreditation and approval. After March 31, COA may no longer continue to review or make any decision in relation to the ASP's accreditation application. To the extent COA may be working with the ASP's on corrective action, any corrective action would be moot as of the expiration date as the ASP would no longer be accredited."

We have sent 2 additional emails to the Department expressing our concern over their decision to require COA to operate under new and different procedures and requesting they reconsider. We have not yet received a response to our latest request for reconsideration of their decision, but felt it was important to advise you of this situation.

42

We will keep you apprised of the situation.

If you have questions, please direct them to Richard Klarberg and I.

Best regards,

Jayne Schmidt

Director of Hague Accreditation

Council on Accreditation



**Meske, John <john@faithadopt.org>**

## Re: Update regarding your pending application for renewal

**John Meske** <john@faithadopt.org>
To: Jayne Schmidt <Jschmidt@coanet.org>
Cc: Richard Klarberg <Rklarberg@coanet.org>

Fri, Mar 30, 2018 at 1:30 PM

Hi Jayne.

How can they do this?

Can you please have our responses looked it. It is pretty straight forward. We corrected the waiver issue in the service agreement and provided the information concerning our non-primary provider role with the three Canadian agencies in BC.

John J. Meske

On Mar 30, 2018, at 1:26 PM, Jayne Schmidt <Jschmidt@coanet.org> wrote:

> Hi John,
>
> The email from State Department (quoted below) responding to our original inquiry earlier this week was not received until today.
>
> Jayne
>
> **From:** John Meske [mailto:john@faithadopt.org]
> **Sent:** Friday, March 30, 2018 4:23 PM
> **To:** Jayne Schmidt <Jschmidt@coanet.org>
> **Cc:** Richard Klarberg <Rklarberg@coanet.org>
> **Subject:** Re: Update regarding your pending application for renewal
>
> Hi Jayne.
>
> This is very disturbing as it appears that COA was advised one week ago that the DOS consider our application in progress to be required to be completed by March. 31. In that light failing to review our final response but us in a grave situation.
>
> To require us to reapply with the new accrediting body would effectively close our agency.
>
> Can you please have our final response be reviewed today or tomorrow to see if our re-accreditation can be issued?

44

 **FAITH**
INTERNATIONAL

## Re: Update regarding your pending application for renewal

**John Meske** <john@faithadopt.org>                                                    Fri, Mar 30, 2018 at 1:39 PM
To: Jayne Schmidt <Jschmidt@coanet.org>
Cc: Richard Klarberg <Rklarberg@coanet.org>

The more I read the response the more inappropriate or illegal it appears. We started the re-accreditation process under the current rules. They should not be able to change them one day before our expiration date while we are waiting for a final review.

The only corrective action was addressing the waiver issue. That has been done.

The other issue, raised for the first time, concerned the issue of Canada which is outside The Hague.

Can you please discuss with Richard completing the review and issuing the new accreditation by tomorrow?

John J. Meske

On Mar 30, 2018, at 1:23 PM, John Meske <john@faithadopt.org> wrote:

> Hi Jayne.
>
> This is very disturbing as it appears that COA was advised one week ago that the DOS consider our application in progress to be required to be completed by March. 31. In that light failing to review our final response but us in a grave situation.
>
> To require us to reapply with the new accrediting body would effectively close our agency.
>
> Can you please have our final response be reviewed today or tomorrow to see if our re-accreditation can be issued?
>
> Please try. We should not be in this position and receiving this news the day before our expiration.
>
> It feels that DOS is trying to close our agency for no reason.
>
> Please advise if you can complete the review or extend our accreditation pending a resolution.
>
>
> John J. Meske
>
> On Mar 30, 2018, at 1:06 PM, Jayne Schmidt <Jschmidt@coanet.org> wrote:
>
>> Dear John,
>>
>>
>> I hope this email finds you well.  Unfortunately, I'm writing to advise you that there may be a change with regards to COA's procedures for reviewing the application you filed for renewal due to a directive COA received from the Department of State.
>>
>>
>> It has been COA's understanding since drafting a transition plan with IAAME, that COA would complete its review of all applications that were in process at the time COA withdrew as an accrediting entity and applications submitted by ASP expiring in 2018 who signed an agreement and agreed to have a site visit by May of 2018.  Earlier this week, we wrote to the State Department and IAAME to advise them of the status of your pending application.  We

45

also advised State Department and IAAME of some details of our process for applicants seeking renewal who expire while that application for renewal is pending and asked the Department and IAAME to verify certain implications for IAAME relating to its assumption of Monitoring and Oversight of Accredited Agencies on 4/1/18.

In the event of Expiration of Accreditation for ASPs with Pending Renewal Applications

In the event that any of these ASPs are not granted renewal prior to 3/31, it is our understanding that because they would not be accredited on 4/1 that IAAME will not assume any Monitoring and Oversight Responsibilities over these ASPs and not charge / receive any fees from them, until such time as they are granted accreditation again. COA will transfer the file to IAAME after a final decision is made on their application.

COA will incorporate into its review, any open compliance issues into the Commission's review and decision on the ASPs application to ensure the necessary corrective actions are complete. COA will not charge the ASP a Monitoring and Oversight Fee because they will not be accredited during this lapse. The cost of COA's review of the outstanding compliance issues will be covered by the renewal fee they have already paid.

The Department responded advising COA of the following procedures it should follow:

"With respect to the ASPs mentioned below, if their accreditation expires and they wish to seek accreditation again, they must first request and obtain permission to make a new application for accreditation from COA, while COA is still designated as an AE. If COA grants the ASP permission to reapply, the ASP may apply for accreditation or approval as a new applicant and, per the AE transition Plan, the ASP should file its application with IAAME. The Department recently approved IAAME's policies, procedures and tables of evidence. IAAME may now accept applications for accreditation and approval. After March 31, COA may no longer continue to review or make any decision in relation to the ASP's accreditation application. To the extent COA may be working with the ASP's on corrective action, any corrective action would be moot as of the expiration date as the ASP would no longer be accredited."

We have sent 2 additional emails to the Department expressing our concern over their decision to require COA to operate under new and different procedures and requesting they reconsider. We have not yet received a response to our latest request for reconsideration of their decision, but felt it was important to advise you of this situation.

We will keep you apprised of the situation.

If you have questions, please direct them to Richard Klarberg and I.

Best regards,

Jayne Schmidt

46

Director of Hague Accreditation

Council on Accreditation

47



**Meske, John <john@faithadopt.org>**

## Re: Update regarding your pending application for renewal

**Meske, John** <john@faithadopt.org>                                    Fri, Mar 30, 2018 at 2:14 PM
To: Jayne Schmidt <Jschmidt@coanet.org>, Kelsey Melvin <kelsey@faithadopt.org>
Cc: Richard Klarberg <Rklarberg@coanet.org>

Dear Richard,

I just tried calling your office number and had to leave a message. I also tried calling your cell number but there was no answer.

In light of what DOS is trying to do, essentially close us down, we are respectfully requesting that you do a phone conf call with the members of the commission and review or commission response which I believe fully answers the questions raised in the second commission report. We are requesting that this extra step be taken and our accreditation issued so we are no left waiting for a resolution of DOS trying to change the MOU and other agreement on the re-accreditation process for agencies in process.

This is critical to our clients and our agency. The damages if this is allowed to play out will be extraordinary.

Please help us.


John


## John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928  |  Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

On Fri, Mar 30, 2018 at 1:06 PM, Jayne Schmidt <Jschmidt@coanet.org> wrote:

Dear John,


I hope this email finds you well. Unfortunately, I'm writing to advise you that there may be a change with regards to COA's procedures for reviewing the application you filed for renewal due to a directive COA received from the Department of State.


It has been COA's understanding since drafting a transition plan with IAAME, that COA would complete its review of all applications that were in process at the time COA withdrew as an accrediting entity and applications submitted by ASP expiring in 2018 who signed an agreement and agreed to have a site visit by May of 2018. Earlier this week, we wrote to the State Department and IAAME to advise them of the status of your pending application. We also advised State Department and IAAME of some details of our process for applicants seeking renewal who expire while that

application for renewal is pending and asked the Department and IAAME to verify certain implications for IAAME relating to its assumption of Monitoring and Oversight of Accredited Agencies on 4/1/18.

In the event of Expiration of Accreditation for ASPs with Pending Renewal Applications

In the event that any of these ASPs are not granted renewal prior to 3/31, it is our understanding that because they would not be accredited on 4/1 that IAAME will not assume any Monitoring and Oversight Responsibilities over these ASPs and not charge / receive any fees from them, until such time as they are granted accreditation again. COA will transfer the file to IAAME after a final decision is made on their application.

COA will incorporate into its review, any open compliance issues into the Commission's review and decision on the ASPs application to ensure the necessary corrective actions are complete. COA will not charge the ASP a Monitoring and Oversight Fee because they will not be accredited during this lapse. The cost of COA's review of the outstanding compliance issues will be covered by the renewal fee they have already paid.

The Department responded advising COA of the following procedures it should follow:

"With respect to the ASPs mentioned below, if their accreditation expires and they wish to seek accreditation again, they must first request and obtain permission to make a new application for accreditation from COA, while COA is still designated as an AE. If COA grants the ASP permission to reapply, the ASP may apply for accreditation or approval as a new applicant and, per the AE transition Plan, the ASP should file its application with IAAME. The Department recently approved IAAME's policies, procedures and tables of evidence. IAAME may now accept applications for accreditation and approval. After March 31, COA may no longer continue to review or make any decision in relation to the ASP's accreditation application. To the extent COA may be working with the ASP's on corrective action, any corrective action would be moot as of the expiration date as the ASP would no longer be accredited."

We have sent 2 additional emails to the Department expressing our concern over their decision to require COA to operate under new and different procedures and requesting they reconsider. We have not yet received a response to our latest request for reconsideration of their decision, but felt it was important to advise you of this situation.

We will keep you apprised of the situation.

If you have questions, please direct them to Richard Klarberg and I.

Best regards,

Jayne Schmidt

Director of Hague Accreditation

Council on Accreditation

49

 **FAITH**
INTERNATIONAL

**Meske, John <john@faithadopt.org>**

## Fwd: Update regarding your pending application for renewal

**Meske, John** <john@faithadopt.org>                                                      Fri, Mar 30, 2018 at 2:51 PM
To: Rebecca Slife <rslife@coanet.org>, Richard Klarberg <Rklarberg@coanet.org>, Jayne Schmidt <Jschmidt@coanet.org>

Hi Rebecca,

As you are aware, DOS is trying to change the accreditation with COA. This will greatly harm us and the other agencies. Can we please have the commission review this tomorrow and issue approval?

Please see the emails to Jayne and Richard.

Thanks

John

### John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

---------- Forwarded message ----------
From: **Meske, John** <john@faithadopt.org>
Date: Fri, Mar 30, 2018 at 2:14 PM
Subject: Re: Update regarding your pending application for renewal
To: Jayne Schmidt <Jschmidt@coanet.org>, Kelsey Melvin <kelsey@faithadopt.org>
Cc: Richard Klarberg <Rklarberg@coanet.org>

Dear Richard,

I just tried calling your office number and had to leave a message. I also tried calling your cell number but there was no answer.

In light of what DOS is trying to do, essentially close us down, we are respectfully requesting that you do a phone conf call with the members of the commission and review or commission response which I believe fully answers the questions raised in the second commission report. We are requesting that this extra step be taken and our accreditation issued so we are no left waiting for a resolution of DOS trying to change the MOU and other agreement on the re-accreditation process for agencies in process.

This is critical to our clients and our agency. The damages if this is allowed to play out will be extraordinary.

Please help us.

John

https://mail.google.com/mail/u/0/?ui=2&ik=9c276dc002&jsver=yoUhMPVvGDU.en.&cbl=gmail_fe_180522.10_p6&view=pt&msg=16278e4920631fb3&...    1/3



**Meske, John <john@faithadopt.org>**

## Fwd: ビデオ.MOV

**John Meske** <john@faithadopt.org>                                                    Sat, Mar 31, 2018 at 12:14 AM
To: Rklarberg@coanet.org, Kelsey Melvin <kelsey@faithadopt.org>

Hi Richard.

Please do what you can to have our case reviewed tomorrow. Everything has been provided. Our re-accreditation should
be issued.

What DOS said in their email to you is unjust and illegal. We operated under the policies of COA and relied upon them
when we sought re-accreditation for the third time.

Please do not let this happen.

John J. Meske

Begin forwarded message:

> **From:** John Meske <john@faithadopt.org>
> **Date:** March 30, 2018 at 7:35:42 PM PDT
> **To:** jschmidt@coanet.org
> **Subject: Fwd: ビデオ.MOV**

> This is what will be denied our families if we do not get our re-accreditation. I do not know what DOS is
> doing but issuing our re-accreditation tomorrow will stop it and save so many people extreme harm.

> Please try to get our file reviewed tomorrow.

> John J. Meske

> Begin forwarded message:

>> **From:** Kelsey Melvin <kelsey@faithadopt.org>
>> **Date:** March 30, 2018 at 7:26:14 PM PDT
>> **To:** john@faithadopt.org
>> **Subject: ビデオ.MOV**

>> Tutterrow family in Japan

>> Kelsey Melvin, MSW
>> Assistant Director
>> FAITH INTERNATIONAL ADOPTIONS
>> 1105 Tacoma Avenue South
>> Tacoma, WA 98402
>> Phone (253) 383-1928
>> FAX (253) 572-6662
>> www.faithadopt.org

https://mail.google.com/mail/u/0/?ui=2&ik=9c276dc002&jsver=vpUhMPVvGDU.en.&cbl=gmail_fe_180522.10_p6&view=pt&msg=1627ae84e2b9e645&...


**FAITH**
INTERNATIONAL

Meske, John <john@faithadopt.org>

## Re: ビデオ.MOV

**John Meske** <john@faithadopt.org>
To: Rklarberg@coanet.org, Kelsey Melvin <kelsey@faithadopt.org>, rslife@coanet.org, jschmidt@coanet.org

Sat, Mar 31, 2018 at 5:56 AM

Dear Richard.

The more I think of the email we received from Jayne advising of the position of DOS the more angry I am that we are in this position.

The response we sent to the last commission report corrected the waiver of liability issue and clarified the Canadian issue which should not have even been an issue as stated in the report of January 18.

You have everything in order to issue our accreditation. You have been advised by DOS that if it is not issued we would effectively lose our accreditation. That cannot happen.

To avoid massive damages and a lawsuit please issue our approval today.


