UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FAITH INTERNATIONAL ADOPTIONS, a Washington State non-profit corporation; AMAZING GRACE ADOPTIONS, a North Carolina non-profit corporation; and ADOPT ABROAD INCORPORATED, a Pennsylvania non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL R. POMPEO, Secretary for the United States Department of State, in his official capacity; CARL C. RISCH, Assistant Secretary of State for Consular Affairs, in his official capacity; BETH PAYNE, Director of the Office of Children's Issues, in her official capacity; UNITED STATES DEPARTMENT OF STATE, and COUNCIL ON ACCREDITATION FOR CHILDREN AND FAMILY SERVICES, INC.,<br><br>Defendants | Case No. 2:18-CV-00731-RBL<br><br>**DECLARATION OF CHARLES TUTTERROW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

I, Charles Tutterrow, hereby declare as follows:

1. I am over eighteen and am competent to make this declaration based upon personal knowledge unless otherwise stated.

2. In late September, 2017, I felt called to adopt another child with my wife. My wife and I had been blessed with the inclusion of our first daughter into our family and thus,

chose to apply with Faith International's Japan program again. We submitted our application in early October and began the process again, with the understanding it would likely take a year or so to receive a referral. We completed the appropriate paperwork and another home study. Unbeknownst to us, our daughter's birth mother was pregnant with her second child during this time.

3.   In early January, we were contacted by Faith International Adoptions ("FIA"), a Plaintiff in this case, and FIA informed us that the birth mother of our first adopted daughter had just given birth. She had just contacted FIA's Japanese partner agency, Baby Life, to advise Baby Life of the birth and stated that she wished to again pursue an adoption plan. While she knew the chances were unlikely, she asked if there were any possibility that this child could be adopted by us. We were grateful that we had already completed our home study and filed our immigration paperwork and happily agreed to move forward with this plan. We received the formal referral documents and continued with the immigration process. All required forms were submitted and approved by USCIS and the National Visa Center, and we then waited for permission to travel from the US Embassy in Tokyo.

4.   Prior to the issuance of a visa interview, the US Embassy has the right to request an interview with the mother to ensure a child meets orphan status, to confirm the mother's marital status and social history, and to ensure that the mother understands her legal rights. The US Embassy decided to conduct an interview with the mother prior to our travel clearance. That interview was completed on March 22, 2018. We were notified of our visa interview date of April 2, 2018, and we were cleared to travel. My wife and I arrived in Japan on Friday, April 30, 2018. When we arrived, we were informed that FIA's accreditation had lapsed due to delays with the accrediting entity and that the accrediting entity had refused to renew FIA's accreditation. We agreed that Across the World Adoptions would be would be acting as our agency. Contracts and agreements were signed with ATWA and we continued. We took custody of Sydney (Hana) on March 31, 2018 and our visa interview for her orphan visa application took place at 11:00 a.m. on April 2, 2018.

5. Upon presenting our paperwork to the officer I was advised our case would be subjected to administrative review. We completed our interview without incident but were then told they would not be issuing the visa at that time, as they had to send some information to Washington DC. The officer said he would be in touch the next day. We completed the visa medical appointment as planned and told the officer we had tickets to leave Japan on May 5, 2018, with a reminder that we had 3 other children waiting at home for us.

6. The next day we returned to the embassy to drop off the medical forms. Upon our arrival, we were told by the case officer that while we had done nothing wrong, they had been told by the State Department that all Japanese adoptions were subject to review. We just happened to be the first ones to be stuck in the middle of it. They claim this review is in place because of Japanese adoption laws that went into effect on April 1, 2018 coupled with the fact that our original agency's accreditation had lapsed over the same weekend. The next day, we received a call at 10:00 a.m. asking us to come back at 2:00 p.m. for a few more questions. When we arrived, we were told our visa was being denied. They requested a list of documents from both our new agency and Baby Life, the agency in Japan. We were told that one of us could leave the country if we needed to but Sydney, our new daughter, had to stay.

7. Our agency and Baby Life began working on providing the needed documents. The agency sent over all requested documents by 10:00 a.m. Japan time on April 5. The documents requested by Baby Life are currently being translated and will be submitted as soon as the translation is complete. Once all documents are submitted to the US Embassy in Tokyo, they will then be sent back to the Department of State in Washington DC for their lawyers to review. At that time, our hope is that the US Embassy in Tokyo will be given clearance to issue Sydney's orphan visa.

8. After much deliberation we decided it was in the best interest of our children at home that Samantha come home. I am now alone in Japan with Sydney waiting on this situation to resolve. We will not abandon our daughter. She clearly meets the US requirements for an orphan visa. We originally picked FIA, because of its reputation for processing Japanese

TUTTERROW DECLARATION IN
SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER

- 3 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

adoptions for 20+ years and being well aware of Japanese law and American law. Yet, we are caught in the middle of a political fight between the new administration at the State Department and international adoption agencies.

9. The documents the Department of State requires do not affect Sydney receiving her visa. We are literally caught in a political cross-fire. The main documents they request involve Japanese laws and how they pertain to some of the services offered to the orphans while in Japan, while others are documents from our new placing agency. It is standard practice that all international agencies have a transfer agency in place specifically for situations like this. This is public information and it is commonplace for families to be transferred if needed. In addition, the Embassy was advised of this prior to the transfer

10. Our case involves a sibling to our daughter. They have the same mother and it is assumed the same father, though this is not a known fact to the mother. In Japan, if the father of a child does not marry the mother before she applies for the koseki (Japanese family register) for the child, he is not considered the legal father of the child and has no rights to the child. His consent to an adoption is not necessary. The mother has all the legal rights and can plan an adoption if she wishes. In Sydney's situation, her mother was not married at the time of her birth, nor did she marry any alleged birth father before she applied for the koseki. Therefore, there was no confirmed father who had legal rights. Only her mother's consent to the adoption is required under Japanese law, as she is the sole legal parent. I would also like to point out that it is very common even in domestic adoptions for a mother to continue to have pregnancies for which she develops an adoption plan. And sometimes with the same father. Again, a woman frequently returns to a man even if the relationship is unhealthy. This isn't a "suspicious" or "uncommon" incident.

11. At no point throughout this all has the well-being of our new daughter or that of our current children been considered. The financial burden this has brought upon our family is significant. I am self-employed and am now having to miss work, as we agreed it wasn't safe to leave Samantha in Japan alone with a baby. In addition, we are faced with enduring the

TUTTERROW DECLARATION IN
SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER

- 4 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

costs of a hotel, daily meals, and fees from flight changes etc. Meanwhile, we have no idea how long this may take.

12. Had FIA been able to complete its reaccreditation application processing with COA, we and Sydney likely would not be caught in this limbo and in the middle of a political fight between the State Department and adoption agencies.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated this 6 day of June, 2018, in Cumming, Georgia.

Charles Tutterrow

TUTTERROW DECLARATION IN
SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER

- 5 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

# CERTIFICATE OF SERVICE

I hereby certify that on the date below, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

DATED: June 21, 2018

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Robert M. McKenna*
Robert M. McKenna (WSBA No. 18327)
rmckenna@orrick.com

701 Fifth Avenue, Suite 5600
Seattle, WA  98104-7097
Telephone:   206-839-4300
Facsimile:    206-839-4301

TUTTERROW DECLARATION IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

- 6 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300