The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FAITH INTERNATIONAL ADOPTIONS, a Washington State non-profit corporation; AMAZING GRACE ADOPTIONS, a North Carolina non-profit corporation; and ADOPT ABROAD INCORPORATED, a Pennsylvania non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL R. POMPEO, Secretary for the United States Department of State, in his official capacity; CARL C. RISCH, Assistant Secretary of State for Consular Affairs, in his official capacity; BETH PAYNE, Director of the Office of Children's Issues, in her official capacity; UNITED STATES DEPARTMENT OF STATE; and COUNCIL ON ACCREDITATION FOR CHILDREN AND FAMILY SERVICES, INC.,<br><br>Defendants. | Case No. 2:18-cv-00731-RBL<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Noted for August 17, 2018<br><br>**\*\*PLAINTIFFS WITHDRAW THEIR REQUEST FOR ORAL ARGUMENT** |

///

///

///

///

///

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

    A    Plaintiffs Will Likely Succeed on the Merits because the State Department's Directive Violates the APA and the IAA .................................. 2

        1    The State Department's Directive Violates the APA ............................ 2

            a    The Directive was a Final Agency Action subject to Review ..................................................................................... 2

            b    The Directive was Arbitrary and Capricious ............................. 6

            c    The Directive required a rulemaking but none occurred ........... 7

        2    The State Department's Directive violates the IAA .............................. 7

            a    The Directive was an Unlawful Cancellation or Debarment and is subject to Review .......................................... 7

            b    The Directive was Not a Refusal to Renew ............................... 8

    B    The State Department's Directive Has Caused and Will Likely Continue to Cause Irreparable Harm to Plaintiffs; the Balance of the Equities and Public Interest Require Immediate Relief ........................................................... 9

        1    Plaintiffs Have Shown They Will Likely Suffer Irreparable Harm ....................................................................................................... 9

        2    The Public Interest Requires Injunctive Relief Here ........................... 11

        3    The Balance of the Equities Tips in Favor of Granting the Motion .................................................................................................. 12

CONCLUSION ......................................................................................................................... 12

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION     - i -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bennett v. Spear*,
    520 U.S. 154 (1997) .................................................................................................2, 3, 4, 5

*Bernhardt v. Los Angeles Cty.*,
    339 F.3d 920 (9th Cir. 2003) ..................................................................................................11

*Bowen v. Michigan Acad. of Family Physicians*,
    476 U.S. 667 (1986) ..................................................................................................................8

*Industrial Customers of Northwest Utilities v. Bonneville Power
    Administration*,
    408 F.3d 638 (9th Cir. 2005) ....................................................................................................5

*Lincoln Memorial University Duncan School of Law v. American Bar Ass'n*,
    No. 3:11-cv-608, 2012 WL 1108125 (E.D. Tenn. Apr. 2, 2012) .......................................9, 10

*Nat'l Automatic Laundry & Cleaning Council v. Shultz*,
    443 F.2d 689 (D.C. Cir. 1971) ..............................................................................................2, 3

*Norton v. Southern Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ....................................................................................................................2

*ONRC Action v. Bureau of Land Management*,
    150 F.3d 1132 (9th Cir. 1998) ..................................................................................................5

*United States v. Jones*,
    260 B.R. 415 (E.D. Mich. 2000) ............................................................................................10

*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) ..................................................................................................9

**Statutes**

5 U.S.C. § 551 ..................................................................................................................................2

5 U.S.C. § 702 ...............................................................................................................................2, 6

5 U.S.C. § 704 ..................................................................................................................................2

42 U.S.C. § 14901(b)(3) .................................................................................................................11

42 U.S.C. § 14924(b), (c) .................................................................................................................7

42 U.S.C. § 14924(d) ...................................................................................................................2, 7

PLAINTIFFS' REPLY IN SUPORT OF
MOTION FOR PRELIMINARY INJUNCTION    - ii -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