John J. Meske

On Mar 30, 2018, at 11:07 PM, John Meske <john@faithadopt.org> wrote:

> Hi Richard.
>
> Please do what you can to have our case reviewed tomorrow. Everything has been provided. Our re-accreditation should be issued.
>
> What DOS said in their email to you is unjust and illegal. We operated under the policies of COA and relied upon them when we sought re-accreditation for the third time.
>
> Please do not let this happen.
>
> John J. Meske
>
> Begin forwarded message:
>
>> **From:** John Meske <john@faithadopt.org>
>> **Date:** March 30, 2018 at 7:35:42 PM PDT
>> **To:** jschmidt@coanet.org
>> **Subject:** Fwd: ビデオ.MOV
>>
>> This is what will be denied our families if we do not get our re-accreditation. I do not know what DOS is doing but issuing our re-accreditation tomorrow will stop it and save so many people extreme harm.
>>
>> Please try to get our file reviewed tomorrow.
>>
>> John J. Meske
>>
>> Begin forwarded message:
>>
>>> **From:** Kelsey Melvin <kelsey@faithadopt.org>
>>> **Date:** March 30, 2018 at 7:26:14 PM PDT



**FAITH**
INTERNATIONAL

**Meske, John <john@faithadopt.org>**

## Re: ビデオ.MOV

**Richard Klarberg** <Rklarberg@coanet.org>                          Sat, Mar 31, 2018 at 6:07 PM
To: John Meske <john@faithadopt.org>
Cc: Kelsey Melvin <kelsey@faithadopt.org>, Rebecca Slife <rslife@coanet.org>, Jayne Schmidt <Jschmidt@coanet.org>

Dear John,
     Were this a traditional COA accreditation, our ability to respond to your concerns might be different, but we are limited by the terms of our MOA with State & it's directives.
     Our record of striving to champion the rights & needs of ASPs and those they serve is clear and indisputable.
     I wish you and yours a very happy Easter.
Richard

On Mar 31, 2018, at 8:56 AM, John Meske <john@faithadopt.org> wrote:

> Dear Richard.
>
> The more I think of the email we received from Jayne advising of the position of DOS the more angry I am that we are in this position.
>
> The response we sent to the last commission report corrected the waiver of liability issue and clarified the Canadian issue which should not have even been an issue as stated in the report of January 18.
>
> You have everything in order to issue our accreditation. You have been advised by DOS that if it is not issued we would effectively lose our accreditation. That cannot happen.
>
> To avoid massive damages and a lawsuit please issue our approval today.
>
>
> John J. Meske
>
> On Mar 30, 2018, at 11:07 PM, John Meske <john@faithadopt.org> wrote:
>
>> Hi Richard.
>>
>> Please do what you can to have our case reviewed tomorrow. Everything has been provided. Our re-accreditation should be issued.
>>
>> What DOS said in their email to you is unjust and illegal. We operated under the policies of COA and relied upon them when we sought re-accreditation for the third time.
>>
>> Please do not let this happen.
>>
>> John J. Meske
>>
>> Begin forwarded message:
>>
>>> **From:** John Meske <john@faithadopt.org>
>>> **Date:** March 30, 2018 at 7:35:42 PM PDT
>>> **To:** jschmidt@coanet.org
>>> **Subject: Fwd:** ビデオ.MOV
>>>
>>> This is what will be denied our families if we do not get our re-accreditation. I do not know what DOS is doing but issuing our re-accreditation tomorrow will stop

53



# FAITH
### INTERNATIONAL

Meske, John <john@faithadopt.org>

## Re: ビデオ.MOV

**Richard Klarberg** <Rklarberg@coanet.org>  
To: John Meske <john@faithadopt.org>  
Cc: Jayne Schmidt <Jschmidt@coanet.org>

Sat, Mar 31, 2018 at 6:22 PM

John:
  I will regroup with staff & State   Monday. I understand and empathize with your frustration and concern.
  Thank you for your Easter wishes. It means a lot to me at this difficult time.
Richard

On Mar 31, 2018, at 9:18 PM, John Meske <john@faithadopt.org> wrote:

> Hi Richard.
>
> Thank you so much for your email. I am confused because we are in the final stage of our re-accreditation. The Dec. 20 memo from DOS specifically stated that agencies being accredited in 2018 would remain with COA. Even if it has not been finalized by the expiration date which for us is today.
>
> We have provided the information on Monday the 26th. For some reason the limited information we provided was not reviewed. What concerns me is that if COA knew there would be an issue why were we not reviewed. All the information was there and the main issue was a non-Hague issue.
>
> We have not received our re-accreditation. Why is that?  What happens now?  Will COA continue and review us this week?
>
> This unimaginable the DOS could try to change what was understood in the MOU. It feels like a breach of contract.
>
> Please tell what is the plan.
>
> We need your support. We are a good agency and should not be in this position. We do not want a Federal lawsuit so please us resolve this.
>
> Thank you Richard. I wish you and your family a Blessed Easter.
>
> John J. Meske
>
> On Mar 31, 2018, at 6:07 PM, Richard Klarberg <Rklarberg@coanet.org> wrote:
>
>> Dear John,
>>    Were this a traditional COA accreditation, our ability to respond to your concerns might be different, but we are limited by the terms of our MOA with State & it's directives.
>>    Our record of striving to champion the rights & needs of ASPs and those they serve is clear and indisputable.
>>    I wish you and yours a very happy Easter.
>> Richard
>>
>> On Mar 31, 2018, at 8:56 AM, John Meske <john@faithadopt.org> wrote:
>>
>>> Dear Richard.
>>>
>>> The more I think of the email we received from Jayne advising of the position of DOS the more angry I am that we are in this position.



**FAITH**
INTERNATIONAL

Meske, John <john@faithadopt.org>

## RE: Accreditation

**Richard Klarberg** <Rklarberg@coanet.org>
To: John Meske <john@faithadopt.org>

Mon, Apr 2, 2018 at 11:20 AM

John – Thanks. I am working with COA's counsel on this as we speak.

R

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Monday, April 02, 2018 2:06 PM
**To:** Richard Klarberg
**Subject:** Accreditation

Hi Richard.

I hope you had a restful and Happy Easter. Very hard for us to do that.

I understand that State has taken a position that if accreditation was not issued before the expiration of the current accreditation, which for us was March 31, 2018, that it is deemed that COA has refused to renew. I do not believe that there is a legal basis for this conclusion. The two provisions of the CFR referenced by State actually gives COA the discretion to defer its decision and permit agencies to remedy any concerns. This was confirmed in the 12/20/17 FAQ issued by State.

Here is my analysis of the two sections of the CFR referenced by State.

The email quoting the Federal Code that was passed in 2006 does not say anything about an AE allowing an ASP's accreditation to expire to **constitute a refusal to renew.** Here is 96.63(c):

96.63(c) **The accrediting entity must process the request for renewal in a timely fashion. Before deciding whether to renew the accreditation or approval of an agency or person, the accrediting entity may, in its discretion, advise the agency or person of any deficiencies that may hinder or prevent its renewal and defer a decision to allow the agency or person to correct the deficiencies. The accrediting entity must notify the accredited agency, approved person, and the Secretary in writing when it renews or refuses to renew an agency's or person's accreditation or approval.**

As you can see the CFR does not say anything about the AE's failure to timely process as **constituting a refusal to renew.** In fact, it states that the AE can **defer a decision to allow the agency to correct the deficiencies.**

55

## § 96.77  Responsibilities of the accredited agency, approved person, and accrediting entity following adverse action by the accrediting entity.

(a) If the accrediting entity takes an adverse action against an agency or person, the action will take effect immediately unless the accrediting entity agrees to a later effective date.

(b) If the accrediting entity suspends or cancels the accreditation or approval of an agency or person, the agency or person must immediately, or by any later effective date set by the accrediting entity, cease to provide adoption services in all Convention cases. In the case of suspension, it must consult with the accrediting entity about whether to transfer its Convention adoption cases and adoption records. In the case of cancellation, it must execute the plans required by §§96.33(e) and 96.42(d) under the oversight of the accrediting entity, and transfer its Convention adoption cases and adoption records to other accredited agencies, approved persons, or a State archive, as appropriate. When the agency or person is unable to transfer such Convention cases or adoption records in accordance with the plans or as otherwise agreed by the accrediting entity, the accrediting entity will so advise the Secretary who, with the assistance of the accrediting entity, will coordinate efforts to identify other accredited agencies or approved persons to assume responsibility for the cases, and to transfer the records to other accredited agencies or approved persons, or to public domestic authorities, as appropriate.

**(c) If the accrediting entity refuses to renew the accreditation or approval of an agency or person, the agency or person must cease to provide adoption services in all Convention cases upon expiration of its existing accreditation or approval. It must take all necessary steps to complete its Convention cases before its accreditation or approval expires. It must also execute the plans required by §§96.33(e) and 96.42(d) under the oversight of the accrediting entity, and transfer its pending Convention cases and adoption records to other accredited agencies, approved persons, or a State archive, as appropriate. When the agency or person is unable to transfer such Convention cases or adoption records in accordance with the plans or as otherwise agreed by the accrediting entity, the accrediting entity will so advise the Secretary who, with the assistance of the accrediting entity, will coordinate efforts to identify other accredited agencies or approved persons to assume responsibility for the cases and to transfer the records to other accredited agencies or approved persons, or to public domestic authorities, as appropriate.**

(d) The accrediting entity must notify the Secretary, in accordance with procedures established in its agreement with the Secretary, when it takes an adverse action that changes the accreditation or approval status of an agency or person. The accrediting entity must also notify the relevant State licensing authority as provided in the agreement.

**96.77(c)** deals with the situation where there is an adverse action (suspension or cancellation) and specifically notes that this situation occurs when the accrediting entity refuses to renew the accreditation. COA has not refused to accredit the agencies but, **according to 96.33(c) defer their judgment on accreditation and the December 20, 2017 FAQ published by State,** deferred their decision to allow the agencies to correct the deficiencies.

COA seems to be operating pursuant to the CFRs and whoever at State wrote that email is absolutely incorrect.

Richard please let me know what is happening. I am in court this morning for a few hearings but will try to call you soon. Do you have an attorney evaluating this situation?

This is unimaginable Richard. Everyone that has heard what is happening are in disbelief.

Thanks for your kind consideration.


John J. Meske



**FAITH**
INTERNATIONAL

Meske, John <john@faithadopt.org>

## Re: Accreditation Renewal Refusal for Amazing Grace Adoptions, Adopt Abroad International, and Faith International Adoption, Inc.

**Richard Klarberg** <Rklarberg@coanet.org>                                  Mon, Apr 2, 2018 at 3:55 PM
To: "Meske, John" <john@faithadopt.org>

John- I am working with counsel to plan a course of action. We did not advise State that your application was refused. There are several instances in the past where we dealt with similar situations with State's knowledge. I hope to have more to report tomorrow.
Richard

On Apr 2, 2018, at 6:37 PM, Meske, John <john@faithadopt.org> wrote:

Hi Richard,

Here is Trish's publication today saying that our accreditation has been refused by COA. Her actual words are " As such, the agencies' renewal applications have been refused and they are no longer accredited."

Richard did COA report this to DOS? Did you say that our renewal application has been "refused." COA advised us of a Deferral Notice. Never were we advised by your office that our renewal application has been refused. Please advise what you reported to DOS.

Tomorrow I am meeting with the representative from Senator Patty Murray's Office. She is Number 2 in the Senate. We will have her office investigate what has happened here.

I am sure you can imagine what damage this notice has done to our agency.

Please call me or give me a time that we can discuss what options there are to reduce the damage and get our accreditation issued.

Thank you

John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

---------- Forwarded message ----------
From: **Adoption** <Adoption@state.gov>
Date: Mon, Apr 2, 2018 at 1:54 PM
Subject: Accreditation Renewal Refusal for Amazing Grace Adoptions, Adopt Abroad International, and Faith International Adoption, Inc.
To: Adoption <Adoption@state.gov>

FAITH INTERNATIONAL ADOPTIONS Mail - Document 21 Filed 06/21/18 Page 58 of 125 Abroad Internation...

Case 3:18-cv-00731-RBL Document 21 Filed 06/21/18 Page 58 of 125

Department of State Adoption Notice        View this email in your browser



# Accreditation Renewal Refusal for Amazing Grace Adoptions, Adopt Abroad International, and Faith International Adoption, Inc.

--------------------------------------------------------------------------------

**April 2, 2018**

The Council on Accreditation (COA) reports that on March 31, 2018, the Hague Accreditation for Amazing Grace Adoptions, Adopt Abroad International, and Faith International Adoptions, Inc. expired while their renewal applications were pending [with COA]. As such, the agencies' renewal applications have been refused and they are no longer accredited.

Agencies that are not accredited or approved may not act as a primary provider. They may, however, perform services for intercountry adoption under the supervision of an accredited or approved adoption service provider, but must meet the requirements of 22 CFR 96.35(a). When an agency's or person's accreditation or approval expires, they are responsible for transferring cases and records as required by 22 CFR 96.33(e) and 96.42(d).

Families working with any of the above listed agencies should contact that agency directly with questions about case or record transfer. We also encourage families to review the information published by the Council on Accreditation about selecting a primary provider/adoption service provider and the accreditation/approval requirements.

The Department of State does not review or approve case transfer plans and has a limited role in their execution. We do, however, communicate with foreign Central Authorities and competent adoption authorities about the accreditation status of adoption service providers and case transfer plans, as needed.

Federal regulations in 22 CFR Part 96 govern the accreditation/approval and monitoring of adoption service providers involved in intercountry adoption. The regulations authorize designated accrediting entities to review complaints and take adverse action when the accrediting entity determines that regulatory standards have been violated or that the adoption service provider has failed to demonstrate substantial compliance with the applicable regulations. The Department of State facilitates communication to the public about the outcome of the accrediting entities' determinations.

https://mail.google.com/mail/u/0/?ui=2&ik=9c276dc002&jsver=uln2IVdyiuk.en.&cbl=gmail_fe_180502.07_p5&view=pt&msg=16288928e9951cf9&search=drafts&s

Want to change how you receive these emails?
You can update your preferences or unsubscribe from this list

This email was sent to adoption@state.gov
*why did I get this?*   unsubscribe from this list   update subscription preferences
U.S. Department of State · 44132 Mercure Cir Fl 10 · Sa-17 · Sterling, VA 20166-2000 · USA



**Official**

**UNCLASSIFIED**

---

**3 attachments**



**image001.jpg**
5K



**image002.png**
4K

**image003.gif**
1K

FAITH (ON-SENSATIONAL-AUG 07-75 INSTRUCT - RE Accreditation Renewal Refusal for Amazing Grace Adoptions, Adopt Abroad Internation…

Case 2:16-cv-00751-RBL   Document 21   Filed 06/21/18   Page 60 of 125



# FAITH
INTERNATIONAL

**Meske, John <john@faithadopt.org>**

## Re: Accreditation Renewal Refusal for Amazing Grace Adoptions, Adopt Abroad International, and Faith International Adoption, Inc.

**Meske, John** <john@faithadopt.org>
To: Richard Klarberg <Rklarberg@coanet.org>

Mon, Apr 2, 2018 at 4:35 PM

Hi Richard.

I cannot believe Trish. She actually entitled her notice as "Accreditation Renewal Refusal." She did this knowing that COA did not notify of a refusal but only the deferral notice. I cannot believe that she can get away with this. She must be held responsible for misleading the public and publicly harming our agency.

We need to know your plan so that we can make our plans. The damages mount daily.

Please let me know what you think can be done.