**Other Authorities**

22 C.F.R. §§ 96.7 ....................................................................................................................6

22 C.F.R. § 96.60 ...................................................................................................................6

22 C.F.R. § 96.63(c) .......................................................................................................1, 6, 8

Webster's Third New International Dictionary (2002) ..........................................................9

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION          - iii -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

**Introduction**

The State Department violated the IAA by directing COA to immediately terminate its review of Plaintiffs' renewal accreditation applications. COA succinctly explained: Before this lawsuit, COA was fully prepared to decide Plaintiffs' reaccreditation applications in a timely fashion, and in accordance with 22 C.F.R. § 96.63(c). COA stopped its review only because the State Department directed COA not to complete it. The State Department's decision spawned this dispute. In fact, absent that action ("Directive"), the reaccreditation process would likely be complete by now.

Now, Plaintiffs' only recourse is judicial review, under either the APA or the IAA. Whether the State Department's Directive is viewed as a final agency action under the APA or a debarment or cancellation under the IAA, the result is the same: the Directive was wrongful and is subject to review by this Court. The plain text of the IAA and its implementing regulations confirm COA's ability and practice to defer its decisions on reaccreditation applications until the review process is completed – and not have that interim deferral equate to a "refusal to renew" under the IAA or otherwise be prohibited from concluding its review. The plain text of the IAA and COA's conforming historical practice of deferral both satisfy the IAA's goals of 1) ensuring a diligent and complete accreditation process which is not arbitrarily rushed; and 2) ensuring the availability of deserving and qualified adoption agencies for prospective adoptive parents and children. These IAA goals are consistent with a primary purpose of the Hague Convention and the IAA: to promote the creation of families through adoption.

Plaintiffs have pursued the most expeditious and indeed the sole remedy available to right the wrong caused by the State Department's Directive: an Order by this Court countermanding the Directive and allowing COA to complete the accreditation renewal process. Plaintiffs, COA, and the Court have completed much of this work already. COA remains ready to and will finish processing Plaintiffs' applications and the Court has entered a stipulation between Plaintiffs and COA to that effect. All that remains for the Court is to

PLAINTIFFS' REPLY IN SUPORT OF
MOTION FOR PRELIMINARY INJUNCTION   - 1 -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

reverse the Directive, and to do so now by issuing a preliminary injunction. Absent this immediate relief, Plaintiffs will be irreparably harmed. Both the balance of equities and public interest confirm the need for the requested injunction. The Court should grant the motion.

## Argument

### A   Plaintiffs Will Likely Succeed on the Merits because the State Department's Directive Violates the APA and the IAA.

Federal courts can review final agency actions under the APA, 5 U.S.C. § 702, and can review actions taken under the IAA by the State Department. 42 U.S.C. § 14924(d). Here, the State Department's Directive is reviewable under one or the other – i.e., as a final agency action under the APA or a cancellation or debarment under the IAA. Whatever the nomenclature, it is indisputable that if the State Department had not issued its Directive, COA would have completed its reaccreditation review for the Plaintiff agencies.

### 1   The State Department's Directive Violates the APA.

#### a   The Directive was a Final Agency Action subject to Review.

Judicial review under the APA requires final agency action. 5 U.S.C. § 704. The State Department agrees that a party may challenge "a final agency action" under the APA. Opp'n (Dkt. # 51) at 5. And it agrees that the APA defines "agency actions"[1] to include "the whole or a part of an agency rule, order, license, sanction, relief, *or the equivalent* or denial thereof . . . ." *Id.* (quoting the APA's definition of "agency action" (5 U.S.C. § 551)) (emphasis added). But final agency actions are not limited to the labels in that list.