Thanks,

John

## John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928  |  Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

On Mon, Apr 2, 2018 at 3:55 PM, Richard Klarberg <Rklarberg@coanet.org> wrote:
> John- I am working with counsel to plan a course of action. We did not advise State that your application was refused. There are several instances in the past where we dealt with similar situations with State's knowledge. I hope to have more to report tomorrow.
> Richard

> On Apr 2, 2018, at 6:37 PM, Meske, John <john@faithadopt.org> wrote:
>
> Hi Richard,
>
> Here is Trish's publication today saying that our accreditation has been refused by COA. Her actual words are " As such, the agencies' renewal applications have been refused and they are no longer accredited."
>
> Richard did COA report this to DOS? Did you say that our renewal application has been "refused." COA advised us of a Deferral Notice. Never were we advised by your office that our renewal application has been refused. Please advise what you reported to DOS.
>
> Tomorrow I am meeting with the representative from Senator Patty Murray's Office. She is Number 2 in the Senate. We will have her office investigate what has happened here.
>
> I am sure you can imagine what damage this notice has done to our agency.

60

FAITH INTERNATIONAL ADOPTIONS Mail - Re: Accreditation Renewal Refusal for Amazing Grace Adoptions, Adopt Abroad Internation...

Case 2:18-cv-00731-RBL Document 21 Filed 06/21/18 Page 61 of 123

Please call me or give me a time that we can discuss what options there are to reduce the damage and get our accreditation issued.

Thank you

**John J. Meske, JD**

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

---------- Forwarded message ----------
From: **Adoption** <Adoption@state.gov>
Date: Mon, Apr 2, 2018 at 1:54 PM
Subject: Accreditation Renewal Refusal for Amazing Grace Adoptions, Adopt Abroad International, and Faith International Adoption, Inc.
To: Adoption <Adoption@state.gov>

Department of State Adoption Notice                    View this email in your browser



# Accreditation Renewal Refusal for Amazing Grace Adoptions, Adopt Abroad International, and Faith International Adoption, Inc.

---

**April 2, 2018**

The Council on Accreditation (COA) reports that on March 31, 2018, the Hague Accreditation for Amazing Grace Adoptions, Adopt Abroad International, and Faith International Adoptions, Inc.

expired while their renewal applications were pending [with COA]. As such, the agencies' renewal applications have been refused and they are no longer accredited.

Agencies that are not accredited or approved may not act as a primary provider. They may, however, perform services for intercountry adoption under the supervision of an accredited or approved adoption service provider, but must meet the requirements of 22 CFR 96.35(a). When an agency's or person's accreditation or approval expires, they are responsible for transferring cases and records as required by 22 CFR 96.33(e) and 96.42(d).

Families working with any of the above listed agencies should contact that agency directly with questions about case or record transfer. We also encourage families to review the information published by the Council on Accreditation about selecting a primary provider/adoption service provider and the accreditation/approval requirements.

The Department of State does not review or approve case transfer plans and has a limited role in their execution. We do, however, communicate with foreign Central Authorities and competent adoption authorities about the accreditation status of adoption service providers and case transfer plans, as needed.

Federal regulations in 22 CFR Part 96 govern the accreditation/approval and monitoring of adoption service providers involved in intercountry adoption. The regulations authorize designated accrediting entities to review complaints and take adverse action when the accrediting entity determines that regulatory standards have been violated or that the adoption service provider has failed to demonstrate substantial compliance with the applicable regulations. The Department of State facilitates communication to the public about the outcome of the accrediting entities' determinations.

Want to change how you receive these emails?
You can update your preferences or unsubscribe from this list

This email was sent to adoption@state.gov
*why did I get this?*   unsubscribe from this list   update subscription preferences
U.S. Department of State · 44132 Mercure Cir Fl 10 · Sa-17 · Sterling, VA 20166-2000 · USA





FAITH INTERNATIONAL

Meske, John <john@faithadopt.org>

## RE: Email from Trish

**Richard Klarberg** <Rklarberg@coanet.org>
To: John Meske <john@faithadopt.org>

Tue, Apr 3, 2018 at 6:24 AM

I agree.

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Tuesday, April 03, 2018 9:17 AM
**To:** Richard Klarberg
**Cc:** Jayne Schmidt; Rebecca Slife
**Subject:** Re: Email from Trish

Thank you Richard. I look forward to hearing back. Does not seem legal that Trish could change what the CFRs provide. It provides you with discretion to defer and does say that you cannot defer past the expiration date.

John J. Meske

On Apr 3, 2018, at 5:36 AM, Richard Klarberg <Rklarberg@coanet.org> wrote:

> Good morning John:
>
> I am speaking with our Washington counsel this AM/early PM. I have sent them the text of Trish's email, as well as copies of your email of last night and yesterday afternoon. I will be back in touch later today/tonight.
>
> R

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Monday, April 02, 2018 8:01 PM
**To:** Richard Klarberg
**Subject:** Email from Trish

Dear Richard.

Here is an email sent from Trish Maskew to Carol Albers of Adopt Abroad.

She once again cites the code incorrectly. Where in the Code does it say that COA's failure to issue a final decision prior to the ASP's expiration to be consider s refusal to review or an adverse action?

COA issued a deferral notice saying it did not have enough time to have the commission review the responses which were timely filed. It did not fail to take action or refuse accreditation. We were even given another review date. We repeatedly requested COA review and issue our re-accreditation

John J. Meske

Dear Dr. Albers,

Thank you for your recent email and letter about Adopt Abroad Inc.'s re-accreditation process and recent suspension.

The Council on Accreditation (COA) was the accrediting entity responsible for deciding Adopt Abroad Inc.'s application for renewal of accreditation. In accordance with 22 CFR § 96.27(a), "The accrediting entity may not grant an agency accreditation or a person approval, or permit an agency's or person's accreditation or approval to be maintained, unless the agency or person demonstrates to the satisfaction of the accrediting entity that it is in substantial compliance with the standards in subpart F of this part." In evaluating an application for renewal of accreditation, the AE is required under 22 CFR § 96.24(b)(3) to "consider any complaints received by the accrediting entity." It is our understanding that Adopt Abroad did not satisfy COA by the expiration of its accreditation on March 31, 2018, that it was in substantial compliance with the applicable standards.

Where the ASP has a renewal application that is pending with the AE and the ASP's accreditation expires because the ASP did not demonstrate to the satisfaction of the AE that it is in substantial compliance prior to the expiration date, the expiration of accreditation constitutes a "refusal to renew" pursuant to 22 CFR §§ 96.63(c) and 96.77(c), which is an adverse action under 22 CFR § 96.75. Under the Regulations and COA's Department-approved Policies and Procedures, at that point the ASP becomes a "new applicant" for accreditation, and must obtain permission to submit a new application for accreditation from the AE that took such action before making a new application.

The Department designates accrediting entities to perform accreditation and approval functions and other tasks, including the review of complaints pursuant to section 202 of the Intercountry Adoption Act of 2000 (IAA) and sections 96.4, 96.6 and 96.7 of Title 22 of the Code of Federal Regulations (CFR). The Department does not contemporaneously review an accrediting entity's (AE) accreditation or approval decisions, nor its decisions with respect to adverse actions under 22 CFR § 96.82(a), and is not authorized to influence or attempt to influence the AE's decisions.

An ASP that believes it has a grievance against COA may file a complaint in accordance with its policies and procedures manual, which can be found on COA's website (http://coanet.org/accreditation/hague-accreditation-and-approval/). The section on complaints against COA is located in chapter XVII, beginning on page 82 of the manual.

Sincerely,

Trish Maskew

FAITH INTERNATIONAL ADOPTIONS Mail - RE: Question about Transfer Cases



**Meske, John <john@faithadopt.org>**

## RE: Question about Transfer Cases

**Rebecca Slife** <rslife@coanet.org>
To: John Meske <john@faithadopt.org>
Cc: "Melvin, Kelsey" <kelsey@faithadopt.org>

Tue, Apr 3, 2018 at 11:29 AM

Hello John,

I know Richard has been in communication with you and please know that we continuing to discuss this situation with our attorneys. I regret that I do not have more information at this time, but please be assured that Richard, Jayne, or I will be in touch soon.

That being said, our mutual goal is ensure this has as little impact on clients as possible. It is an understandable challenge to transfer a high volume of cases, and I am available to support you with any questions you have, including any case-specific issues that you may encounter.

Best regards,

Becky

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Monday, April 02, 2018 11:58 PM
**To:** Rebecca Slife <rslife@coanet.org>
**Cc:** Melvin, Kelsey <kelsey@faithadopt.org>; aacarola@adopt-abroad.com
**Subject:** Re: Question about Transfer Cases

Rebecca I cannot tell you how shocked we are of the consequences of not reviewing our final submission prior to our expiration date. It was uploaded on Monday, March 26. That was only one business day after receiving the commission report asking, for the first time, questions of our relationship with Canada. You know all this but your failure to have it reviewed as effectively closed our agency.

The harm and financial loss is immeasurable. I am in direct contact with Richard in the hope that his lawyers will find a solution and hope they can.

What a disappointment this has been. It is clear that legal action is a strong possibility.

65

This should have been avoided. The CFRs required you to timely process our re-accreditation. At least there is a good paper trail to answer that question.

I had to let you know how I feel. This is a shared opinion. Now after 24 years of serving orphans our mission is taken from us, not for us being out of compliance but for your failure to act on our case.

I pray that Richard finds a solution and that no other agency suffers this level of harm.

John J. Meske

On Mar 30, 2018, at 10:53 AM, Rebecca Slife <rslife@coanet.org> wrote:

Hello Kelsey,

Thank you for your questions. As part of the case transfer process, we ask for evidence that the agencies who are named as accepting the cases have agreed to accept the cases. They would need to understand that they will be responsible for fulfilling their duties as a primary provider, including developing services plans, entering into a contract with PAPs, providing a fee schedule, grievance procedures, etc. Additionally, if FIA has any SP or SFP agreements in place for providers who are going to continue to provide services in a case, the new PP would need to enter into their own agreements with the providers. The ATS would also need to be updated and USCIS would need to be notified for any cases in which there is a pending adjudication as the new ASP would go on record as acting as a primary provider. Lastly, if FIA would going to attempt to pursue this type of arrangement, COA would want evidence that it is permissible by any foreign adoption authorities.

COA has developed a case transfer tip sheet that you may find helpful, as it outlines a number of considerations as you implement your plan.

https://coa.my.salesforce.com/sfc/p/#300000000aAU/a/500000000KuW/
8iLwG4tUPMCWCOEk3A48NchcMsm6mfO4FYNXVqfU0BE=

Let me know if you have any additional questions.

Becky

**From:** Melvin, Kelsey [mailto:kelsey@faithadopt.org]
**Sent:** Thursday, March 29, 2018 6:10 PM
**To:** Rebecca Slife <rslife@coanet.org>; John Meske <john@faithadopt.org>
**Subject:** Question about Transfer Cases

Rebecca,

In an email you sent earlier this month, you stated, "during the period in in which you are not accredited, you are not able to provide adoption services unless you are supervised by a Primary Provider."

What does this mean? We can continue to provide adoption services, so long as we have a supervised provider agreement with someone and they are overseeing us providing these services? What evidence do we need to show that they are overseeing us?

As you can imagine, our transfer agencies have many questions and we are unsure as to the correct way to answer them. We would appreciate your immediate guidance, as we have just one day to notify our families prior to the expiration and we are heading into a holiday weekend. We need to be able to provide them with accurate guidance.

## Kelsey Melvin, MSW

Assistant Director
FAITH INTERNATIONAL ADOPTIONS
1105 Tacoma Avenue South
Tacoma, WA 98402
Phone (253) 383-1928
FAX (253) 572-6662
www.faithadopt.org

This e-mail, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged &/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me via return e-mail or via telephone at (253) 383-1928 and permanently delete the original and any copy of any e-mail and any printout thereof.



FAITH
INTERNATIONAL

Meske, John <john@faithadopt.org>

## Fwd: Email from Trish

**Meske, John** <john@faithadopt.org>
To: "Deborah Price, BSW" <Debbie.p@chiadopt.org>

Tue, Apr 3, 2018 at 11:34 AM

## John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

---------- Forwarded message ----------
From: **Richard Klarberg** <Rklarberg@coanet.org>
Date: Tue, Apr 3, 2018 at 6:24 AM
Subject: RE: Email from Trish
To: John Meske <john@faithadopt.org>

I agree.

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Tuesday, April 03, 2018 9:17 AM
**To:** Richard Klarberg
**Cc:** Jayne Schmidt; Rebecca Slife
**Subject:** Re: Email from Trish

Thank you Richard. I look forward to hearing back. Does not seem legal that Trish could change what the CFRs provide. It provides you with discretion to defer and does say that you cannot defer past the expiration date.

John J. Meske

On Apr 3, 2018, at 5:36 AM, Richard Klarberg <Rklarberg@coanet.org> wrote:

Good morning John:

I am speaking with our Washington counsel this AM/early PM. I have sent them the text of Trish's email, as well as copies of your email of last night and yesterday afternoon. I will be back in touch later today/tonight.

R

https://mail.google.com/mail/u/0/?ui=2&ik=9c276dc002&jsver=uln2IVdyiuk.en.&cbl=gmail_fe_180502.07_p5&view=pt&msg=1628cc99669e8a14&q=Rklarberg%4

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Monday, April 02, 2018 8:01 PM
**To:** Richard Klarberg
**Subject:** Email from Trish

Dear Richard.

Here is an email sent from Trish Maskew to Carol Albers of Adopt Abroad.

She once again cites the code incorrectly. Where in the Code does it say that COA's failure to issue a final decision prior to the ASP's expiration to be consider s refusal to review or an adverse action?

COA issued a deferral notice saying it did not have enough time to have the commission review the responses which were timely filed. It did not fail to take action or refuse accreditation. We were even given another review date. We repeatedly requested COA review and issue our re-accreditation

John J. Meske

Dear Dr. Albers,

Thank you for your recent email and letter about Adopt Abroad Inc.'s re-accreditation process and recent suspension.

The Council on Accreditation (COA) was the accrediting entity responsible for deciding Adopt Abroad Inc.'s application for renewal of accreditation. In accordance with 22 CFR § 96.27(a), "The accrediting entity may not grant an agency accreditation or a person approval, or permit an agency's or person's accreditation or approval to be maintained, unless the agency or person demonstrates to the satisfaction of the accrediting entity that it is in substantial compliance with the standards in subpart F of this part." In evaluating an application for renewal of accreditation, the AE is required under 22 CFR § 96.24(b)(3) to "consider any complaints received by the accrediting entity." It is our understanding that Adopt Abroad did not satisfy COA by the expiration of its accreditation on March 31, 2018, that it was in substantial compliance with the applicable standards.

Where the ASP has a renewal application that is pending with the AE and the ASP's accreditation expires because the ASP did not demonstrate to the satisfaction of the AE that it is in substantial compliance prior to the expiration date, the expiration of accreditation constitutes a "refusal to renew" pursuant to 22 CFR §§ 96.63(c) and 96.77(c), which is an adverse action under 22 CFR § 96.75. Under the Regulations and COA's Department-approved Policies and Procedures, at that point the ASP becomes a "new applicant" for accreditation, and must obtain permission to submit a new application for accreditation from the AE that took such action before making a new application.