Whether an agency takes a final agency action is "determined not by the name assigned by the agency to its action but 'in a pragmatic way.'" *Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 698-702 (D.C. Cir. 1971) (citation omitted). If an agency's pronouncements or communications "hav[e] the contemplation and likely consequence of

---

[1] The State Department contends that its Directive was not an agency action at all, let alone a final one, but the case it relies on undercuts that contention. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), contrasted challenges to entire agency programs, which are not reviewable under the APA, *id.* at 62, with discrete agency actions that include but are not limited to, agency rules, orders, licenses, sanctions, relief, or "the equivalent or denial thereof." The State Department's Directive could easily fall under several of the above definitions, because it was a discrete action that had legal effect and has caused legal consequences for Plaintiffs. *See* 5 U.S.C. § 551 (defining "agency action" and its various types); *Bennett v. Spear*, 520 U.S. 154 (1997).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION         - 2 -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

'expected conformity,'" then such actions are typically final agency actions. *Nat'l Automatic Laundry*, 443 F.2d at 698 (citations omitted) (collecting Supreme Court cases).

Here, the sole action resulting in COA's inability to complete its review of Plaintiffs' application was the State Department's act of issuing its Directive. Before receiving the Directive, COA was nearing the end of its review process for the Plaintiff agencies and, consistent with its past practice, COA planned to defer its final decision past the accreditation expiration dates for these agencies but to continue and complete its review process. COA Resp. (Dkt. # 45) at 1; Schmidt Decl. (Dkt. # 47), ¶ 5.[2] Instead, COA conformed to the State Department's Directive and terminated its review. *Id.* ¶ 11. In turn, Plaintiffs have been forced to conform to the State Department's Directive: they no longer process adoptions that require Hague accreditation. The State Department's assertion that its action had no "direct consequences" and was not a "final and binding determination" rings hollow, Opp'n at 7-8, and its niceties of nomenclature do not alter the fact that its Directive had direct consequences on Plaintiffs and was a final and binding determination on COA.

*Bennett v. Spear*, 520 U.S. 154 (1997), further establishes that the Directive constitutes a final action. Although the State Department extracted the final agency action standard from *Bennett*, it failed to address that case's factual similarity to this one, which confirms that it took a final agency action here. There, the Bureau of Reclamation ("BOR") notified FWS that BOR's operation of a federal reclamation project might affect endangered fish. *Id.* at 159. After being informed of BOR's proposed action to operate the project, FWS interpreted a federal statute in a biological opinion and "incidental take statement" that concluded the project would jeopardize the survival of the endangered fish. *Id.* BOR concluded it would conform the project to FWS's biological opinion. *Id.* Ranchers and irrigation districts sought judicial review of FWS's opinion, because BOR's operation of the project in conformance with the biological opinion negatively affected those interested groups specifically. *Id.* at 159-60. The Supreme Court concluded that the FWS's biological opinion and incidental take

---

[2] By COA's own estimation, it likely would have completed those applications by May 2018. *See* COA Resp. at 5 (estimating 45-60 days to complete processing of Plaintiffs' applications).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 3 -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

statement's issuance constituted a final agency action, because they (1) were the "consummation of the agency's decisionmaking process" and not of a "merely tentative or interlocutory nature," *id.* at 178 (internal quotation marks omitted), and (2) determined rights and obligations from which "legal consequences flow[ed]" in a way that "alter[ed] the legal regime" to which the BOR was subject. *Id.*

Here, on March 28, 2018, COA (like BOR in *Bennett*) informed the State Department that it had deferred decision on Plaintiffs' accreditation renewal applications, that their accreditations would likely expire before the applications could be decided, and that COA would not transfer any accreditation materials regarding the Plaintiffs to IAAME until COA had made a final decision on the applications, even beyond the accreditation expiration date. Schmidt Decl., Ex. C (Dkt. # 47-3) at 4. On March 30, 2018, just one day before Plaintiffs' accreditations expired, the State Department (similar to FWS in *Bennett*) announced in an email that after March 31, COA could "no longer continue to review or make any decision in relation to" Plaintiffs' applications. *Id.* at 2. COA (like BOR) obeyed this Directive. On May 18, 2018, Plaintiffs (similar to the ranchers and irrigation districts in *Bennett*), as renewal applicants and formerly IAA-accredited adoption agencies, sought judicial review of the State Department's Directive, because COA had acted in conformance with the State Department's Directive. COA Resp. at 5-6; Schmidt Decl. ¶¶ 4-6. Just as BOR conformed to FWS's "opinion" in *Bennett*, COA conformed to the State Department's Directive. *Id.* ¶¶ 10, 13. And, just as the final agency action at issue in *Bennett* was FWS's, not BOR's, the final agency action at issue here is the State Department's, not COA's.