The Department designates accrediting entities to perform accreditation and approval functions and other tasks, including the review of complaints pursuant to section 202 of the Intercountry Adoption Act of 2000 (IAA) and sections 96.4, 96.6 and 96.7 of Title 22 of the Code of Federal Regulations (CFR). The Department does not contemporaneously review an accrediting entity's (AE) accreditation or approval

69

decisions, nor its decisions with respect to adverse actions under 22 CFR § 96.82(a), and is not authorized to influence or attempt to influence the AE's decisions.

An ASP that believes it has a grievance against COA may file a complaint in accordance with its policies and procedures manual, which can be found on COA's website (http://coanet.org/accreditation/hague-accreditation-and-approval/). The section on complaints against COA is located in chapter XVII, beginning on page 82 of the manual.

Sincerely,

Trish Maskew



**FAITH**
INTERNATIONAL

Meske, John <john@faithadopt.org>

## Re: FAQ on the Accrediting Entity Transition

**Richard Klarberg** <Rklarberg@coanet.org>
To: "Meske, John" <john@faithadopt.org>

Tue, Apr 3, 2018 at 4:03 PM

John - I am sorry for having been largely AWOL today. We have been working with counsel to develop a response to State's pronouncements. I'll be in touch.
Richard

On Apr 3, 2018, at 6:44 PM, Meske, John <john@faithadopt.org> wrote:

Hi Megan,

Here is a copy of the December 8, 2017 FAQ issued by State on the transition of cases from COA to IAAME. On the 4th page it addresses **"How will the transition impact ASP's seeking re-accreditation?"** It states the following:

**"All ASPs (adoption service providers) seeking renewal of their accreditation or approval in 2018 will complete the renewal process with COA."**

**"IAAME will re-accredit all ASPs seeking renewal in 2019 or later."**

From these answers, the MOU and CFRs, it is clear that COA is responsible for completing our re-accreditation and that there is nothing in any of these material that state that the failure of COA to complete the re-accreditation application before the expiration of the current accreditation constitutes a **refusal to renew.**

The State Department cannot change the law or the MOU. The law would have to have been legislated and comment periods provided.

Trish Maskew is attempting to close adoption agencies and stop inter-country adoption all to the harm of thousands of families, many who live in the State of Washington. Washington is the second most active State in the United States for inter-country adoption.

Thank you for your help.

John

## John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

---------- Forwarded message ----------
From: **Melvin, Kelsey** <kelsey@faithadopt.org>
Date: Mon, Apr 2, 2018 at 2:42 PM

Subject: Fwd: FAQ on the Accrediting Entity Transition
To: John Meske <john@faithadopt.org>

Kelsey Melvin, MSW

Assistant Director
FAITH INTERNATIONAL ADOPTIONS
1105 Tacoma Avenue South
Tacoma, WA 98402
Phone (253) 383-1928
FAX (253) 572-6662
www.faithadopt.org

This e-mail, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged &/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me via return e-mail or via telephone at (253) 383-1928 and permanently delete the original and any copy of any e-mail and any printout thereof.

---------- Forwarded message ----------
From: **Department of State Office of Children's Issues** <adoption@state.gov>
Date: Fri, Dec 8, 2017 at 12:21 PM
Subject: FAQ on the Accrediting Entity Transition
To: kelsey@faithadopt.org

Department of State Adoption Notice                    View this email in your browser



# NOTICE: FAQ on the Accrediting Entity Transition

**FREQUENTLY ASKED QUESTIONS**

**Transition of the Accrediting Entity Role from**
**Council on Accreditation (COA) to the**
**Intercountry Adoption Accreditation and Maintenance Entity, Inc. (IAAME)**

**December 8, 2017**

The following FAQ is drawn from questions the Office of Children's Issues has received about the announcement that COA will no longer be an accrediting entity after 2018. Additional questions and concerns that are not addressed here may be submitted by email to Adoption@state.gov. The Office of Children's Issues will respond to individual inquiries and will add additional Q&A to this document as new issues are raised.

<u>Background on COA and IAAME</u>

**Why did COA decide to withdraw as a designated accrediting entity (AE)?**

On October 6, 2017, COA informed the Department of State that it would be unable to continue to perform its duties as an accrediting entity (AE) due to "unforeseen circumstances." COA has publicly stated its view that the Department's enforcement of an AE's requirements under 22 CFR 96.7 as "inconsistent with COA's philosophy and mission."

**Is there any possibility COA will reverse its decision and continue as an AE?**

Under the terms of COA's Memorandum of Agreement with the Department and following COA's October 6 notice to the Department, both parties consulted and made an effort to find a solution that would enable COA to continue to perform its duties until the end of the Agreement. Following those consultations, COA confirmed that it would <u>withdraw from its role as a designated AE</u>. Accordingly, the <u>Intercountry Adoption Accreditation and Maintenance Entity (IAAME)</u>, which was designated as an AE on July 28, 2017, will assume full responsibility for the AE role by December 2018. Previous efforts aimed at aligning COA's and IAAME's procedures are now focused on transitioning all AE responsibilities to IAAME in that time frame.

**What is the last day of COA's service as a designated AE?**

COA will cease to be a designated AE in December 2018, unless COA and the Department agree on a different date. Addition information will be shared as it becomes available.

**Why is the Department starting over with a new AE rather than working with COA?**

The Department seeks to have multiple designated AEs and did not anticipate COA's decision to withdraw from its role as an AE. IAAME has fully committed to serving as an AE, and the Department is confident in its ability to do so. COA has indicated its commitment to a smooth transition.

**How will the transition from COA to IAAME impact families?**

The Department, COA, and IAAME are fully committed to a transition that does not interrupt intercountry adoption in the United States. We do not anticipate families will experience interruption to the adoption process as a result of the transition.

**What qualifies IAAME to be a designated AE?**

The Department posted an <u>FAQ about IAAME</u> and its qualifications on August 25, 2017. The Department conducted an extensive review of IAAME's qualifications and determined it meets eligibility requirements under 22 CFR 96.5(a) and has the capacity to meet all performance criteria under 22 CFR 96.6.

**Is it a concern that IAAME does not have experience with intercountry adoption?**

No. IAAME has a wealth of experience and expertise that qualify it to serve effectively as a designated AE. Although IAAME is a newly-formed organization, it is operated by a leadership team with extensive

experience in providing child welfare services, administering child welfare standards, applying regulations, contracting, licensing, monitoring, and domestic adoption. IAAME is well-positioned to apply its domestic experience monitoring compliance with and enforcing child welfare standards to the intercountry adoption field and will hire additional staff with relevant experience as needed. The Department will provide training and technical assistance and guidance as needed.

### What is the relationship between IAAME and Partnership for Strong Families?

Partnership for Strong Families (PFSF) contracts with the Florida Department of Children and Families to deliver comprehensive child welfare services to abused and neglected children in Florida Judicial Circuits 3 and 8. PFSF and IAAME are separate organizations that share leadership and operate as subsidiaries of Service Management Solutions for Children, Inc.

### Is IAAME an adoption agency and if so, should it be ineligible for designation as an AE under 22 CFR 96.6(f)?

22 CFR 96.6(f) requires that "except in the case of a public entity, [an AE] operates independently of any agency or person that provides adoption services, and of any membership organization that includes agencies or persons that provide adoption services." IAAME does not provide adoption services as defined in 22 CFR 96.2, and is therefore not an adoption agency or person.

### How and when can ASPs communicate directly with IAAME about questions and/or to give input and share expertise as it develops its policies and procedures?

The Department will schedule a conference call soon to provide an opportunity for ASPs and IAAME to communicate directly. For now, all questions about accreditation should be directed to COA, which is currently the AE for all accredited/approved ASPs. Questions about the transition should be directed to the Office of Children's Issues at Adoption@state.gov. ASP input may also be sent to Adoption@state.gov or held until IAAME is ready to hear from ASPs directly.

### Does the Department intend to designate additional AEs?

Under 22 CFR 96.4(a), the Secretary may designate one or more entities that meet the criteria set forth in 22 CFR 96.5 to perform accreditation and/or approval functions. The Department has always favored having multiple AEs, and intends to seek interest from additional AE candidates in the future. The Department continues to believe that having multiple AEs will result in the strengthening of the intercountry adoption accreditation and approval process by having more than one organization bring professional experiences and perspectives to the review and establishment of policies and procedures. The Department considers this to be a potential benefit to ASPs.

Last spring, the Department issued a Request for Statements of Interest (RSI) with the intent of having more than one AE as part of a strategy to strengthen the U.S. accreditation system. When the Department designated IAAME, we intended for IAAME and COA to work together to perform the AE duties as outlined in 22 CFR 96.7. Once IAAME completes its transition to AE, the Department will consider an appropriate time frame for publishing another RSI. At this time, however, we do not have a specific timeline for issuing another RSI to select and designate additional AEs.

### Has the Department considered designating public entities to accredit/approve adoption service providers in individual states?

Yes. The Department did not receive a Statement of Interest from any public entity in response to the March 2016 RSI, but would welcome submissions in response to future RSIs. 22 CFR 96.5(b) allows a public entity (other than a Federal entity) to an accrediting entity to qualify as an accrediting entity. For purposes of 22 CFR 96.5(b), "public entity" includes, but is not limited to, "any State or local government

or governmental unit or any political subdivision, agency, or instrumentality thereof, that is responsible for licensing adoption agencies in a State and that has expertise in developing and administering standards for entities providing child welfare services." The Department previously designated Colorado's Department of Family Services as an AE in 2006 during the first accreditation cycle in anticipation of the 2008 entry into force of the Hague Adoption Convention for the United States.

## Will IAAME have different standards of enforcement from COA?

There have been no changes to the regulations governing intercountry adoption, the AE role, or the performance standards for accredited/approved ASPs. The Department will have the same expectations of IAAME that is would have of any AE.

## Details about the Transition

### What is the timeline for the transition of the AE role from COA to IAAME?

Details are not yet available but will be disseminated as soon as possible. Under the terms of the 2016 Memorandum of Agreement between the Department and COA, COA will continue its responsibilities as an AE until December 2018, unless COA and the Department agree on a different date. The Department, COA, and IAAME are working together to create a more specific timeline and to establish transition procedures that will be smooth, collaborative, and have minimal impact on ASPs.

### How much information does IAAME have about COA's systems?

IAAME is fully aware of COA's policies and procedures, including those regarding self-studies, site visits, and fee structures as they are public information. IAAME is currently developing policies and procedures that must be reviewed and approved by the Department. Some existing procedures may remain in place while others may change.

## Impact on ASP Operations

### How will the transition impact a new agency or person that wants to seek accreditation or approval for the first time?

The initial accreditation process for first time applicants for accreditation or approval can be lengthy and new applicants may be unable to complete the accreditation process with COA before the end of 2018. Thus, new applicants will be able to apply in the spring of 2018 after IAAME has published its fee schedule and application procedures, as required for an AE to review new applications.

### How will the transition impact ASP's seeking re-accreditation?

**All ASPs seeking renewal of their accreditation or approval in 2018 will complete the renewal process with COA. According to the November 20 email from COA to all accredited/approved ASPs, COA will accept renewal applications from ASPs that: 1) are currently accredited or approved with an expiration date sometime in 2018; 2) file a complete application, complete the renewal agreement, and make payment of the fee by December 29, 2017, and 3) agree to complete a site visit by May 31, 2018.**

**IAAME will re-accredit all ASPs seeking renewal in 2019 or later. For those ASPs needing re-accreditation in January, February, March, and April 2019, IAAME will follow COA's procedures regarding tables of evidence without change. For those needing re-accreditation beginning May 2019 and later, IAAME will disseminate new policies and procedures for accreditation or approval, as required by 22 CFR 96.19(b), by the spring of 2018.**

75

**How similar will IAAME's reaccreditation process be to COA's?**

All policies and procedures must comply with the regulations governing the accreditation process, which have not changed. The Department expects IAAME to finalize its policies and procedures manual in early 2018. Procedures for ASPs are likely to be very similar, but there may be some differences in required documentation and in the length of time required to complete the accreditation renewal process.

**How will the transition impact monitoring and oversight of ASPs?**

The Department has instructed the AEs to increase monitoring and oversight, consistent with AE responsibilities under the Intercountry Adoption Act, the Universal Accreditation Act, and the federal regulations governing accreditation and approval. ASPs may notice increased enforcement of existing requirements, such as the use of foreign supervised provider agreements, and requests for additional documentation and/or reporting about financial stability, but any changes in how monitoring and oversight is conducted will be based on existing regulations.

**How will the transition affect small ASPs?**

The basic accreditation and monitoring and oversight processes should affect all ASPs in the same fashion, regardless of size. In general, ASPs with more placements or programs may need to provide more information to the AE and/or have longer site visits because they may have more complex operations to be reviewed, as is the case now.

**Will a COA renewal of accreditation that is completed between now and December 2018 count for a full four years?**

The transition will not affect the length of COA's renewal. COA will still give 4 year renewals when appropriate.

**Will accreditations that COA completed still be valid once the transition to IAAME is completed, or will ASPs be required to seek a new accreditation from IAAME?**

All accreditation dates will remain valid. ASPs will remain on the same accreditation cycle they are currently on, and their records will transfer to IAAME.

**My Certificate of Accreditation says "accredited by COA, certified by the Department of State." Will we receive a new certificate?**

We are consulting about this as part of the transition process and will provide more information as soon as it becomes available.

**How will outstanding complaints be handled and resolved?**

The Department intends that COA will resolve all existing complaints in process at the time of the transition; however, any complaint unresolved as of the transition date may be transferred to IAAME. New complaints and the monitoring and oversight process will begin transitioning to IAAME in late spring 2018.

**Will ASPs need to re-report or re-submit information and documentation to IAAME if it has already been submitted to COA?**

The Department expects that all files and documents regarding an ASP will transfer from COA to IAAME over the course of several months during 2018. ASPs should generally not have to re-submit anything.

76

**Will IAAME conduct in-depth financial reviews of ASPs?**

The Department has asked IAAME to develop and implement a more extensive monitoring and oversight process, which may result in ASPs being asked to provide more financial documentation than in the past. The depth and focus of the review may depend on a specific complaint or the circumstances of documentation submitted by a particular ASP in the accreditation or renewal processes.

Information Technology

**Will ASP and client information be protected when COA transfers files and data to IAAME?**

Yes, IAAME and COA will take all steps necessary to protect client information during the file transfer in accordance with regulations.

**Will IAAME have a different portal format?**

Yes. IAAME will provide details about its system and portal in time for ASPs to familiarize themselves with the technology.

**What kind of separation or firewall will there be between the operations of IAAME and its parent company?**

IAAME will put in place industry standard data protection and security.

Fees

**Will IAAME's fees be comparable to COA's?**

IAAME's fee schedule has not yet been finalized. In accordance with 22 CFR 96.8, fees will likely increase to cover all of IAAME's costs of its responsibilities under 22 CFR 96.7, but they will likely be structured differently in order to ameliorate the impact on agencies.