Similarly, applying *Bennett*'s two-factor test here also establishes that the State Department's Directive is a final agency action. Under *Bennett*, an agency action is final if it "mark[s] the 'consummation' of the agency's decisionmaking process . . . it must not be of a merely tentative or interlocutory nature" and is one "by which 'rights or obligations have been determined,' or from which legal consequences will flow." 520 U.S. at 177-78. (citations omitted).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION    - 4 -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

First, the State Department's Directive terminated Plaintiffs' renewal application processes, and the decision was not tentative or interlocutory in nature. The State Department told COA to stop processing the applications, and COA complied. COA Resp. at 4; Schmidt Decl., Ex. C. The State Department's Directive was neither tentative nor interlocutory in nature; the State Department will not allow COA to resume processing Plaintiffs' applications despite COA's willingness to do so. *Id.* The first prong of the *Bennett* test is satisfied.[3]

Second, the State Department's Directive determined Plaintiffs' rights as accreditation renewal applicants because the State Department's actions directly resulted in COA ceasing consideration of Plaintiffs' applications. COA Resp. at 4; Schmidt Decl., Ex. C. Both COA's right and obligation to consider Plaintiffs' applications and the Plaintiffs' right to have their applications considered were eviscerated. Similarly, legal consequences have followed from the State Department's Directive: Plaintiffs may not perform Hague adoptions as a result of the State Department's Directive. Like the biological opinion and incidental take statement in *Bennett*, the State Department's Directive altered the legal regime to which COA and Plaintiffs are subject. *Bennett*, 520 U.S. at 178. The inevitable consequence of the State Department's "description" of the IAA's effect on accreditation application deferrals that extend beyond accreditation expiration is that accrediting entities can no longer defer accreditation renewal applications beyond expiration despite contrary past practices. *Compare* Schmidt Decl. ¶ 5 (listing eight adoption agencies whose accreditations were considered after they expired). The second prong of the *Bennett* test is satisfied.

Accordingly, the State Department's Directive is a "final agency action" and is

---

[3] *ONRC Action v. Bureau of Land Management*, 150 F.3d 1132 (9th Cir. 1998), does not support the State Department's argument on the first *Bennett* factor, because the court there reasoned that the agency's lack of a deliberative process there was more akin to a broad challenge to a general program of agency administration, *id.* at 1136, which is not the case here. Plaintiffs do not challenge the State Department's generalized implementation of the IAA. Rather, Plaintiffs challenge the State Department's Directive, which involved specific direction to COA to stop processing Plaintiffs' accreditation renewal applications. *See* Schmidt Decl. Ex. C. Nor does *Industrial Customers of Northwest Utilities v. Bonneville Power Administration*, 408 F.3d 638, 644 (9th Cir. 2005) ("*ICNU*"), support the State Department's cause. *ICNU* involved a tentative or interlocutory decision, which cannot be a final agency action under *Bennett*, because a lower level power administration's decision to trigger a rate proceeding was "subsumed" into a final rate determination by the final rate determination made by FERC. *Id.*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION   - 5 -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300


reviewable by this Court under the APA.