**What is driving fee increases?**

The regulations that govern the accreditation process require AEs to charge fees necessary to cover the cost of accreditation or approval (including, but not limited to, costs for completing the accreditation or approval process, complaint review and investigation, routine oversight and enforcement, and other data collection and reporting activities.) In past discussions about its fee schedule, COA has acknowledged the current fees do not completely cover its AE work.

As IAAME puts together its policies and procedures to implement its responsibilities as an AE, it is incorporating policies and procedures the Department identified as essential to successfully and effectively overseeing accredited/approved adoption service providers. The AE should increasingly focus on accreditation standards that, if not observed, put children and families at risk, such as ASP financial solvency and requirements to return funds to families for services not rendered, increased transparency regarding use of foreign supervised providers and funds provided to them, greater accountability for adoption fees, and improved data collection and analysis to identify trends and better track cases at key milestones. This is needed to ensure more robust enforcement of the regulations and will enhance confidence and transparency in the accreditation, renewal, and monitoring processes that will benefit ASPs, children, and families.

**How will monitoring and oversight fees be handled in light of the transition?**

77      COA has typically charged monitoring and oversight fees annually on May 1. To maintain this schedule,

the Department is transitioning the monitoring and oversight responsibility to IAAME in the spring of 2018. ASPs that typically pay monitoring and oversight fees early should wait until IAAME's fee schedule is published, which will clarify the entire fee structure including fees for monitoring and oversight.

**Other**

**Will there be changes or revisions to the core standards for accreditation?**

The standards are based on regulations and will change only through the established regulatory revision process, not as a result of this transition. There may be changes to the weight of certain standards and the evidence requested to demonstrate substantial compliance, including documents required for the self-study or the site visit. ASPs will be given advanced notice of any changes that occur as required by 22 CFR 96.27(d).

**Can the Department build in a requirement that the AE will respond to ASP questions and provide information to ASPs in a timely manner?**

The Department understands the need for AEs to expeditiously respond to ASPs and complainants and has communicated this priority to IAAME. The Department is confident that IAAME has the capacity and will make all efforts necessary to respond expeditiously to ASPs and complainants. We appreciate hearing about specific concerns and requests that ASPs have for their new relationship with IAAME. We encourage ASPs to submit information to us by email at Adoption@state.gov so that we may incorporate these comments in our ongoing discussions with IAAME.

**Why is the Department increasing monitoring and oversight at this time?**

The Department is responsible for ensuring the U.S. accreditation standards are being implemented, applied, and enforced across the board for all ASPs and in all country programs. Monitoring and oversight is intended to be ongoing. The Department is seeking a dynamic process that ensures ASPs are in compliance with accreditation standards at all times for the protection of children, birth families, and adoptive families.

**Is the Department trying to limit the number of ASPs?**

No. The Department encourages AEs to accredit or approve all ASPs that meet the requirements of the accreditation regulations in 22 CFR Part 96.

**Can an ASP choose to stay with COA?**

No, COA will cease to be an AE in December 2018 or sooner if the Department and COA agree on an earlier date. ASPs will be required to work with IAAME, which is currently the only other designated AE.

Want to change how you receive these emails?
You can update your preferences or unsubscribe from this list

 **FAITH**
INTERNATIONAL

**Melvin, Kelsey <kelsey@faithadopt.org>**

## Question about Transfer Cases

**Meske, John** <john@faithadopt.org>                                                      Wed, Apr 4, 2018 at 12:57 PM
To: Rebecca Slife <rslife@coanet.org>
Cc: "Melvin, Kelsey" <kelsey@faithadopt.org>, Jayne Schmidt <Jschmidt@coanet.org>, Richard Klarberg
<Rklarberg@coanet.org>

We are really upset that a family that we transferred to ATWA as the primary provider in Japan, was denied their visa on Monday at the Embassy because they said that Trish wanted a full review of the file. Then they asked questions that are totally unrelated to the process in Japan. The Consular officer told the family that everything was in order. Another family that has been transferred had their visa interview cancelled. This is the sister of Congressman Kinzinger who sits on the House Foreign Relations Committee. His staff has been calling all day.

Why is Trish or State doing this if the cases have been transferred to the only other agency with experience in Japan?

This is the result of the failure to complete the accreditation. We are so angry

### John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

On Wed, Apr 4, 2018 at 12:47 PM, Rebecca Slife <rslife@coanet.org> wrote:

Hello John,

I understand you are connected with Richard with questions regarding your renewal application. Please continue to direct questions and communication regarding this to him.

As I stated in my previous email, I am available to answer questions regarding your case transfers.

Best,

Becky

**From:** Meske, John [mailto:john@faithadopt.org]
**Sent:** Tuesday, April 03, 2018 4:41 PM
**To:** Rebecca Slife <rslife@coanet.org>

**Cc:** Melvin, Kelsey <kelsey@faithadopt.org>

**Subject:** Re: Question about Transfer Cases

Hi Becky,

There should be more than discussions with the attorneys. They should be speaking with the attorneys at the State Department that oversee Trish and her office. They should be seeking specific performance.

We do not have full knowledge of what has happened here. Our accreditation should have been issued before March 31, 2018. That was not done as it was clearly not a priority.

The question is did you know in advance that State would take the position that failure to complete our accreditation would constitute a refusal to renew?

We have taken action to protect our families. We anticipate State doing other things to harm the families.

This should have been avoided.

John


**John J. Meske, JD**

Executive Director, Faith International Adoptions

1105 Tacoma Avenue South, Tacoma, WA 98402

Phone: (253)383-1928  |  Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

On Tue, Apr 3, 2018 at 11:29 AM, Rebecca Slife <rslife@coanet.org> wrote:

Hello John,

I know Richard has been in communication with you and please know that we continuing to discuss this situation with our attorneys. I regret that I do not have more information at this time, but please be assured that Richard, Jayne, or I will be in touch soon.

That being said, our mutual goal is ensure this has as little impact on clients as possible. It is an understandable challenge to transfer a high volume of cases, and I am available to support you with any questions you have, including any case-specific issues that you may encounter.

Best regards,

Becky

**From:** John Meske [mailto:john@faithadopt.org]
**Sent:** Monday, April 02, 2018 11:58 PM
**To:** Rebecca Slife <rslife@coanet.org>
**Cc:** Melvin, Kelsey <kelsey@faithadopt.org>; aacarola@adopt-abroad.com
**Subject:** Re: Question about Transfer Cases

Rebecca I cannot tell you how shocked we are of the consequences of not reviewing our final submission prior to our expiration date. It was uploaded on Monday, March 26. That was only one business day after receiving the commission report asking, for the first time, questions of our relationship with Canada. You know all this but your failure to have it reviewed as effectively closed our agency.

The harm and financial loss is immeasurable. I am in direct contact with Richard in the hope that his lawyers will find a solution and hope they can.

What a disappointment this has been. It is clear that legal action is a strong possibility.

This should have been avoided. The CFRs required you to timely process our re-accreditation. At least there is a good paper trail to answer that question.

I had to let you know how I feel. This is a shared opinion. Now after 24 years of serving orphans our mission is taken from us, not for us being out of compliance but for your failure to act on our case.

I pray that Richard finds a solution and that no other agency suffers this level of harm.

John J. Meske

On Mar 30, 2018, at 10:53 AM, Rebecca Slife <rslife@coanet.org> wrote:

Case 2:18-cv-00731-RBL   Document 21   Filed 06/21/18   Page 82 of 125

Hello Kelsey,

Thank you for your questions. As part of the case transfer process, we ask for evidence that the agencies who are named as accepting the cases have agreed to accept the cases. They would need to understand that they will be responsible for fulfilling their duties as a primary provider, including developing services plans, entering into a contract with PAPs, providing a fee schedule, grievance procedures, etc. Additionally, if FIA has any SP or SFP agreements in place for providers who are going to continue to provide services in a case, the new PP would need to enter into their own agreements with the providers. The ATS would also need to be updated and USCIS would need to be notified for any cases in which there is a pending adjudication as the new ASP would go on record as acting as a primary provider. Lastly, if FIA would going to attempt to pursue this type of arrangement, COA would want evidence that it is permissible by any foreign adoption authorities.

COA has developed a case transfer tip sheet that you may find helpful, as it outlines a number of considerations as you implement your plan.

https://coa.my.salesforce.com/sfc/p/#300000000aAU/a/50000000
0KuW/8iLwG4tUPMCWCOEk3A48NchcMsm6mfO4FYNXVqfU0BE=

Let me know if you have any additional questions.

Becky

**From:** Melvin, Kelsey [mailto:kelsey@faithadopt.org]
**Sent:** Thursday, March 29, 2018 6:10 PM
**To:** Rebecca Slife <rslife@coanet.org>; John Meske <john@faithadopt.org>
**Subject:** Question about Transfer Cases

Rebecca,

In an email you sent earlier this month, you stated, "during the period in in which you are not accredited, you are not able to provide adoption services unless you are supervised by a Primary Provider."

What does this mean? We can continue to provide adoption services, so long as we have a supervised provider agreement with someone and they are overseeing us providing these services? What evidence do we need to show that they are overseeing us?

As you can imagine, our transfer agencies have many questions and we are unsure as to the correct way to answer them. We would appreciate your immediate guidance, as we have just one day to

notify our families prior to the expiration and we are heading into a holiday weekend. We need to be able to provide them with accurate guidance.

## Kelsey Melvin, MSW

Assistant Director
FAITH INTERNATIONAL ADOPTIONS
1105 Tacoma Avenue South
Tacoma, WA 98402
Phone (253) 383-1928
FAX (253) 572-6662
www.faithadopt.org

This e-mail, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged &/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me via return e-mail or via telephone at (253) 383-1928 and permanently delete the original and any copy of any e-mail and any printout thereof.



**Meske, John <john@faithadopt.org>**

# Re: Thinking, thinking

**Meske, John** <john@faithadopt.org>
To: Richard Klarberg <Rklarberg@coanet.org>

Thu, Apr 5, 2018 at 11:28 AM

Will look for the appropriate attorney.

Will let you know.

Thanks Richard.


## John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

On Thu, Apr 5, 2018 at 11:25 AM, Richard Klarberg <Rklarberg@coanet.org> wrote:

> I am not sure that DoJ would intercede. A federal court would. There is the possibility of obtaining a TRO pending the determination of the matter. Again, just thinking.
>
>
> **From:** Meske, John [mailto:john@faithadopt.org]
> **Sent:** Thursday, April 05, 2018 2:24 PM
> **To:** Richard Klarberg
> **Subject:** Re: Thinking, thinking
>
>
> Yes but what court. Federal Court action. I was thinking if a review could be done by the Department of Justice. That would be faster. Is it possible.
>
>
>
> ## John J. Meske, JD
>
> Executive Director, Faith International Adoptions
>
> 1105 Tacoma Avenue South, Tacoma, WA 98402
>
> Phone: (253)383-1928 | Fax: (253) 572-6662| www.faithadopt.org


**Melvin, Kelsey** <kelsey@faithadopt.org>

## Couple stuck in the middle of international adoption battle | WSB-TV

**Meske, John** <john@faithadopt.org>                                Wed, Apr 11, 2018 at 2:37 PM
To: Richard Klarberg <Rklarberg@coanet.org>
Cc: Kelsey Melvin <kelsey@faithadopt.org>, Jayne Schmidt <Jschmidt@coanet.org>

Thank you Richard. I will let you know what IAAME has to say. If we are lucky perhaps they can take it on and expedite the review using the material furnished in our review.

John

### John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

On Wed, Apr 11, 2018 at 2:36 PM, Richard Klarberg <Rklarberg@coanet.org> wrote:
Totally unnecessary & cruel. Just know that we will do what we can to be of help. Keep me posted & good luck.
Richard

On Apr 11, 2018, at 5:28 PM, Meske, John <john@faithadopt.org> wrote:

Hi Richard,

Thank you for your email. I feel that this is so unfair to Faith and to COA. It is sad because this all could have been avoided. As you can see the damages to the families are mounting.

We have a conference call with Kim at IAAME on Friday. Will let you know how this goes.

### John J. Meske, JD

Executive Director, Faith International Adoptions
1105 Tacoma Avenue South, Tacoma, WA 98402
Phone: (253)383-1928 | Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

On Wed, Apr 11, 2018 at 10:19 AM, Richard Klarberg <Rklarberg@coanet.org> wrote:

Good morning John,

As requested, I am writing to provide you with an update regarding the status of Faith International Adoption's (Faith) most recent application for accreditation.

As you know, on April 2, 2018, the State Department issued a notice stating that the renewal applications for three adoption service providers ("ASPs"), including Faith, "have been refused" by COA. When COA received this communication, we were in the process of reviewing your agency's application and had planned to determine whether accreditation would be appropriate after the lapse period. Accordingly, we had not made an express "refusal to renew" determination.

Since receiving the April 2 notice, we wrote to David Brizzee, the new acting director of the Office of Children's Issues at the State Department, to clarify this point. In that communication, we explained that in several other cases where the accreditation period had lapsed, we worked with the ASP to see if its accreditation could soon be renewed. We have found this interactive practice with ASPs helpful, though it never guarantees that the ASP would eventually be accredited. As we further explained to the State Department, continuing to work with a lapsed ASP at the end of the time period allowed COA to expeditiously make a decision after having completed a thorough review of all the relevant information. The State Department's April 2, 2018 notice was thus different from our prior interpretation of the relevant regulation and practice.

That said, at this time we understand the April 2 notice to constitute a final decision by the State Department pursuant with which we must comply. This means that we cannot take any further action on Faith's application as filed with COA and that any new application should be addressed to IAAME as the AAE which has jurisdiction given the decision by the State Department. Having said that, we intend to offer our assistance to IAAME in processing Faith's application should you elect to submit a new application. Our goal will be to make this all as seamless as possible despite the difficult circumstances of a transition. It is probably best if you contact IAAME to get the dialogue going. We know this is frustrating but it is where we are now with State and this program.

Best,

**<image001.jpg>**

<image002.jpg>

**Richard Klarberg** | President & CEO
Council on Accreditation
45 Broadway, 29th Floor | New York, NY 10006
main (212) 797-3000 x 260 | direct (212) 871-1230
mobile (917) 355-2964 | fax (866) 220-5026

<image003.jpg><image004.jpg><image005.jpg><image006.jpg>

**website | vCard | map | email**

**From:** Meske, John [mailto:john@faithadopt.org]
**Sent:** Tuesday, April 10, 2018 4:55 PM
**To:** Richard Klarberg; Kelsey Melvin
**Cc:** Chuck Johnson
**Subject:** Re: Couple stuck in the middle of international adoption battle | WSB-TV

Hi Richard,

I sent you an email asking why it was not possible to just set us a new site review date after "accepting a new application" before May 31.  There is nothing that would stop COA was utilizing the facts presented this last few months.  It essentially could be expedited.

We have heard that there are other agencies still having site reviews now and into May.

The DOS announcement said that COA will handle all re-accreditation applications as long as there is a site review before May 31.

Did DOS tell you that you cannot not continue doing accreditation?

Just need to know what is the best way to move forward.

Please respond as soon as possible.  Did you get a response from Trish's boss?