### b    The Directive was Arbitrary and Capricious.

The APA requires reviewing courts to set aside arbitrary and capricious final agency actions. 5 U.S.C. § 706(2)(A). Here, the State Department's Directive is contrary to the IAA's plain text. As COA explained, 22 C.F.R. § 96.63(c) allows accrediting entities to defer accreditation renewal applications beyond the accreditations' expiration dates. COA Resp. at 2-3, 5. In fact, consistent with Section 96.63(c), COA has on eight separate occasions deferred and processed reaccreditation applications beyond the original accreditation expiration dates. COA Resp. at 2-3; Schmidt Decl. ¶ 5. Despite the State Department's protestations otherwise, it was aware of these deferrals and this practice and it never objected. *Id.* ¶ 6.

Instead of adhering to the historical practice and clear tenets of Section 96.63 relating to deferral, the State Department relies on other provisions of the IAA and its implementing regulations, none of which prohibits an accrediting entity (COA) from deferring decisions of renewal applications beyond the accreditation expiration date. For example, the State Department argues that 22 C.F.R. §§ 96.7 and 96.60 require accrediting entities to complete the decision-making process on renewal applications before an accreditation period ends. But those provisions concern only the length of the accreditation period itself, not COA's ability to decide a renewal application beyond the accreditation period. *See, e.g.*, 22 C.F.R. § 96.60. Specifically, Section 96.60 only (1) describes the length of an accreditation cycle and (2) provided for a one-time extension of accreditation to many accredited agencies to avoid a flood of applications coming due together and risking large losses of accreditation. *See id.* Section 96.60 does not negate COA's application of 22 C.F.R. § 96.63(c), which provides it discretion to defer a renewal application decision beyond an accreditation expiration.[4]

Ignoring the applicable regulations and the historical practices is the hallmark of arbitrary and capricious agency action. Accordingly, the State Department's Directive was an

---

[4] The inevitable conclusion of the State Department's logic – that other provisions rebut COA's understanding of Section 96.63(c) – would mean that the accreditations of eight other adoption agencies whose renewal applications were decided after their accreditations expired would not have valid accreditations now. The State Department nowhere addressed that issue before, upon, or after issuing the Directive.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION         - 6 -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

arbitrary and capricious final agency action under the APA, and Plaintiffs are likely to succeed on the merits of this APA claim.

### c    The Directive required a rulemaking but none occurred.

In their motion, Plaintiffs described what agency interpretations are substantive rules, as opposed to interpretive rules, and explained why the Directive was a substantive rule. Mot. (Dkt. # 20) at 16. Substantive rules require a rulemaking, but the State Department's Directive was not issued following required rulemaking procedures. *See id.* at 16-18. The State Department nowhere addresses this issue except, again, by disclaiming any agency action on its part and ascribing all agency action to COA, which COA expressly denies.[5] *See* COA Resp. at 5-6; Schmidt Decl. Accordingly, if the Court concludes that the State Department's Directive is a final agency action here then, in order to be effective, that action was a rule that needed to follow rulemaking procedures but did not. *Cf.* COA Resp. at 4. Plaintiffs are likely to succeed on the merits of this APA claim.

### 2    The State Department's Directive violates the IAA.

#### a    The Directive was an Unlawful Cancellation or Debarment and is subject to Review.

The IAA allows the State Department to take specific actions that are reviewable under that statute. Among those actions are "cancellations" and "debarments" of an accredited agency's Hague accreditation. 42 U.S.C. § 14924(b), (c). Cancellations terminate an accredited agency's accreditation, and debarments prevent an accredited agency from seeking accreditation for a period of time. *See id.* The IAA provides for judicial review of both. *Id.* § 14924(d) ("an agency . . . who is the subject of a final action of . . . cancellation, or debarment" may seek judicial review of that action).