Thanks,


John


# John J. Meske, JD

Executive Director, Faith International Adoptions

1105 Tacoma Avenue South, Tacoma, WA 98402

Phone: (253)383-1928  |  Fax: (253) 572-6662 | www.faithadopt.org

The information contained in this electronic transmittal and any attachments may be confidential and/or subject to the attorney-client privilege, work-product doctrine, or other confidentiality privilege and is intended only for the recipient named above. If the reader of this information is not the intended recipient, employee, or agent responsible for delivery of this information to the intended recipient, any disclosure, dissemination, distribution, copying or action taken in reliance on the content of this information is strictly prohibited. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. If you have received this electronic transmittal in error, please notify me via return electronic transmittal or via telephone at (253) 383-1928 and permanently delete the original and any copy of this any electronic transmittal, all attachments and any printout thereof. I appreciate your cooperation and attention, and apologize for any inconvenience this may have caused you.

On Sun, Apr 8, 2018 at 1:46 PM, Richard Klarberg <Rklarberg@coanet.org> wrote:

This is so upsetting, frustrating and sad, and by "this" I mean not only as it pertains to the Tutterows but to the entire intercountry adoption community.

Richard

On Apr 8, 2018, at 4:10 PM, Chuck Johnson <cjohnson@adoptioncouncil.org> wrote:

If you look at her positions over the past 10 years, including those prior to joining the State Department, she is anti intercountry adoption and anti adoption service provider. We were very critical of her surprise appointment to this important position in October 2014, and all of our concerns about her have proven to be founded.

Sent from my Verizon 4G LTE smartphone

-------- Original message --------
From: John Meske <john@faithadopt.org>
Date: 4/8/18 3:58 PM (GMT-05:00)
To: Chuck Johnson <cjohnson@adoptioncouncil.org>
Cc: Ryan Hanlon <rhanlon@adoptioncouncil.org>, bonnie.walsh@mail.house.gov, Megan_Utemei@murray.senate.gov, Kelsey Melvin <kelsey@faithadopt.org>, alextutterrow@gmail.com, Rklarberg@coanet.org
Subject: Re: Couple stuck in the middle of international adoption battle | WSB-TV

Hi Chuck.

But the family still has not received the visa. Hope to hear from them later today.

Chuck does Trish have something against me and Faith or are we just a victim of her fight with COA?

John J. Meske

On Apr 8, 2018, at 12:42 PM, Chuck Johnson <cjohnson@adoptioncouncil.org> wrote:

You are right. Glad the family was approved. It was all so unnecessary.

Sent from my Verizon 4G LTE smartphone

-------- Original message --------
From: John Meske <john@faithadopt.org>
Date: 4/8/18 1:01 AM (GMT-05:00)
To: Chuck Johnson <cjohnson@adoptioncouncil.org>, Ryan Hanlon
<rhanlon@adoptioncouncil.org>, bonnie.walsh@mail.house.gov,
Megan_Utemei@murray.senate.gov, Kelsey Melvin
<kelsey@faithadopt.org>, alextutterrow@gmail.com,
Rklarberg@coanet.org
Subject: Couple stuck in the middle of international adoption battle | WSB-TV

This is the Tutterow family. The birth was interviewed by the
Embassy.
The cleared the case and set the visa interview. This case is no
different than any other ethical, legal and transparent adoption.
This
unnecessary delay and financial and emotional distress is the
result
of Trish Maskew. Absolutely no reason that this should be
happening or
the Slowik family being delayed as well.

Trish Maskew must be held responsible for her intentional harm
she
brings to families, children and ethical agencies.

Ethical agencies are being forced into bankruptcy or closure
because
of her unreasonable behavior. Trish Maskew basically says that
she can
do anything she wants, interpret law in any manner she wishes, all
because she works for the government. We live in a democratic
country
operating under the rule of law.  This behavior should not be
tolerated.

Here is the link to another article in the Tutterow family.

We pray that this stops and all the families, including the Tutterow
and Slowik families, can complete the processing of their
Adoptions.

https://www.wsbtv.com/news/local/forsyth-county/couple-stuck-in-
the-middle-of-international-adoption-battle/728888160

John J. Meske

# EXHIBIT B



# PCR/Commission Review Report

## Faith International Adoptions, Inc.
### Tacoma, WA

### 3084

| PCR Report Sent: | November 15, 2017 | PCR Response Due: | December 27, 2017 |
|---|---|---|---|
| Commission Report Sent: | | Commission Response Due: | |
| Commission Report Sent: | | Commission Response Due: | |
| Commission Report Sent: | | Commission Response Due: | |

**Summary of standards and related Evaluator Team non-compliance reason(s) that must be addressed prior to achieving accreditation:**

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| FRM 96.33.f | 4 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency acknowledges that they do not solicit charitable donations but will accept both in-kind and monetary donations. Charitable donations policy does not include written procedures outlining safeguards in place to prevent influencing child placement decisions. During interviews, staff was not able to articulate how they recognize and |

COUNCIL ON ACCREDITATION

45 Broadway, 29th Floor, New York, NY 10006 • toll free: 866-262-8088   tel: 212.797.3000   fax: 212.797.1428   www.coanet.org

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | acknowledge cash donations that are received on behalf of clients. Employees were unclear how to put policy into practice. Practice or documentation does not address, or is in opposition to, the standard's requirements. This rating is based on capacity. |
| EPR 96.35.b | 3 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: The agency's Executive Verification discloses all of the information required by this standard. Appropriate policies and procedures, provided in Self Study, are in place. Team was presented with case records on site related to placement of children from Japan with adoptive parents in Canada, which are not subject to review by COA, per 96.25. However, team was unable to verify that agency is authorized to provide adoption services by the Central Authorities in Canada (e.g. provinces of British Columbia, Saskatchewan), which relates to element #9 of this standard. Additionally, agency has identified an adoption case in Ethiopia in which it is the Primary Provider, but is not clear if the agency is authorized to work in that country. Practice, as is, may compromise care of consumers organizational functioning, or consistency with the aims of the Hague Convention and the IAA. This rating is based on performance. |
| IFQ 96.39.a | 3 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: Self Study includes procedures which outline the disclosure of required information as well as sample Info packet which includes information outlined in standards (specific to India program, as example), and demonstrates the agency's capacity to comply with standard. During interviews on site, employees indicated that they do provide the information to clients upon request, but this is not documented in files. A significant aspect of the organization's operations or service delivery deviates from the standard's requirements or from written material, or |

2

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | capacity is at a basic level. Team unable to verify compliance based on actual performance. |
| IFQ 96.39.b | 4 | F | EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency's procedures indicates that they provide this information in the Info packet. Team observed on site that they agency does maintain statistics with information outlined in the standard; however, team was unable to verify that disclosure is made to PAPs or general public that this information can be requested. Practice or documentation does not address, or is in opposition to, the standard's requirements. This rating is based on performance. |
| IFQ 96.39.d | 4 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency has a waiver clause in their adoption service contract; this contract appears to be a blanket waiver that limits PAP's ability to sue the agency regardless of anything they do. This was observed in the service contract in clients' files. A significant aspect of agency's operations deviates from the standard's requirement. This rating is based on performance. |
| IFQ 96.40.a | 3 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: Self Study evidence includes copy of information packet which outlines expected total fees, and policies which indicate it is provided to PAPs upon request; additional, country-specific versions of information packets also reviewed by team on site. During interviews with team on site, staff articulated details of how and when fees are collected and would be refunded to clients. However, no evidence was found during record review that documents provision of this information to PAPs. A significant aspect of the organization's operations or service delivery deviates from the standard's requirements or from written material. |

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 4 of 13

94

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | This rating is based on performance. |
| SPD 96.44.a | 3 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: Case record review revealed that the agency has developed service plans for both Hague adoptions and UAA cases; however, the team found that the agency was inconsistent in developing a service plan that meets all of the requirements of the standard. In multiple case records reviewed on site team observed that agency identified themselves as exempt provider, but no accredited Primary Provider had been identified for the case, and no service plan was present in the case records. Specifically, these cases include: 8 open cases total including Ukraine (S, C, Y, E, A, and V clients), Gambia (J/S client), Sierra Leone (Z client) and Ethiopia (A client).  Independent contract workers were not identified in relevant service plans reviewed in records. Service Plans did not address assuming custody of a child because of a disruption pending alternative placement. Several client files were missing service plans altogether (specifically observed for cases in Ghana, India, Panama, and Guinea). Significant omissions or exceptions to the standard occur with regularity. This rating is based on actual performance. |
| SPD 96.44.b | 3 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency is currently acting as primary provider for most of their intercountry cases, and has the infrastructure to oversee adoption services in those cases. In several cases, specifically for 8 adoptions from Ukraine, Gambia, and Ethiopia, they have identified themselves as exempt provider but no accredited Primary Provider has been identified (see 96.44a). Team noticed that they considered a facilitator in Ukraine as the Primary Provider in the country; agency appears unaware that accredited Primary Provider is required for these cases. A |

4

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 5 of 13

95

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | significant aspect of the organizations operations deviate from the standard requirements. This rating is based on actual performance. |
| SPD 96.45.a | 3 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency has policies and procedures in place which outline how they assess suitability of supervised providers and enter into formal agreements with those providers. Team verified that agency collects documentation which verifies suitability and agency confirmed with team on site that they only work with Hague accredited agencies as supervised providers. However, in several case records reviewed on site, specifically for adoptions from Ukraine, Gambia, and Ethiopia, the agency has identified themselves as exempt provider but no accredited Primary Provider has been identified for the case (see 96.44 a,b). As the only accredited provider acting on these cases, the agency is de facto the Primary Provider in these instances, and as such does not appear to be properly identifying and overseeing supervised providers. Practice, as is, may compromise care of consumers organizational functioning, or consistency with the aims of the Hague Convention and the IAA. This rating is based on performance. |
| SPD 96.45.b | 3 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency uses supervised providers in the United States, to provide adoption services. Team verified compliance with this standard by reviewing agreements in place with providers, which included all required elements of the standard, and confirming with supervised providers by phone that they are performing service they are contracted to do for PAPs. However, in several case records reviewed on site, specifically for adoptions from Ukraine, Gambia, and Ethiopia, the agency has identified themselves as exempt provider but no accredited Primary Provider has been identified for the case (see 96.44 |

96

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | a,b). As the only accredited provider acting on these cases, the agency is de facto the Primary Provider in these instances, and as such does not appear to be properly identifying and overseeing supervised providers. Practice, as is, may compromise care of consumers organizational functioning, or consistency with the aims of the Hague Convention and the IAA. This rating is based on performance. |
| SPD 96.46.a | 4 | F | EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency has policies and procedures that outline how they would engage with foreign supervised providers. When interviewed staff detailed how they would vet new providers. However, team did not find evidence to show that they had actually done this. In several case records reviewed on site, specifically for adoptions from Ukraine, Gambia, and Ethiopia, the agency has identified themselves as exempt provider but no accredited Primary Provider has been identified for the case. As the only accredited provider acting on these cases, the agency is de facto the Primary Provider in these instances, and as such does not appear to be properly identifying and overseeing supervised providers. The adoption service provider's observed operations and service delivery show signs of neglect and there is a clear need for increased capacity. This rating is based on performance. |
| SPD 96.46.b | 4 | F | EVALUATOR TEAM NON-COMPLIANCE REASONS: This agency has one foreign supervised provider contract in place in Japan. A review of contract confirmed that all elements of the standard are included. Team also confirmed this by speaking with representative from Supervised Provider agency by phone. However, in several case records reviewed on site, specifically for adoptions from Ukraine, Gambia, and Ethiopia, the agency has identified themselves as exempt provider but no accredited Primary Provider has been identified for the |

6

7

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | case (see 96.44 a,b). As the only accredited provider acting on these cases, the agency is de facto the Primary Provider in these instances, and as such does not appear to be properly identifying and overseeing supervised providers. Practice, as is, may compromise care of consumers organizational functioning, or consistency with the aims of the Hague Convention and the IAA. |
| IC 96.48.e | 4 | F | EVALUATOR TEAM NON-COMPLIANCE REASONS: Team was not able to confirm any child specific training documented in case records. Exempt and supervised providers indicated during phone interviews and in some contracts that they are not responsible for providing this to families. The organization does not have any of the necessary components of the basic framework that the standard requires. This rating is based on actual performance. |
| IC 96.48.h | 4 | F | EVALUATOR TEAM NON-COMPLIANCE REASONS: When agency performs home study there appears to be consistent documentation of client training in case records. However, in some instances where agency uses supervised or exempt provider to conduct home study, detailed documentation of training was not present in case records. Practice is basically sounds and reflects strong capacity with room to improve. This rating is based on actual performance. |
| IC 96.49.g | 3 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: The team reviewed case records on site and found that there were full medical reports present for their programs in Japan, China, and India. In other country programs, notably in cases reviewed Guinea, team found that there were brief medical summaries without underlying medical reports. Client interviewed by team indicated that agency had follow up communication with country of origin to obtain additional |

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | information. Team also viewed email communication between agency and employee in country to request additional information; however, these efforts were not well documented in the majority of case records. A significant aspect of the organization's operations or service delivery deviates from the standard's requirements or from written material, or capacity is at a basic level. This rating is based on actual performance |
| IC 96.49.k | 4 | F | EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency's current contract says that PAPs have 72 hours to review and accept/reject child referral. Team found inconsistent timeframes given to PAPs in various versions of service agreement during record review (for instance, 30 days, 10 days, 14 days, and 72 hours were noted as time frames in different contracts). Few, if any, of the standards requirements are met. This rating is based on actual performance. |
| IC 96.50.d | 4 | C | EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency's policy and procedures submitted in Self Study indicate that agency will not assume custody of adopted child. Practice and documentation does not address the standard's requirement. Rating based on capacity. |