The only IAA-authorized final action that the State Department's Directive could be, given its ultimate effect of preventing COA completing its consideration of Plaintiffs' renewal

---

[5] The State Department also insists that its Directive was not a "rulemaking," because it has already promulgated regulations under the IAA. *See* Opp'n at 15. But that argument says nothing about whether the State Department's Directive was a rule *that required a rulemaking*. Mot. at 16-18. Instead, as shown above, the State Department relies entirely on the intermediate conclusion that the State Department's interpretation and directive was not a final agency action. *See* Opp'n at 15.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION    - 7 -
2:18-cv-00731-RBL

applications, would have been a cancellation or debarment. *See* Mot. at 11-12. No other final action that the IAA allows the State Department to take under that statute fits. *See id.* Accordingly, the IAA provides an adequate judicial remedy only if the Directive qualifies as a cancellation or debarment,[6] and as Plaintiffs explained in their opening brief, the State Department failed to follow the IAA's procedures for issuing either a cancellation or debarment. Mot. at 11-12.

### b      The Directive was Not a Refusal to Renew.

The State Department's argument that COA refused to renew Plaintiffs' applications is unsupported. *See, e.g.*, Opp'n at 7-8.  COA is not currently processing Plaintiffs' applications because the State Department's Directive forbids it, not because COA has refused to renew. *See* COA Resp. at 4; Schmidt Decl. ¶ 12. COA never intended to nor did it refuse to renew Plaintiffs' applications; instead, it deferred their applications for decision under 22 C.F.R. § 96.63(c). *See* COA Resp. at 2; Schmidt Decl. ¶¶ 9-11. Even if COA wanted to issue a refusal to renew, the State Department's Directive prevented it from making such a decision: "**COA may no longer** continue to review or **make any decision** in relation to [Plaintiffs'] accreditation application[s]." Schmidt Decl., Ex. C (emphasis added). Indeed, the only barrier to completing review of Plaintiffs' applications – the State Department's Directive – bears none of the features of a refusal to renew. *See id.* ¶ 12 (describing COA's process for issuing refusals to renew *and* COA's ability to retract refusals to renew). The State Department's tortured textual analysis does not convert its Directive into a COA-rendered "refusal to renew" under the IAA.

Because the State Department's Directive is either a final agency action reviewable

---

[6] If, however, the Court concludes that the State Department's Directive was neither a cancellation nor a debarment, then the IAA does not provide an adequate judicial remedy, and the APA's presumption of reviewability is triggered where, as here, the State Department has muddied the water as to what kind of final agency action was taken. Specifically, the APA's judicial review provisions supply a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). That presumption is not rebutted "unless there is persuasive reason to believe that such was the purpose of Congress." *Id.* Here, the Directive is subject to the presumption of reviewability, and the State Department has supplied no congressional intent otherwise. And as explained above, *see supra* Sections A.1.b & c, the Directive was arbitrary and capricious and a rule for which no rulemaking was conducted.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION     - 8 -
2:18-cv-00731-RBL

under the APA or a cancellation or debarment under the IAA, it can be challenged under both statutes. And because Plaintiffs have shown that the Directive violates both statutes and the State Department failed to follow required procedures under either statute, Plaintiffs' claims are likely to succeed on the merits.

### B    The State Department's Directive Has Caused and Will Likely Continue to Cause Irreparable Harm to Plaintiffs; the Balance of the Equities and Public Interest Require Immediate Relief.

#### 1    Plaintiffs Have Shown They Will Likely Suffer Irreparable Harm.

Plaintiffs have shown that each of the irreparable harms they allege is cognizable under the law and is established in fact. The State Department's assertion that the Ninth Circuit has not recognized that harm to organizational missions can be irreparable harm, *see* Opp'n at 18-19, is simply incorrect: "[T]he organizational plaintiffs have shown ongoing harms to their organizational missions . . . [t]hus, the plaintiffs have established a likelihood of irreparable harm." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). The State Department does not dispute the factual statements which underlie Plaintiffs' assertions of harm to their organizational missions. Accordingly, this irreparable harm is established.