**Summary of requested evidence to demonstrate compliance with the identified standards:**
*Note: Submit all evidence in the portal.*

| Standard | Requested Evidence |
|---|---|
| FRM 96.33 | Agency's charitable donations policy, with revised procedures for ensuring appropriate safeguards will be followed to ensure that such donations do not influence child placement decisions in any way **96.33 (f)** |
| FRM 96.33 | Log of all donations received and the related expenditures incurred/donations given since the site visit with receipts for related expenditures and any other documentation evidencing the agency's efforts to ensure donations do not influence child placement decisions **96.33 (f)** |
| FRM 96.33 | Evidence that relevant employees are aware of the procedures (e.g. dated memo to staff or minutes from a meeting at which the procedures were reviewed) **96.33 (f)** |
| EPR 96.35 | Documentation from applicable foreign Central Authorities that agency is authorized to work in Canada **96.35 (b)** |
| EPR 96.35 | Documentation or communication from foreign Central Authority in Ethiopia that indicates agency is authorized to work in that country **96.35 (b)** |
| IFQ 96.39 | Documentation from a sample of records (at least 2 records per country program) which demonstrates that the information outlined in the standard was provided to prospective clients upon initial contact **96.39 (a)** |
| IFQ 96.39 | Narrative describing the provider's ability to provide this information and how it will be provided. **96.39 (b)** |
| IFQ 96.39 | Revised adoption service contract and other documents with waivers of liability. **96.39 (d)** |
| IFQ 96.39 | Copy of relevant state law/regulations. **96.39 (d)** |
| IFQ 96.39 | Documentation demonstrating that relevant employees are informed of the waivers (e.g., dated memo or minutes from the meeting at which they were informed of the waivers). **96.39 (d)** |

| Standard | Requested Evidence |
|---|---|
| IFQ 96.40 | Documentation from a sample of records (at least 2 records per country program) which demonstrates that the information outlined in the standard was provided to applicants, prior to application **96.40 (a)** |
| SPD 96.44 | Evidence that agency has conducted an audit of all current cases where they are the Primary Provider, with results of audit that indicate which files are missing service plans **96.44 (a)** |
| SPD 96.44 | Evidence that, in all instances from agency's internal audit where service plans have been identified as being missing, the agency has developed a service plan and provided to clients **96.44 (a)** |
| SPD 96.44 | Revised service planning procedures **96.44 (a)** |
| SPD 96.44 | Evidence that employees are aware of the procedures (e.g., dated memo to staff or minutes from meeting at which the procedures were reviewed). **96.44 (a)** |
| SPD 96.44 | Policies and procedures, revised as needed, for acting as a primary provider. See also 96.44 (a)  **96.44 (b)** |
| SPD 96.44 | Updated service plan for the following cases which reflect the agency as the Primary Provider: Ukraine (S, C, Y, E, A, and V clients), Gambia (J/S client), Sierra Leone (Z client)  and Ethiopia (A client) **96.44 (a,b)** |
| SPD 96.44 | Evidence demonstrating that updated Service Plans have been provided to prospective adoptive parents **96.44 (a,b)** |
| SPD 96.45 | Updated Collaborative Relationships Profile **96.45 (a,b)** |
| SPD 96.45 | Copies of domestic supervised provider agreements, as applicable, associated with the cases identified under 96.44 (a,b): Ukraine (S, C, Y, E, A, and V clients), Gambia (J/S client), Sierra Leone (Z client)  and Ethiopia (A client). **96.45 (a,b)** |
| SPD 96.45 | Evidence of disclosures required by standard related to applicable domestic supervised providers associated with the cases identified under 96.44 (a,b): Ukraine (S, C, Y, E, A, and V clients), Gambia (J/S client), Sierra Leone (Z client)  and Ethiopia (A client). **96.45 (a)** |

| Standard | Requested Evidence |
|---|---|
| SPD 96.46 | Updated Collaborative Relationships Profile **96.46 (a,b)** |
| SPD 96.46 | Copies of foreign supervised provider agreements, as applicable, associated with the cases identified under 96.44 (a,b): Ukraine (S, C, Y, E, A, and V clients), Gambia (J/S client), Sierra Leone (Z client) and Ethiopia (A client), **96.46 (a,b)** |
| SPD 96.46 | Evidence of disclosures required by standard related to applicable foreign supervised providers associated with the cases identified under 96.44 (a,b): Ukraine (S, C, Y, E, A, and V clients), Gambia (J/S client), Sierra Leone (Z client)  and Ethiopia (A client). **96.46 (a)** |
| IC 96.48 | Procedures for how the agency will provide provided child-specific training to the prospective adoptive parents , which includes training related to all elements outlined in the standard **96.48 (c)** |
| IC 96.48 | Procedures for how the agency will provide prospective adoptive parents with additional in-person, individualized counseling and preparation, as needed, in light of the particular child to be adopted **96.48 (e)** |
| IC 96.48 | Evidence from 5 cases, including at least one from each country program in which the agency has  program, demonstrating compliance with the standards **96.48 (c,e)** |
| IC 96.48 | Evidence that employees are aware of the procedures (e.g., dated memo to staff or minutes from a meeting at which the procedures were reviewed) **96.48 (c,e)** |
| IC 96.48 | Evidence that agency has conducted an audit of all current cases where the agency uses exempt or supervised providers to perform home study, and and results of review which identify all cases in which training and preparation has not been documented in the adoption record **96.48 (h)** |
| IC 96.48 | Evidence documenting training and preparation provided to prospective adoptive parents, in all instances from agency's internal audit where documentation of training and preparation has been identified as being missing **96.48 (h)** |
| IC 96.49 | Revised procedures for making reasonable efforts to obtain information and for documenting efforts made in adoption record **96.49 (g)** |

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 12 of 13

102

| Standard | Requested Evidence |
|---|---|
| IC 96.49 | Evidence that relevant employees are aware of the procedures (e.g., dated memo to staff or minutes from meeting at which the procedures were reviewed). **96.49 (g)** |
| IC 96.49 | Evidence from 5 cases demonstrating compliance with the standard **96.49 (g)** |
| IC 96.49 | Revised/current version of agency's adoption service contract which includes time frame required by the standard, including all copies of country specific contracts, if applicable **96.49 (k)** |
| IC 96.49 | Narrative that explains the discrepancies observed in adoption service contracts related various time frames given for prospective adoptive parents to review referral, and which outlines what the agency will do to ensure that the issue has been corrected **96.49 (k)** |
| IC 96.49 | Evidence that agency has conducted an audit of all current cases where clients have not been presented with child referer, with results of audit that indicate which clients received service agreements citing incorrect time frames **96.49 (k)** |
| IC 96.49 | Evidence that, in all instances from agency's internal audit where adoption service contract does not provide two weeks to consider the child referral, the agency has provided clients with a revised contract **96.48 (k)** |
| IC 96.50 | Policy and procedures for children whose placement has disrupted, which address assumption of custody of child **96.50 (d)** |
| IC 96.50 | Evidence that relevant employees are aware of the procedures (e.g., dated memo to staff or minutes from meeting at which the procedures were reviewed) **96.50 (d)** |

*Standard Value: M – Mandatory; C – Critical; F – Foundational*

*Sections Reviewed for this organization:*

12

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 13 of 13

103

13

| | |
|---|---|
| CRR | *Responding to Complaints and Records and Reports Management* |
| EPR | *Ethical Practices and Responsibilities* |
| FRM | *Financial and Risk Management* |
| IC | *Standards for Cases in which a Child is Immigrating to the U.S.* |
| IFQ | *Information Disclosure, Fee Practices, and Quality Control Policies and Practice* |
| LCG | *Licensing and Corporate Governance* |
| PQT | *Professional Qualifications and Training for Employees* |
| SPD | *Service Planning and Delivery* |

# EXHIBIT C



# PCR/Commission Review Report

## Faith International Adoptions, Inc.
### Tacoma, WA

**3084**

| PCR Report Sent: | November 15, 2017 | PCR Response Due: | December 27, 2017 |
|---|---|---|---|
| Commission Report Sent: | February 21, 2018 | Commission Response Due: | April 23, 2018 |
| Commission Report Sent: | | Commission Response Due: | |
| Commission Report Sent: | | Commission Response Due: | |

**Summary of standards and related Evaluator Team non-compliance reason(s) that must be addressed prior to achieving accreditation:**

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| *FRM 96.33.f* | 3 | C | **1/18/18 Commission Comment:**<br>The agency provided evidence demonstrating that they revised their policy and a memo signed by staff indicating they had read the revised policy. The agency also provided a list of donations received. However, the procedures provided do not detail the specific safeguards the agency has in place. For example, it is unclear what protections are in |

COUNCIL ON ACCREDITATION

45 Broadway, 29th Floor, New York, NY 10006 • toll free: 866-262-8088 tel: 212.797.3000 fax: 212.797.1428 www.coanet.org

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 2 of 14

106

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | place to ensure that prospective and adoptive families who make donations do not receive preferential treatment in a current adoption or a future adoption process.<br>EVALUATOR TEAM NON-COMPLIANCE REASONS:<br>Agency acknowledges that they do not solicit charitable donations but will accept both in-kind and monetary donations. Charitable donations policy does not include written procedures outlining safeguards in place to prevent influencing child placement decisions. During interviews, staff was not able to articulate how they recognize and acknowledge cash donations that are received on behalf of clients. Employees were unclear how to put policy into practice. Practice or documentation does not address, or is in opposition to, the standard's requirements. This rating is based on capacity. |
| EPR 96.35.b | 3 | C | 1/18/18 Commission Comment:<br>The agency has not provided documentation to demonstrate that they were authorized to provide services in Saskatchewan or Ethiopia.<br>EVALUATOR TEAM NON-COMPLIANCE REASONS:<br>The agency's Executive Verification discloses all of the information required by this standard. Appropriate policies and procedures, provided in Self Study, are in place. Team was presented with case records on site related to placement of children from Japan with adoptive parents in Canada, which are not subject to review by COA, per 96.25. However, team was unable to verify that agency is authorized to provide adoption services by the Central Authorities in Canada (e.g. provinces of British Columbia, Saskatchewan), which relates to element #9 of this standard. Additionally, agency has identified an adoption case in Ethiopia in which it is the Primary Provider, but is not clear if the agency is authorized to work in that |

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | country. Practice, as is, may compromise care of consumers organizational functioning, or consistency with the aims of the Hague Convention and the IAA. This rating is based on performance. |
| IFQ 96.39.d | 4 | C | Commission Comment: The agency includes a waiver for "ordinary negligence" rather than "gross negligence" (which is more commonly included in such contacts) without the agency explicitly detailing the risks that would be associated with "ordinary negligence" on the part of the agency's employees, directors, officers, volunteers, independent contractors, supervised providers and any agents. Such risks must be described in the contract and without such a description, it is unclear if this would constitute a blanket waiver. Also, the agency's contract asks clients to waive liability for the actions of foreign providers (some of whom would be foreign supervised providers) and the agency has not clearly articulated its responsibility to supervise foreign providers and the related risks associated with this part of the waiver. EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency has a waiver clause in their adoption service contract; this contract appears to be a blanket waiver that limits PAP's ability to sue the agency regardless of anything they do. This was observed in the service contract in clients' files. A significant aspect of agency's operations deviates from the standard's requirement. This rating is based on performance. |
| SPD 96.44.a | 3 | C | Commission Comment: The agency's audit identified 10 cases that were missing service plans and indicated those were requested. Agency provided copies of emails that were sent to those 10 clients, but the attached service plans were not provided so it was not possible to verify that those service plans |

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | met the requirements of the standards. |
| | | | Policies and procedures for acting as the primary provider and for service planning do not provide sufficient detail regarding how the agency makes the decision it will act as the primary provider both for cases in which the agency has a program and in cases where the agency doesn't have a program. It was unclear if the agency made any changes to these policies or procedures and if staff were made aware of the revisions (the email to staff only included a copy of the policy and procedures with no indication of what was changed). |
| | | | Agency only provided one of the 5 missing service plans for Ukraine cases and indicated in a narrative that 4 of those families have completed the adoptions but provided no evidence of that and no service plans were provided.  The 1 service plan provided for the V Family adopting from Ukraine does not name the foreign supervised provider. |
| | | | Agency provided the service plan for the J/S Client adopting from Gambia, but that agreement did not specify which foreign providers where supervised providers. |
| | | | Agency did not provide service plans for the Z client adopting from Sierra Leone. While the agency stated in a narrative that the client chose to discontinue their application and had previously worked with another ASP as the primary provider, there was no documentation of this. |
| | | | The agency indicated in a narrative that the A client adopting from Ethiopia has already completed the adoption process but did not provide evidence of this or a copy of a service plan. |
| | | | EVALUATOR TEAM NON-COMPLIANCE REASONS: |
| | | | Case record review revealed that the agency has developed service plans for both Hague adoptions and UAA cases; however, the team |

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | found that the agency was inconsistent in developing a service plan that meets all of the requirements of the standard. In multiple case records reviewed on site team observed that agency identified themselves as exempt provider, but no accredited Primary Provider had been identified for the case, and no service plan was present in the case records. Specifically, these cases include: 8 open cases total including Ukraine (S, C, Y, E, A, and V clients), Gambia (J/S client), Sierra Leone (Z client) and Ethiopia (A client). Independent contract workers were not identified in relevant service plans reviewed in records. Service Plans did not address assuming custody of a child because of a disruption pending alternative placement. Several client files were missing service plans altogether (specifically observed for cases in Ghana, India, Panama, and Guinea). Significant omissions or exceptions to the standard occur with regularity. This rating is based on actual performance. |
| SPD 96.44.b | 3 | C | Commission Comment: See 96.44 (a). EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency is currently acting as primary provider for most of their intercountry cases, and has the infrastructure to oversee adoption services in those cases. In several cases, specifically for 8 adoptions from Ukraine, Gambia, and Ethiopia, they have identified themselves as exempt provider but no accredited Primary Provider has been identified (see 96.44a). Team noticed that they considered a facilitator in Ukraine as the Primary Provider in the country; agency appears unaware that accredited Primary Provider is required for these cases. A significant aspect of the organizations operations deviate from the standard requirements. This rating is based on actual performance. |

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| SPD 96.45.a | 3 | C | Commission Comment:<br>The agency has sent out a request for one supervised provider agreement and documentation to ensure the supervised provider meets the requirements of 96.45 (a) but the agreement and documentation have not yet be returned.<br>EVALUATOR TEAM NON-COMPLIANCE REASONS:<br>Agency has policies and procedures in place which outline how they assess suitability of supervised providers and enter into formal agreements with those providers. Team verified that agency collects documentation which verifies suitability and agency confirmed with team on site that they only work with Hague accredited agencies as supervised providers. However, in several case records reviewed on site, specifically for adoptions from Ukraine, Gambia, and Ethiopia, the agency has identified themselves as exempt provider but no accredited Primary Provider has been identified for the case (see 96.44 a,b). As the only accredited provider acting on these cases, the agency is de facto the Primary Provider in these instances, and as such does not appear to be properly identifying and overseeing supervised providers. Practice, as is, may compromise care of consumers organizational functioning, or consistency with the aims of the Hague Convention and the IAA. This rating is based on performance. |
| SPD 96.45.b | 3 | C | Commission Comment:<br>See 96.45 (a)<br>EVALUATOR TEAM NON-COMPLIANCE REASONS:<br>Agency uses supervised providers in the United States, to provide adoption services. Team verified compliance with this standard by reviewing agreements in place with providers, which included all required elements of the standard, and confirming with supervised |

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | providers by phone that they are performing service they are contracted to do for PAPs. However, in several case records reviewed on site, specifically for adoptions from Ukraine, Gambia, and Ethiopia, the agency has identified themselves as exempt provider but no accredited Primary Provider has been identified for the case (see 96.44 a,b). As the only accredited provider acting on these cases, the agency is de facto the Primary Provider in these instances, and as such does not appear to be properly identifying and overseeing supervised providers. Practice, as is, may compromise care of consumers organizational functioning, or consistency with the aims of the Hague Convention and the IAA. This rating is based on performance. |
| SPD 96.46.a | 4 | F | Commission Comment: The agency provided two foreign supervised provider agreements for providers in Ukraine. They indicated that adoptions in the other countries had been completed. The language in the agreements does not specify how monitoring or supervision to ensure compliance with 96.46 (a) will occur. EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency has policies and procedures that outline how they would engage with foreign supervised providers. When interviewed staff detailed how they would vet new providers. However, team did not find evidence to show that they had actually done this. In several case records reviewed on site, specifically for adoptions from Ukraine, Gambia, and Ethiopia, the agency has identified themselves as exempt provider but no accredited Primary Provider has been identified for the case. As the only accredited provider acting on these cases, the agency is de facto the Primary Provider in these instances, and as such does not appear to be properly identifying and overseeing supervised |