The State Department's suggestion that reputational harm can only be established with concrete evidence of many individual opinions on reputation should not apply here. *See* Opp'n at 20 n.13. Unlike the reputational harms involving goodwill that the State Department cites for support, *see id.*, Plaintiffs lost their accreditation in a way not easily remedied. Accreditations are, by definition, evidence of placement "into a reputable or outstanding category" and official recognition "as bona fide, approved, or in conformity with a standard." Webster's Third New International Dictionary (2002). Having one's reputational status refused for renewal after having received it in the first instance surely constitutes irreparable harm to one's reputation,[7] unless remedied quickly with a retraction or correction, which COA stands

---

[7] A similar principle runs throughout the *per se* harm-related authorities that Plaintiffs cited in their opening brief. Mot. at 19-20. Particularly, *Lincoln Memorial University Duncan School of Law v. American Bar Ass'n*, No. 3:11-cv-608, 2012 WL 1108125, at *7 (E.D. Tenn. Apr. 2, 2012) makes a compelling case for finding *per se* harm when loss of accreditation is at issue. Although the State Department expresses doctrinal differences with other federal courts, Opp'n at 19-20, *Lincoln Memorial*, like any non-controlling authority, can be cited as persuasive authority, and courts cite out-of-circuit authorities with approval in cases like this one where those

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION          - 9 -
2:18-cv-00731-RBL

ready to provide if this Court reverses the State Department's Directive. Schmidt Decl. ¶ 9 (stating that COA was "fully prepared" to complete review of Plaintiffs' applications).

Perhaps the most serious of irreparable harms are those which jeopardize Plaintiffs' existence in the future. The financial losses shown in Plaintiffs' initial declarations, which the State Department does not contest factually, are not provided for purposes of damages recovery in this action, as the State Department suggests. *See* Opp'n at 18. Rather, they support a showing that Plaintiffs' entire existence and ability to execute their missions are in danger, given the significant loss of revenue compared to the costs of remaining open without those revenues. *See* Mot. at 18-19. The State Department nowhere challenges the idea that risk to an organization's existence can constitute irreparable harm. Thus, Plaintiffs have established this irreparable harm as well.

Nor is Plaintiffs' harm self-inflicted. It is simply indisputable that the harm Plaintiffs have suffered resulted solely from the issuance of the Directive, and the Directive's binding language – "COA may no longer continue to review or make any decision in relation to [Plaintiffs'] accreditation application[s]," Schmidt Decl., Ex. C at 1 – which prevented COA from continuing to process Plaintiffs' accreditation renewal applications. *Id.* ¶ 11. Starting the process anew with a new accrediting agency (and one under investigation) was not a viable option. Amicus Br. (Dkt. # 32-1) at 4. The record shows that IAAME could not complete review of Plaintiffs' applications before Plaintiffs would cease to exist, Meske Decl. (Dkt. # 21), ¶ 22; Amicus Br. at 4, even if it were willing to resume processing Plaintiffs' applications as renewals, which it is not. Meske Decl. ¶ 22. Indeed, the State Department's brief suggests that IAAME is incapable of completing Plaintiffs' applications until the beginning of 2019, at the earliest, with the stated need to process applications of those agencies whose accreditations will expire in 2019. Opp'n at 17. Accordingly, Plaintiffs did not inflict irreparable harm on themselves by not pursuing accreditation through IAAME; rather, by bringing this suit, they

---

authorities' principles "make sense." *United States v. Jones*, 260 B.R. 415, 419 (E.D. Mich. 2000). Here, the *Lincoln Memorial* decision makes sense, because a loss of previously granted accreditation leaves a stain that cannot be easily erased.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION      - 10 -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

have sought to preserve their existence and minimize irreparable harm that the State Department's Directive has caused them.

### 2        The Public Interest Requires Injunctive Relief Here.

The public interest favors granting Plaintiffs' motion for a preliminary injunction. The State Department correctly states that the public interest inquiry primarily addresses the impact on non-parties rather than parties. Opp'n at 21 (quoting *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 931 (9th Cir. 2003)). Some non-parties – the Garretts and Tutterrows – have suffered because of the State Department's illegal action and have submitted declarations to this effect in support of Plaintiffs' motion. (Dkt. #s 24 & 25). Other non-parties have weighed in to explain that, for example, existential threats to adoption agencies can cause adoption records to be lost and non-adoption counseling services to end for clients. Amicus Br. at 9-10.