8

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | providers. The adoption service provider's observed operations and service delivery show signs of neglect and there is a clear need for increased capacity. This rating is based on performance. |
| SPD 96.46.b | 4 | F | Commission Comment:<br>The foreign supervised provider agreement for OR was blurry and not readable. Agreement for OB includes inconsistent information on Fees. THe agreement states that the FSP will be paid $6,000 by the agency but the attached fee breakdown only amounts to $2,600. It is unclear what fees this provider is being paid by FIA.<br>EVALUATOR TEAM NON-COMPLIANCE REASONS:<br>This agency has one foreign supervised provider contract in place in Japan. A review of contract confirmed that all elements of the standard are included. Team also confirmed this by speaking with representative from Supervised Provider agency by phone. However, in several case records reviewed on site, specifically for adoptions from Ukraine, Gambia, and Ethiopia, the agency has identified themselves as exempt provider but no accredited Primary Provider has been identified for the case (see 96.44 a,b). As the only accredited provider acting on these cases, the agency is de facto the Primary Provider in these instances, and as such does not appear to be properly identifying and overseeing supervised providers. Practice, as is, may compromise care of consumers organizational functioning, or consistency with the aims of the Hague Convention and the IAA. |
| IC 96.48.c | 4 | F | Commission Comment:<br>The agency has not provided sufficient documentation of how out of state families are provided with child specific training and counseling and how that is documented in the record.<br>EVALUATOR TEAM NON-COMPLIANCE REASONS: |

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | Agency provides country specific information and training to families, as evidenced by documents sent to the family in the information packet, and confirmed by staff interviews. Interviews with adoptive families confirm that agency provided country specific preparation during their process. However, the team did not see any training regarding element #3 of the standard documented in the case records. Practice or documentation does not address, or is in opposition to, the standard's requirements. This rating is based on actual performance. |
| IC 96.48.e | 4 | F | Commission Comment: See 96.48 (c) EVALUATOR TEAM NON-COMPLIANCE REASONS: Team was not able to confirm any child specific training documented in case records. Exempt and supervised providers indicated during phone interviews and in some contracts that they are not responsible for providing this to families. The organization does not have any of the necessary components of the basic framework that the standard requires. This rating is based on actual performance. |
| IC 96.48.h | 4 | F | Commission Comment: See 96.48 (c) EVALUATOR TEAM NON-COMPLIANCE REASONS: When agency performs home study there appears to be consistent documentation of client training in case records. However, in some instances where agency uses supervised or exempt provider to conduct home study, detailed documentation of training was not present in case records. Practice is basically sounds and reflects strong capacity with room to improve. This rating is based on actual performance. |
| IC 96.49.g | 3 | C | Commission Comment; |

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | The agency's revised procedures now include information on how requests are documented in the record, and address request for additional and updated information but the procedures do not address how the agency determines if any of the required information is missing and how the agency makes requests for that information. While the agency provided some evidence of specific medical questions that were sent in a few cases, it was unclear what medical and social information was not originally provided, or if the information was provided and these were follow up questions.  Some requests were for photos and updated information which did not directly address the identified issue.
EVALUATOR TEAM NON-COMPLIANCE REASONS:
The team reviewed case records on site and found that there were full medical reports present for their programs in Japan, China, and India. In other country programs, notably in cases reviewed Guinea, team found that there were brief medical summaries without underlying medical reports. Client interviewed by team indicated that agency had follow up communication with country of origin to obtain additional information. Team also viewed email communication between agency and employee in country to request additional information; however, these efforts were not well documented in the majority of case records. A significant aspect of the organization's operations or service delivery deviates from the standard's requirements or from written material, or capacity is at a basic level. This rating is based on actual performance |
| *IC 96.50.d* | 3 | C | Commission Comment:
The agency has revised its disruption/dissolution policy and added the word "will" to page 3 to indicate it will assume custody but page 6 |

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 11 of 14

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | however still states that the agency "may not be able to take physical or legal custody" which appears to be inconsistent. EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency's policy and procedures submitted in Self Study indicate that agency will not assume custody of adopted child. Practice and documentation does not address the standard's requirement. Rating based on capacity. |

11

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 12 of 14

**Summary of requested evidence to demonstrate compliance with the identified standards:**
*Note: Submit all evidence in the portal.*

| Standard | Requested Evidence |
|---|---|
| *FRM 96.33* | Revised charitable donations procedures for ensuring appropriate safeguards will be followed to ensure that such donations do not influence child placement decisions in any way and evidence that relevant staff have been trained on the revisions **96.33 (f)** |
| *EPR 96.35* | Documentation from applicable foreign Central Authorities that agency is authorized to work in Ethiopia and Saskatchewan **96.35 (b)** |
| *IFQ 96.39* | Revised adoption service contract and all other documents with waivers of liability or a narrative and supporting documentation justifying why no changes were made to the contract/other waivers of liability **96.39 (d)** |
| *SPD 96.44* | 1.  Copies of emails that were sent to the 10 clients whose service plans were missing with a copy of the service plans that were sent to the clients.<br>2.  Policies and procedures for acting as the primary provider and for service planning that include specific details on how the agency makes the decision it will act as the primary provider both for cases in which the agency has a program and in cases where the agency doesn't have a program.  Highlight or make note of the revisions that were made.<br>3.  Provide service plans for the 4 families who have completed the adoptions and evidence documenting when their adoptions were completed.<br>4.  Provide a revised service plan provided for the V Family adopting from Ukraine which names the foreign supervised provider.<br>5.  Revised service plan for the J/S Client adopting from Gambia which specifies which foreign providers were supervised providers.<br>6.  Documentation for the Z client adopting from Sierra Leone demonstrating the clients' request to close the case and documentation of their previous work with another ASP.<br>7.  Service plan for the client in Ethiopia who has already completed the adoption process and evidence documenting when they have completed the adoption. |

12

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 13 of 14

117

| Standard | Requested Evidence |
|----------|-------------------|
| | **96.44 a, b** |
| SPD 96.45 | Evidence demonstrating that the one supervised provider agreement recently sent out by the agency has been completed and documentation to ensure the supervised provider meets the requirements of 96.45 (a) **96.45 a, b** |
| SPD 96.46 | Revised foreign supervised provider agreements for providers in Ukraine or additional documentation that those providers were advised specify how monitoring or supervision to ensure compliance with 96.46 (a) will occur. **96.46 a** |
| SPD 96.46 | Current, up to date Collaborative Relationships Profile. **96.46 a, b** |
| SPD 96.46 | Foreign supervised provider agreement for OR and revised agreement for OB **96.46 b** |
| IC 96.48 | Procedures for the provision of child specific training and counseling that detail how out of state families are provided with child specific training and counseling and how that is documented in the record **96.48 c, e, h** |
| IC 96.48 | Evidence that employees are aware of the procedures (e.g., dated memo to staff or minutes from a meeting at which the procedures were reviewed) **96.48 (c,e)** |
| IC 96.49 | Revised procedures for making reasonable efforts to obtain information and for documenting efforts made in adoption record and evidence that relevant staff have been trained on the revisions **96.49 (g)** |
| IC 96.49 | Evidence from 5 cases demonstrating that the agency reviewed the information provided to determine if any information was missing and evidence of followup on any missing information **96.49 (g)** |
| IC 96.50 | Policy and procedures for children whose placement has disrupted, which address assumption of custody of child and evidence that relevant staff have been trained on the revision **96.50 (d)** |

*Standard Value: M – Mandatory; C – Critical; F – Foundational*

13

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 14 of 14

118

14

*Sections Reviewed for this organization:*

CRR     *Responding to Complaints and Records and Reports Management*

EPR     *Ethical Practices and Responsibilities*

FRM     *Financial and Risk Management*

IC      *Standards for Cases in which a Child is Immigrating to the U.S.*

IFQ     *Information Disclosure, Fee Practices, and Quality Control Policies and Practice*

LCG     *Licensing and Corporate Governance*

PQT     *Professional Qualifications and Training for Employees*

SPD     *Service Planning and Delivery*

# EXHIBIT D



# PCR/Commission Review Report

## Faith International Adoptions, Inc.
### Tacoma, WA

**3084**

| PCR Report Sent: | November 15, 2017 | PCR Response Due: | December 27, 2017 |
|---|---|---|---|
| Commission Report Sent: | February 21, 2018 | Commission Response Due: | April 23, 2018 |
| Commission Report Sent: | March 23, 2018 | Commission Response Due: | April 20, 2018 |
| Commission Report Sent: | | Commission Response Due: | |

**Summary of standards and related Evaluator Team non-compliance reason(s) that must be addressed prior to achieving accreditation:**

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| EPR 96.35.b | 3 | C | 3/15/18: The agency provided a letter from the Foreign Central Authority in Saskatchewan which stated that the FCA approved them to provide services in one adoption of a child from Tanzania to Canada. While the agency stated that they don't have any current cases, it's unclear if they provided services in any other cases in Saskatchewan. The agency previously provided evidence demonstrating their efforts |

COUNCIL ON ACCREDITATION

45 Broadway, 29th Floor, New York, NY 10006 • toll free: 866-262-8088 tel: 212.797.3000 fax: 212.797.1428 www.coanet.org

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | to obtain a letter from FCA's in Canada to document their authorization to provide adoption services in Canada / to Canadian families. The agency has not provided any evidence to demonstrate that it obtained such authorization prior to providing such services, but the recent requests for authorization letters suggested prior authorization may not have been obtained in writing earlier British Columbia and Saskatchewan. Additionally, COA has received information that the agency reached out to some or all of the FCA's in Canada to inquire about guardianship/adoptions and the FCA's declined, (with the exception of British Colombia and the 1 authorized case in Saskatchewan). There are concerns that the proposed guardianship / adoptions / program with Japan may not meet all applicable legal requirements and there are questions about the agency's partner agency in Japan and their authorization to provide adoption services.<br><br>1/18/18 Commission Comment:<br>The agency has not provided documentation to demonstrate that they were authorized to provide services in Saskatchewan or Ethiopia.<br>EVALUATOR TEAM NON-COMPLIANCE REASONS:<br>The agency's Executive Verification discloses all of the information required by this standard. Appropriate policies and procedures, provided in Self Study, are in place. Team was presented with case records on site related to placement of children from Japan with adoptive parents in Canada, which are not subject to review by COA, per 96.25. However, team was unable to verify that agency is authorized to provide adoption services by the Central Authorities in Canada (e.g. provinces of British Columbia, Saskatchewan), which relates to element #9 of this standard. Additionally, agency has identified an adoption case in Ethiopia in which it is the Primary |

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | Provider, but is not clear if the agency is authorized to work in that country. Practice, as is, may compromise care of consumers organizational functioning, or consistency with the aims of the Hague Convention and the IAA. This rating is based on performance. |
| IFQ 96.39.d | 4 | C | 3/15/18:  It appears as though the agency has made some changes to the waivers in the contract, but is was somewhat difficult to identify all the changes.  It appears as though the agency has removed references to "ordinary negligence" and may have replaced that with "negligence or intentional misconduct" so it's unclear if that fully addresses the concerns previously raised about the language and the revised contract still does not explain the risks associated with negligence or intentional misconduct.  Additionally, the contract indicates that FIA has no control over "attorneys and proposal sources" both of whom may be supervised providers for the agency.

Commission Comment:
The agency includes a waiver for "ordinary negligence" rather than "gross negligence" (which is more commonly included in such contacts) without the agency explicitly detailing the risks that would be associated with "ordinary negligence" on the part of the agency's employees, directors, officers, volunteers, independent contractors, supervised providers and any agents.  Such risks must be described in the contract and without such a description, it is unclear if this would constitute a blanket waiver.  Also, the agency's contract asks clients to waive liability for the actions of foreign providers (some of whom would be foreign supervised providers) and the agency has not clearly articulated its responsibility to supervise foreign providers and the related risks associated with this part of the waiver. |

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 4 of 6

123

| Standard | Rating | Standard Value | Non-Compliance Reason(s) |
|---|---|---|---|
| | | | EVALUATOR TEAM NON-COMPLIANCE REASONS: Agency has a waiver clause in their adoption service contract; this contract appears to be a blanket waiver that limits PAP's ability to sue the agency regardless of anything they do. This was observed in the service contract in clients' files. A significant aspect of agency's operations deviates from the standard's requirement. This rating is based on performance. |

4

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 5 of 6

124

**Summary of requested evidence to demonstrate compliance with the identified standards:**
*Note: Submit all evidence in the portal.*

| Standard | Requested Evidence |
|---|---|
| EPR 96.35 | A list of all children who were citizens or habitually residents of countries other than the US (specifying the country of origin) who the agency provided or facilitated the provision of any adoption services in relation to a placement or adoption to a country other than the United States since 1-1-2014.  Include information on the dates when the agency worked with the children or PAPs and the outcome.  If any of these cases involved a country other than Canada, include copies of the the agency's authorization to operate in those countries **96.35 (b)** |
| EPR 96.35 | Copies of all correspondence to and from each FCA in Canada relating to the agency's efforts to provide or facilitate any type of placements, guardianship or adoptions involving prospective adoptive parents in Canada and children who are not citizens or habitually resident in the US (including emails and notes from conversations / telephone calls or any other communications), and a narrative briefly describing the timeline and key events related to the agency's efforts to work in Canada **96.35 (b)** |
| EPR 96.35 | Copy of the Foreign Supervised Provider Agreements the agency has in effect with providers in Japan including all documentation obtained in relation to 96.46 (a) relating to their compliance with the applicable laws and requirements in Japan to provide guardianship or adoption services **96.35 (b)** |
| EPR 96.35 | Copies of the governing body meeting minutes at which the governing body approved or discussed the program of adoptions between Japan (and any other countries of origin) and Canada **96.35 (b)** |
| EPR 96.35 | A list of all prospective adoptive parents in Canada that the agency or its employees have provided or facilitated the provision of any adoption services for / in relation to the placement or adoption of a child with citizenship or habitual residence in a country other than the US since 2008.  Include information on the dates when the agency worked with the PAPs and the outcome **96.35 (b)** |
| IFQ 96.39 | Revised adoption service contract (with all revisions red lined or described in a separate document) **96.39 d** |

5

Organization ID #: 3084
Site Visit Date: October 2, 2017
Page 6 of 6

125

*Standard Value: M – Mandatory; C – Critical; F – Foundational*

*Sections Reviewed for this organization:*

| | |
|---|---|
| CRR | Responding to Complaints and Records and Reports Management |
| EPR | Ethical Practices and Responsibilities |
| FRM | Financial and Risk Management |
| IC | Standards for Cases in which a Child is Immigrating to the U.S. |
| IFQ | Information Disclosure, Fee Practices, and Quality Control Policies and Practice |
| LCG | Licensing and Corporate Governance |
| PQT | Professional Qualifications and Training for Employees |
| SPD | Service Planning and Delivery |

6