These harms to non-parties demonstrate that the State Department's Directive frustrates the public interest more broadly by frustrating the IAA's purpose of "assist[ing] United States citizens seeking to adopt children from abroad."[8] 42 U.S.C. § 14901(b)(3). But the State Department nowhere addresses this except to rank the public interest in safe and ethical adoptions above the public interest in making those adoptions available at all. Opp'n at 22. The State Department's Directive, however, does not advance the former public interest, either.

Specifically, the State Department contends that its Directive promotes safer and more ethical international adoptions, because giving accredited agencies "indefinite" time to show they comply with the Hague adoption standards "undercut[s]" those purposes of the IAA. Opp'n at 21-22. Yet, the State Department presents no evidence that these principles would be served here, because the State Department – correctly so – does not cite Plaintiffs as examples of troublesome or unethical agencies. *Compare id.* at 22; Olson Decl. (Dkt. No. 51-1), ¶ 7. Regardless of how long an accrediting entity might defer an adoption agency's accreditation

---

[8] A policy of allowing fewer, not more, agencies to finish showing accrediting entities that they are capable and willing to perform international adoptions can only serve to reduce the assistance to United States citizens who seek to adopt abroad. See Amicus Br. at 4 (explaining that the State Department has sought to implement international adoption reform through maneuvers such as the one subject to this action).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION     - 11 -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

renewal application, accrediting entities presumably would follow the law and grant reaccreditation only to those agencies that meet the accreditation standards. That's precisely what COA did when it renewed Hague accreditations to 7 of 8 agencies after their accreditations expired. Schmidt Decl. ¶ 5. Indeed, taking longer to process accreditation applications, if necessary, ensures rigorous review of those applications, which in turn promotes safe and ethical adoptions by well-vetted adoption agencies. And, of course, Plaintiffs are not asking that they be immediately reaccredited without further review; they seek only to have their applications fairly and completely considered.

### 3   The Balance of the Equities Tips in Favor of Granting the Motion.

Finally, as Plaintiffs explained in their opening brief, the harms to them and the public far outweigh any harm to the State Department. *See* Mot. at 20. Indeed, one struggles to conceive what harm the State Department might experience if COA completes processing Plaintiffs' applications. And, aside from its unavailing contention that the public interest weighs against an injunction, the State Department failed to explain how it could be harmed by rescinding its Directive. Opp'n at 21-24. Accordingly, the public interest and the balance of the equities tip sharply in favor of granting Plaintiffs' motion.

### Conclusion

The Court should grant Plaintiffs' motion for a preliminary injunction so that COA may resume processing Plaintiffs' accreditation renewal applications where it left off.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION   - 12 -
2:18-cv-00731-RBL

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

| | |
|---|---|
| 1 | DATED this 17th day of August, 2018 |
| 2 | ORRICK, HERRINGTON & SUTCLIFFE LLP |

By:  *s/Robert M. McKenna*
     *s/Adam Nolan Tabor*
Robert M. McKenna (WSBA 18327)
rmckenna@orrick.com
Adam Nolan Tabor (WSBA 50912)
atabor@orrick.com

701 Fifth Avenue, Suite 5600
Seattle, WA  98104-7097
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301

*Attorneys for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
2:18-cv-00731-RBL

- 13 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

# CERTIFICATE OF SERVICE

I hereby certify that on the date below, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

DATED: August 17, 2018                    ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _/s/ Robert M. McKenna_
Robert M. McKenna (WSBA No. 18327)
rmckenna@orrick.com

701 Fifth Avenue, Suite 5600
Seattle, WA 98104-7097
Telephone:  206-839-4300
Facsimile:  206-839-4301

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
2:18-cv-00731-RBL

- 14 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300