1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          WESTERN DISTRICT OF WASHINGTON

10   FAITH INTERNATIONAL ADOPTIONS,
     a Washington State non-profit corporation;
11   AMAZING GRACE ADOPTIONS, a North
     Carolina non-profit corporation; and
12   ADOPT ABROAD INCORPORATED, a
     Pennsylvania non-profit corporation,
13
                    Plaintiffs,
14
            v.                                    Case No. 2:18-CV-00731-RBL
15
     MICHAEL R. POMPEO, Secretary for the         **APPENDIX TO PLAINTIFFS'**
16   United States Department of State, in his    **OPPOSITION TO GOVERNMENT**
     official capacity; CARL C. RISCH,            **DEFENDANTS' MOTION TO**
17   Assistant Secretary of State for Consular    **DISMISS**
     Affairs, in his official capacity; BETH
18   PAYNE, Director of the Office of Children's
     Issues, in her official capacity; UNITED
19   STATES DEPARTMENT OF STATE, and
     COUNCIL ON ACCREDITATION FOR
20   CHILDREN AND FAMILY SERVICES,
     INC.,
21
                    Defendants
22

23

24

25

26

27

28   APPENDIX TO PLAINTIFFS'
     OPPOSITION TO GOVERNMENT
     DEFENDANTS' MOTION TO DISMISS
     2:18-CV-00731-RBL

1

1

2                           **CERTIFICATE OF SERVICE**

3           I hereby certify that on the date below, I caused the Appendix to Plaintiffs' Opposition

4    to Government Defendants' Motion to Dismiss to be electronically filed with the Clerk of the

5    Court using the CM/ECF system which will send notification of the filing to all counsel of

6    record.

7

8    DATED:  September 14, 2018                    ORRICK, HERRINGTON & SUTCLIFFE LLP

9                                          By:   _/s/ Robert M. McKenna_____
10                                               Robert M. McKenna (WSBA 18327)
                                                 rmckenna@orrick.com
11                                               701 Fifth Avenue, Suite 5600
12                                               Seattle, WA  98104-7097
                                                 Telephone:   206-839-4300
13                                               Facsimile:   206-839-4301

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   APPENDIX TO PLAINTIFFS'
     OPPOSITION TO GOVERNMENT                     - 2 -        ORRICK, HERRINGTON & SUTCLIFFE LLP
     DEFENDANTS' MOTION TO DISMISS                                    701 Fifth Avenue, Suite 5600
     2:18-CV-00731-RBL                                              Seattle, Washington  98104-7097
                                                                        +1 206 839 4300

# HAGUE ACCREDITATION AND APPROVAL



CREDIBILITY • INTEGRITY • ACHIEVEMENT

## POLICIES



## PROCEDURES

## MANUAL

This document provides a general overview of key elements of 22 CFR Part 96, the regulation governing the accreditation and approval of intercountry adoption service providers under the Intercountry Adoption Act of 2000. It is not a substitute for the actual regulation, nor is it a comprehensive summary of the regulation. In the case of any inconsistencies between this document and the regulation itself, the language of the regulation governs.

Council on Accreditation, Inc.

45 Broadway, 29th Floor

New York, NY 10006

PHONE - (212) 797-3000

FAX - (212) 797-1428

WEB - www.COAnet.org

# Table of Contents

| | SECTION | Page | Effective Date |
|---|---|---|---|
| | **INTRODUCTION TO COA HAGUE ACCREDITATION AND APPROVAL** | **1** | 7.03.2007 |
| | A. Overview of Hague Accreditation and Approval Policies and Procedures | 1 | 7.03.2007 |
| | B. Elements of the Hague Accreditation and Approval Process | 2 | 7.03.2007 |
| | C. Self-Study Process | 2 | 7.03.2007 |
| | D. Accreditation/Approval and Regulation | 2 | 7.03.2007 |
| | E. Customer Service | 2 | 7.03.2007 |
| | F. Publications | 3 | 7.03.2007 |
| | G. Updates and Clarifications to Policies, Procedures, Guide to Hague Accreditation and Approval, and Hague Standards | 3 | 7.03.2007 |
| | | | |
| I. | **PROVISION OF REQUIRED INFORMATION BY ADOPTION SERVICE PROVIDERS TO COA** | **4** | 7.03.2007 |
| | A. Maintenance of Required Licenses/Notification of Action Against | 4 | 7.03.2007 |
| | B. Additional Notifications | 5 | 7.03.2007 |
| | C. Burden of Demonstrating Substantial Compliance | 5 | 7.03.2007 |
| | | | |
| II. | **APPLICATION AND RENEWAL APPLICATION** | **6** | 6.22.2009 |
| | A. Corporate Structure | 6 | 7.03.2007 |
| | B. Obtaining an Application | 6 | 7.03.2007 |
| | C. Application Requirements | 6 | 6.22.2009 |
| | D. Application Receipt and Processing | 7 | 7.03.2007 |
| | E. Correlation Between Application Receipt and Eligibility for Accreditation or Approval | 7 | 6.22.2009 |
| | F. Holding an Adoption Service Provider Out as Accredited or Approved | 7 | 6.22.2009 |
| | G. Disclosure of Applicant or Renewal Status | 7 | 6.22.2009 |
| | H. Application for Renewal of Accreditation or Approval | 7 | 6.22.2009 |
| | | | |
| III. | **ACCREDITATION AND APPROVAL FEES** | **8** | 6.22.2009 |
| | | | |
| IV. | **ACCREDITATION AND APPROVAL AGREEMENT** | **9** | 3.13.2009 |
| | A. Accreditation or Approval Agreement | 9 | 3.13.2009 |
| | B. Additional Contracts | 9 | 3.13.2009 |
| | C. Disclosure of Information | 9 | 3.13.2009 |
| | | | |
| V. | **ACCREDITATION OR APPROVAL PLAN** | **10** | 7.03.2007 |
| | A. Accreditation or Approval Plan | 10 | 7.03.2007 |

| | SECTION | Page | Effective Date |
|---|---|---|---|
| VI. | **SELF-STUDY** | **11** | 7.03.2007 |
| | A.  The Function of the Self-Study | 11 | 7.03.2007 |
| | B. Completion of the Self-Study/Duty to Provide | 11 | 7.03.2007 |
| | | | |
| VII. | **SITE VISIT** | **12** | 7.03.2007 |
| | A. The Evaluation Team | 12 | 7.03.2007 |
| | 1. Evaluators | 12 | 7.03.2007 |
| | 2. Team Leaders | 13 | 7.03.2007 |
| | 3. Team Size and Composition | 13 | 7.03.2007 |
| | 4. Selection of Team | 13 | 7.03.2007 |
| | 5. Duty to Disclose Conflict of Interest or Appearance Thereof | 13 | 7.03.2007 |
| | 6. Review and Approval of the Team | 14 | 7.03.2007 |
| | 7. Confidentiality | 14 | 7.03.2007 |
| | B. Site Visit Activities | 14 | 7.03.2007 |
| | 1. Scheduling of Activities | 14 | 7.03.2007 |
| | 2. Site Visit Duration | 15 | 7.03.2007 |
| | 3. Consideration of Additional Information | 15 | 7.03.2007 |
| | C. Pre-Commission Report Preparation and Distribution | 16 | 7.03.2007 |
| | 1. Ratings | 16 | 7.03.2007 |
| | 2. Pre-Commission Report Completion | 16 | 7.03.2007 |
| | 3.Opportunity to Respond to Pre-Commission Report | 16 | 7.03.2007 |
| | 4.Non-Disclosure of Pre-Commission Report | 16 | 7.03.2007 |
| | D. Evaluator and Adoption Service Provider Responsibilities | 17 | 7.03.2007 |
| | 1.Role and Function | 17 | 7.03.2007 |
| | 2. Duty of Evaluators to Report Observations | 18 | 7.03.2007 |
| | 3. Evaluation | 18 | 7.03.2007 |
| | | | |
| VIII. | **SUBSTANTIAL COMPLIANCE SYSTEM** | **19** | 7.03.2007 |
| | | | |
| IX. | **DECISION-MAKING** | **20** | 10.03.2012 |
| | A. Commission | 20 | 10.03.2012 |
| | 1. Composition | 20 | 10.03.2012 |
| | 2. Responsibility | 20 | 10.03.2012 |
| | 3. Accreditation or Approval Decision-Making | 20 | 10.30.2012 |
| | 4. Additional Information | 21 | 10.03.2012 |
| | B. Possible Decisions for New Applicants | 21 | 10.03.2012 |
| | 1. Accreditation and Approval | 22 | 10.03.2012 |
| | 2. Denial of a New  Application for Accreditation or Approval | 22 | 10.03.2012 |
| | 3. Deferral of Commission Decision | 24 | 10.03.2012 |
| | 4. COA's Recommendation to Place the Accreditation or Approval Process on Hold | 25 | 7.03.2007 |

Hague Accreditation and Approval Policies and Procedures Manual

- -

5

| | SECTION | Page | Effective Date |
|---|---|---|---|
| | C. Possible Decisions for Accredited or Approved Adoption Service Providers Seeking Renewal | 25 | 10.03.2012 |
| | 1.   Renewal of Accreditation or Approval | 25 | 10.03.2012 |
| | 2.   Decision or Intent to Refuse Renewal of Accreditation or Approval | 26 | 10.03.2012 |
| | 3.   Deferral of Commission Decision | 28 | 6.30.2010 |
| | D. Accreditation or Approval and Renewal Decision-Making Requirements | 29 | 10.03.2012 |
| | E. Required Action of COA's Special Committee | 29 | 10.03.2012 |
| | 1. Accreditation or Approval, Renewal, and Deferrals | 29 | 10.03.2012 |
| | 2. Denial, Refusal to Renew, and Adverse Action | 30 | 10.03.2012 |
| | F. Public Disclosure of Accreditation or Approval Decisions | 31 | 7.03.2007 |
| | G. Limitation of Liability | 31 | 7.03.2007 |
| | H. Content of Deliberations | 31 | 7.03.2007 |
| | | | |
| X. | **MONITORING AND OVERSIGHT (M&O) OF ACCREDITED OR APPROVED ADOPTION SERVICE PROVIDERS** | **32** | 4.1.2010 |
| | A. Monitoring and Oversight Overview | 32 | 9.12.2008 |
| | B. Required Self-Reporting | 32 | 7.19.2010 |
| | C. Semi-Annual Report on Complaints Received | 41 | 4.1.2010 |
| | D. Annual Attestation of Substantial Compliance | 41 | 4.1.2011 |
| | E. Site Visits During  the Accreditation and Approval Cycle | 42 | 9.12.2008 |
| | F. Required Cooperation by Accredited and Approved Adoption Service Providers | 42 | 9.12.2008 |
| | G. Right to Review and Act on an Adoption Service Provider's Accreditation or Approval Status | 43 | 9.9.2011 |
| | H. Review of Complaints against Accredited or Approved Adoption Service Providers | 53 | 9.12.2008 |
| | | | |
| XI. | **REQUEST   FOR   RENEWAL   OF   ACCREDITATION   OR APPROVAL** | **57** | 10.03.2012 |
| | | | |
| XII. | **SITE VISITS DURING THE ACCREDITATION OR APPROVAL CYCLE** | **59** | 9.12.2008 |
| | A. Remedial or Compliance Assurance Site Visits | 59 | 9.12.2008 |
| | B. Interim Site Visits for Delays to the Accreditation or Approval Review Process <reserved> | 60 | |
| | C. Merger or Acquisition Site Visits | 60 | 9.12.2008 |
| | | | |
| XIII. | **OPPORTUNITY FOR REVIEW OF COA DECISION OR INTENT TO IMPOSE ADVERSE ACTION** | **61** | 9.12.2008 |
| | A. Opportunity for Review of COA Decisions | 61 | 9.12.2008 |

Hague Accreditation and Approval Policies and Procedures Manual

- -

| | SECTION | Page | Effective Date |
|---|---|---|---|
| | B. Time within Which to Request a Review | 61 | 9.12.2008 |
| | C. Content of and Filing a Request for Review | 61 | 9.12.2008 |
| | D. Grounds for Review | 62 | 9.12.2008 |
| | E. Timing and Method for Review | 642 | 9.12.2008 |
| | F. COA Review Panels | 62 | 9.12.2008 |
| | G. Review Decision | 63 | 9.12.2008 |
| | H. Standard of Review and Requirement of Unanimity | 63 | 1.30.2009 |
| | I. Content of the Deliberations and Review Panel Vote | 63 | 9.12.2008 |
| | J. Request for Review Expenses | 64 | 9.12.2008 |
| | K. Limitation of Liability | 64 | 9.12.2008 |
| | | | |
| XIV. | DELAYS TO THE ACCREDITATION OR APPROVAL REVIEW PROCESS <RESERVED> | 65 | |
| | | | |
| XV. | ADOPTION SERVICE PROVIDER CHANGED STATUS | 66 | 9.12.2008 |
| | A. Closure of an Adoption Service Provider | 66 | 9.12.2008 |
| | B. Discontinuation of Adoption Services | 67 | 9.12.2008 |
| | C. Merger or Acquisition | 69 | 9.12.2008 |
| | | | |
| XVI. | CONFIDENTIALITY AND DISCLOSURE OF INFORMATION | 73 | 7.03.2007 |
| | A. Confidential Information | 73 | 8.16.2012 |
| | 1. Introduction | 73 | 8.16.2012 |
| | 2. Information Acquired in the Course of Accreditation/Approval Review, Renewal, and During the Accreditation/Approval Cycle | 74 | 8.16.2012 |
| | 3. Limited Use of Documents and Proprietary Information/ Right to Use Non-Identifying Data | 74 | 7.03.2007 |
| | 4. Evaluation Team and Commission Deliberations | 75 | 7.03.2007 |
| | 5. Information Retention | 75 | 7.03.2007 |
| | B. Dissemination of Information to the Public | 75 | 9.9.2011 |
| | 1. Public Information | 75 | 9.9.2011 |
| | C. Disclosure of Information to Others | 76 | 8.16.2012 |
| | 1. Disclosure to Evaluators and Commissions | 76 | 7.03.2007 |
| | 2. Exchange of Information with Regulatory/Governmental Authorities | 77 | 8.16.2012 |
| | 3. Disclosure of Third-Party Information | 77 | 8.16.2012 |
| | 4. Serious Conditions | 77 | 7.03.2007 |
| | 5. State or Other Confidentiality Laws | 78 | 7.03.2007 |
| | D. Dissemination of Information to Adoption Service Providers | 78 | 7.03.2007 |
| | 1. Accreditation or Approval Notifications | 78 | 7.03.2007 |
| | 2. Accreditation or Approval Certificate/Logo | 78 | 7.03.2007 |
| | 3. Accredited or Approved Status Disclosure | 78 | 7.03.2007 |

|        | SECTION | Page | Effective Date |
|--------|---------|------|----------------|
|        | E. Reporting to the U.S. Department of State about Accredited/ Approved Adoption Service Providers and Their Activities | 79 | 7.03.2007 |
|        | 1. Annual and Semi-Annual Reports | 79 | 7.03.2007 |
|        | 2. 30-Day Reporting | 81 | 7.03.2007 |
|        | 3. Immediate Notification | 81 | 7.03.2007 |
|        |  |  |  |
| **XVII.** | **COMPLAINTS** | **82** | 11.06.2009 |
|        | 1.   COA Policy and Procedure for the Receipt and Review of Complaints Against Itself | 82 | 8.16.2012 |
|        | 2. Complaints Received against Evaluators/Site Visit Concerns | 83 | 7.03.2007 |
|        |  |  |  |
| **XVIII.** | **COA REQUIRED POSTING for the ADOPTION SERVICE PROVIDER'S WEBSITE** | **85** | 6.30.2010 |
|        |  |  |  |
| **XIX.** | **COA WEB-BASED ACCREDITATION** | **86** | 4.19.2013 |

# Introduction to COA Hague Accreditation and Approval

*For more than twenty (20) years, COA has been at the forefront of working with intercountry adoption service providers to ensure that the needs and rights of children, biological families, and adoptive families are met.  COA is especially proud to have been designated by the Department of State as the sole national accrediting entity under the Intercountry Adoption Act of 2000 (IAA). COA, as an approved accrediting entity, must perform all of its responsibilities in accordance with the Convention, the IAA, the regulations implementing the IAA, and its agreement with the U.S. Department of State.*

*The terms "agency" and "person" as used in this document are defined in and governed by 22 CFR 96.2. For the reader's convenience, the term "adoption service provider" is used throughout this document and may be either an agency or a person. An agency means a private, nonprofit organization licensed to provide adoption services in at least one State. A person means an individual or a private, for-profit entity that may be organized as a corporation, company, association, firm, partnership, society, or joint stock company; or other legal entity under the laws of any state.*

### A.  Overview of Hague Accreditation and Approval Policies and Procedures

This document provides a general overview of key elements of 22 CFR Part 96, the regulation governing the accreditation and approval of adoption service providers under the Intercountry Adoption Act of 2000.  **It is not a substitute for the actual regulation, nor is it a comprehensive summary of the regulation.  In the case of any inconsistencies between this document and the regulation itself, the language of the regulation governs.**

This document sets forth the accreditation and approval policies and procedures of COA's Hague accreditation/approval process.  It covers:

- Accepting applicants for accreditation or approval.
- Facilitating the accreditation or approval review process.
- Assessing the adoption service provider's substantial compliance with the standards for accreditation or approval, as applicable, in 22 CFR part 96 (the "Hague Standards"), in accordance with the substantial compliance system.
- Reaching accreditation and approval decisions.

### B.  Elements of Hague Accreditation and Approval Process

COA's policies and procedures encompass the following elements:

- Standards set forth in 22 CFR Part 96 regulations.
- A self-study process that actively engages the adoption service provider and provides a

first opportunity for correction of deficiencies.

- Trained, independent evaluators that evaluate adoption service providers' compliance with the Hague standards during a site visit.
- A trained Commission that assesses substantial compliance with applicable Hague standards, in accordance with the substantial compliance system, and reaches accreditation or approval decisions.
- An objective decision-making process that is free from conflict of interest.
- A decision-making process that allows applicants to respond to ratings and reports by providing evidence that non-compliance with the Hague standards has been corrected.
- An internal review process for certain actions.
- Disclosure of information to the public on accreditations, previous temporary accreditations, and approvals.
- Continuous monitoring of Hague standards compliance during the period between cyclical accreditation and approval reviews.

## C.  Self-Study Process

A key component to becoming accredited or approved is for the adoption service provider to undertake a formal self-study.   The *Guide to Hague Accreditation and Approval* contains the Hague standards and information about pre-site and on-site evidence, as well as on-site activities required by COA. Adoption service providers use the *Guide to Hague Accreditation and Approval* throughout the self-study period as they prepare required information for the review process.  See *§VI Self-Study* and *§VII Site Visit* for more information.

## D.  Accreditation/Approval and Regulation

COA has been designated by the U.S. Department of State to accredit/approve those adoption service providers that are in or show capacity to be in substantial compliance with applicable Hague standards. The memorandum of agreement between COA and the U.S. Department of State authorizes how COA will carry out its functions and responsibilities as an accrediting entity.

Hague accreditation or approval signifies that an adoption service provider has demonstrated substantial compliance with applicable Hague standards through a process that includes a rigorous review by competent evaluators who determine, on a standard-by-standard basis, whether an adoption service provider is in substantial compliance with applicable Hague standards, in accordance with the substantial compliance system.

## E.  Customer Service

COA is committed to providing an accreditation or approval review process that is objective, comprehensive, and fair, in accordance with the Intercountry Adoption Act and its implementing regulations.

COA is available to answer questions, provides assistance, and problem solving to adoption service providers who have applied for accreditation or approval, during the accreditation/ approval process and following accreditation or approval.

Hague Accreditation and Approval Policies and Procedures Manual

COA encourages adoption service providers to communicate with appropriate COA representatives and make them aware of any concerns as they arise.  If, for any reason, an adoption service provider is dissatisfied with a response or solution offered by a COA representative, COA encourages the adoption service provider to contact the representative's supervisor or COA's Director of Quality Services Management. Written complaints should be addressed to COA, 45 Broadway, 29th Floor, New York, NY 10006, ATTENTION: QSM or via e-mail to the Director of Quality Services Management at: reportaconcern@coanet.org, or via fax to the attention of QSM at: 212.797.1428.

## F.  Publications

The *Guide to Hague Accreditation and Approval* is available at: www.COAnet.org. COA, as required by the Intercountry Adoption Act of 2000 (IAA) uses the procedures and standards contained in the regulations at 22 CFR Part 96 in accrediting and approving adoption service providers. Adoption service providers may consult the U.S Department of State's website, www.travel.state.gov, and *Federal Register* for information on the standards governing Hague accreditation and approval.

## G.  Updates and Clarifications to Policies, Procedures, Guide to Hague Accreditation and Approval, and Hague Standards

Periodically, COA updates or issues clarifications to its policies and procedures governing the accreditation or approval process.  Substantial revisions to COA's policies and procedures will be issued with an effective date. Adoption service providers are expected to regularly review clarifications and changes to the policies and procedures document on COA's website, www.COAnet.org. Changes to the policies and procedures and to the *Guide to Hague Accreditation and Approval* are effective at the time of their posting.

# I:  Provision of Required Information by Adoption Service Providers to COA

*Hague accreditation or approval by COA is available to adoption service providers regardless of their size, structure, or revenue, as long as the adoption service provider complies with the process set forth in written COA procedures and understands that application acceptance does not guarantee accreditation or approval.*

*Once the Convention has entered into force for the United States, an adoption service provider may not offer, or provide, or facilitate the provision of any adoption services in the United States in connection with a Convention adoption unless it is an accredited agency, an approved person, a supervised provider, or an exempt provider (see 22 CFR 96.12). Civil and/or criminal penalties may apply in accordance with section 404 of the IAA.*

## A.  Maintenance of Required Licenses/Notification of Action Against

An adoption service provider must be properly licensed or otherwise authorized by state law to provide adoption services in at least one state and must maintain all required licenses (see 22 CFR 96.30).  At the time of applying for accreditation or approval, the adoption service provider will provide to COA copies of its licenses or other authorizations and any other necessary information on the status of its licenses or authorizations.

An adoption service provider must inform COA of the following changes to its license status:

– Loss of foreign and domestic licenses or authorizations
– License restrictions (*e.g.*, provisional or probationary status)
– On-going regulatory investigations or reviews
– On-going corrective or other responsive action to current license restrictions.

COA requires each adoption service provider throughout the accreditation or approval process and during its accreditation cycle to disclose any loss of a license or authorization, or any other change in the condition of a license or authorization, *e.g.*, provisional license, probationary status, or other compromised status imposed by licensing/regulatory authorities (see 22 CFR 96.25, 96.30, 96.35(b), 96.96(a)(13)).

A first-time applicant for Hague accreditation/approval must notify COA in writing within ten (10) business days of any license loss or revocation and twenty (20) business days of any other adverse action taken by a licensing or other authority against an adoption service provider's license or authorization.

An adoption service provider may be required to make information about its current license or authorization, any adverse action(s) against its license or authorization, and any evaluation reports issued by the licensing authority available at the time of the site visit for review by the evaluation team.

COA has the discretion to request additional documents or information from the adoption service provider at any time. If an adoption service provider fails to provide requested documents or information, or to make employees available as requested, COA may deny accreditation or approval, or in the cases of an accredited agency or approved person, take appropriate adverse action against the agency or person solely on that basis (22 CFR 96.25(c)).

## B.  Additional Notifications

COA requires each first-time applicant for Hague accreditation/approval throughout the accreditation or approval process as well as all accredited/ approval adoption service providers during the accreditation cycle to inform COA of the loss of the right to provide services, debarment, pending investigations, or criminal charges, and/or disclose any changes in information (see 22 CFR 96.35) (see §X. Monitoring and Oversight).

## C.  Burden of Demonstrating Substantial Compliance

The burden of demonstrating substantial compliance is on the applicant for accreditation or approval.  COA cannot determine in advance of the accreditation or approval process whether or not a particular applicant will be able to demonstrate substantial compliance with applicable standards, in accordance with the substantial compliance system. It is the responsibility of each individual applicant to determine if it can substantially comply with applicable standards, in accordance with the substantial compliance system, before signing an accreditation or approval agreement and submitting the fee to pursue accreditation or approval.

COA may cease any accreditation or approval process at any time.

It is the responsibility of the adoption service provider to meet all requirements for accreditation or approval.

# II:  Application and Renewal Application

*Application instructions and procedures are available on COA's website for any adoption service provider considering accreditation or approval.  First-time applicants may submit an application at any time. COA provides a timely evaluation and response to all submitted applications. COA has established and follows uniform application procedures for adoption service providers seeking accreditation or approval (see 22 CFR 96.18(a)).*

*COA processes all first-time applications, re-applications, or renewal requests (see 22 CFR 96.63(c) and §XI Request for Renewal of Accreditation and Approval) for accreditation/approval in a timely manner.*

### A.  Corporate Structure

Adoption service providers seeking accreditation or approval may be either an agency or person (see 22 CFR 96.31*)*. An agency must qualify for non-profit tax treatment under section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or for non-profit status under the laws of any state. A person is an individual or for-profit entity organized as a corporation, company, association, firm, partnership, society, or joint stock company; or other legal entity under the laws of any State.

### B.  Obtaining an Application

An adoption service provider interested in applying for accreditation or approval for the first time should contact COA's Client Relations Department.  An electronic application is available on COA's website at www.COAnet.org.

### C.  Application Requirements

An adoption service provider submits the following with its completed application:

- An application fee (*nonrefundable*)
- Most recent income tax return (i.e., Form 990)
- Copy of certification of incorporation (*organizations only*)
- Copy of  501(c)(3) status letter (*if applicable*)
- A current organizational chart (*organizations only*)

See *§I Accreditation or Approval*, regarding licensing requirements and §V Accreditation or Approval Plan.

### D.  Application Receipt and Processing

Upon receipt of a completed application and the application fee, COA calculates the

accreditation or approval fee.  The application requires the signature of the individual adoption service provider or the adoption service provider's president/chief executive officer/chief administrator.  COA confirms receipt and processing of an application by sending the adoption service provider a letter, Hague Accreditation or Approval Agreement, and payment form.

### E.  Correlation Between Application Receipt and Eligibility for Accreditation or Approval

Receipt of a completed application is no guarantee that the adoption service provider can substantially comply with applicable Hague standards in accordance with the substantial compliance system, or that the adoption service provider will be accredited or approved by COA. Adoption service providers should consult Subpart C of 22 CFR Part 96 to determine themselves if they *must* be accredited or approved to provide adoption services. Criminal and civil penalties may apply to adoption service providers who provide adoption services without being accredited or approved (see Section 404 of the Intercountry Adoption Act of 2000 (IAA)).

### F.  Holding an Adoption Service Provider Out as Accredited or Approved

An adoption service provider who is a first-time applicant or re-applicant for accreditation/approval may not identify itself as accredited or approved prior to formal notification of COA's accreditation or approval decision (see 22 CFR 96.58).

### G. Disclosure of Applicant or Renewal Status

COA discloses the names of adoption service providers that have applied for Hague accreditation or approval and those seeking renewal of their accreditation/approval in accordance with COA's disclosure policy and procedure.  See *§XVI Confidentiality and Disclosure of Information* for additional information about COA's public disclosure (see also 22 CFR 96.91) and confidentiality practices.

### H.  Application for Renewal of Accreditation or Approval

COA advises in writing all accredited or approved adoption service providers that it monitors of the date by which they must seek renewal of their accreditation or approval so that the process can reasonably be completed prior to the expiration of their current accreditation or approval (see *§XI Request for Renewal of Accreditation and Approval).*

# III:  Accreditation and Approval Fees

*The accreditation or approval fee schedule details the exact amounts for each fee charged by COA for becoming and maintaining accreditation or approval.   The accreditation or approval fee is calculated using budgeted revenue information for an agency or individual's Hague intercountry adoption program, which is submitted by the adoption service provider. COA's fee schedule is governed by 22 CFR.96.8 and approved by the U.S. Department of State.*

*Adoption service providers should consult COA's website at www.COAnet.org for the Fee Schedule for Hague Accreditation and Approval.*

# IV:  Accreditation or Approval Agreement

*The Hague Accreditation or Approval Agreement, which must be signed by the adoption service provider and COA, stipulates the accreditation, or approval fee an adoption service provider agrees to pay to undergo COA's accreditation or approval process, and establishes the additional enforceable terms for these processes.  In all cases, the provisions of 22 CFR Part 96 governs.*

## A.  Accreditation or Approval Agreement

The accreditation or approval agreement sets forth the accreditation or approval fee and other related expenses an adoption service provider agrees to pay to undergo these processes and describes the understanding reached between an adoption service provider and COA related to the scope of the adoption service provider's accreditation or approval.

The accreditation or approval agreement requires the signature of COA's President/CEO, or his/her designee, and the individual adoption service provider or the adoption service provider's chief executive officer or chief administrator. It is a binding legal document. See *§III Accreditation or Approval Fees* regarding the accreditation or approval fees.

COA allows for an adoption service provider to sign its accreditation or approval agreement within one year from the date of application. If the adoption service provider is unable to meet this timeframe, COA requires that the adoption service provider submit a new application.

## B.  Additional Contracts

The use of a contract in addition to or in lieu of the accreditation or approval agreement requires the review and approval of COA's President/CEO, or his/her designee.

## C.  Disclosure of Information

Section 96.20 of 22 CFR governs the disclosure of information. The accreditation or approval agreement, or a separate written disclosure of information form signed by the adoption service provider, may set forth any additional, specific arrangements for the disclosure of information to, among others, regulatory entities and others. Such agreements must be consistent with 22 CFR Part 96.  See also *§XVI Confidentiality and Disclosure of Information.*

# V:  Accreditation or Approval Plan

*COA reviews all adoption services provided by an adoption service provider, either directly or through arrangements with other providers.*

### A.   Accreditation or Approval Plan Development

COA expects the adoption service provider to cooperate with completing all required COA assessment information that support the development of an individualized and complete accreditation or approval plan. During an adoption service provider's intake, COA's staff assesses the adoption service provider and develops an accreditation or approval plan, including a timetable for the accreditation or approval process.  If the adoption service provider has a conflict with the site visit date or cannot adhere to the timetable, the adoption service provider must immediately contact its Accreditation Coordinator.

The adoption service provider is also assessed during intake to determine if it provides adoption services in connection with incoming cases and/or outgoing cases for inclusion in its accreditation or approval review. COA utilizes an adoption service provider's brochures and other information submitted at application, written service descriptions completed by the adoption service provider, and discussions with the adoption service provider to determine whether the adoption service provider provides adoption services in connection with outgoing cases, incoming cases, or both.  If COA and the adoption service provider are unable to agree on the scope of the review, the final decision rests with COA.

An adoption service provider must include a certification in its self-study regarding the services provided and must promptly notify its Accreditation Coordinator in writing of any additional Convention adoption services it initiates or discontinues in order to allow COA to include the additional services as part of the ongoing review process or otherwise amend the scope of the review, if appropriate.

# VI:  Self-Study

*The purpose of the self-study is to provide an opportunity for an adoption service provider to strengthen its capacity and adopt best practices that will reflect the requirements of the Convention, the IAA, and the regulations implementing the IAA. The self-study establishes the framework for a fair and comprehensive accreditation, or approval process.  It serves as a systematic way of examining and evaluating the adoption services provider's substantial compliance with applicable Hague standards, in accordance with the substantial compliance system.*

## A.  The Function of the Self-Study

COA views the accreditation or approval process as an opportunity for an adoption service provider to strengthen its capacity and to employ a performance/quality improvement process.  The self-study is a key component of COA's Hague accreditation or approval process and provides the first opportunity for an adoption service provider to demonstrate its substantial compliance with applicable Hague standards, in accordance with the substantial compliance system.

The self-study process engages an adoption service provider in self-assessment and acts as a guide to improving service delivery.  The self-study process requires the participation and involvement, as applicable, of the adoption service provider's staff, governance/advisory councils, and consumers.

The self-study also serves as the framework for the site visit.  An evaluation team reviews an adoption service provider's self-study information prior to coming on site.  The self-study serves as a guide and a first source of evidence for the evaluation team to determine the adoption service provider's substantial compliance with applicable Hague standards, in accordance with the substantial compliance system.

## B.  Completion of the Self-Study/Duty to Provide

COA's Accreditation Coordinator provides the adoption service provider with a timetable for completing the accreditation or approval process.  This timetable sets forth the date by which the self-study information is due.  An adoption service provider's failure to meet the established timeline can result in a delay of the accreditation or approval process by COA.

An adoption service provider must generally provide its completed self-study to COA no later than six (6) weeks prior to its scheduled site visit.  This allows the evaluation team adequate time to review the information before the site visit. Following the adoption service provider's accreditation/approval, it must retain a cop(ies) of its self-study and make it available to the evaluators during a renewal site visit.

# VII:  Site Visit

*A site visit follows the self-study and allows for additional verification of the adoption service provider's eligibility for accreditation or approval and its level of compliance with applicable Hague standards (see Subpart F 22 CFR Part 96).  The site visit allows for verification of the information provided through direct review of the adoption service provider's written application and supporting information.*

*Verification methods may include, but are not limited to, the review of on-site documents, observation of services, and interviews with personnel, consumers, and any other individuals knowledgeable about the adoption service provider's provision of service (i.e., leadership, governance/advisory body or council, and other internal or external stakeholders as applicable). Consumers may include birth parents, adoptive parent(s), prospective adoptive parent(s), and adult adoptee(s) served by the adoption service provider (see 22 CFR 96.24).*

*A group of two or more evaluators who meet pre-determined, written qualification requirements conduct a site visit.  A site visit is conducted pursuant to protocols that include a code of permissible and prohibited conduct for both the adoption service provider and the evaluators.  COA provides adoption service providers the opportunity to raise legitimate concerns about the performance of evaluators.*

*The findings from the evaluators' review of an adoption service provider are included in a Pre-Commission Report that is prepared by COA following the site visit.  COA offers the adoption service provider the opportunity to respond to non-compliant ratings set forth in the Pre-Commission Report by providing additional information or demonstrating, to the satisfaction of COA, correction of deficiencies and substantial compliance with applicable Hague standards, in accordance with the substantial compliance system*.

**A.  The Evaluation Team**

    1. <u>Evaluators</u>

        a.  Qualifications

        COA's evaluators meet qualifications pursuant to 22 CFR 96.24(a). The evaluators are trained COA volunteers who review an adoption service provider's level of compliance with applicable Hague standards based upon the adoption service provider's self-study document and site visit.  COA's evaluators are experienced professionals who have been trained in the Hague accreditation or approval process, the Hague standards, and the substantial compliance system.

b.   Training

Evaluators undergo basic and specialized training in accordance with COA's requirements.   Completing the training is a prerequisite for serving as an evaluator. Evaluators that do not conduct a site visit for within a two-year period of time must reapply with COA and, if approved, attend training again in order to conduct future site visits.

COA trains evaluators to determine the level of the adoption service provider's compliance with applicable Hague standards and apply rating indicators to an adoption service provider's procedures, practices, and performance. Evaluators are expected to exercise professional judgment in the conduct of their work during a site visit.

2.   Team Leaders

COA assigns a team leader to each evaluation team.  The team leader's role is to manage and coordinate all site visit activities for his/her assigned team.  The team leader is ultimately responsible for the team's performance and assures that the team functions in accordance with the *Peer Reviewer Code of Conduct.*

3.   Team Size and Composition

The evaluation team consists of at least two (2) evaluators, one of whom acts as the team leader (see 22 CFR 96.24). However, for large, multi-site or multi-state adoption service providers, larger teams may be necessary. This determination is made by COA in consultation with the adoption service provider applying for accreditation or approval. COA advises an adoption service provider of the estimated number of evaluators at the time it confirms the accreditation or approval process timeline.  COA reserves the right to increase or decrease the number of evaluators at any time during the accreditation/approval process when, in its opinion, a different number of evaluators are needed to carry out the activities necessary to determine an adoption service provider's level of compliance with applicable Hague standards.

4.   Selection of Team

Evaluation team assignments are based on compatibility with the adoption service provider and professional expertise.  COA considers a team member's professional background and expertise to determine the appropriate fit with an adoption service provider's program(s) and structure.

5.   Duty to Disclose Conflict of Interest or Appearance Thereof

The COA accreditation and approval process prides itself on objectivity. Therefore, evaluators and adoption service providers are required to notify COA in writing of any actual or apparent conflict(s) of interest as soon as they are aware of its existence. COA reserves the right to make the final determination about evaluator assignment. COA's determination is not subject to review.

To prevent conflict of interest, evaluators are not allowed to conduct site visits in the geographic area of their residence or employment.   However, in some rare circumstances exceptions will be made. Evaluators are prohibited from becoming employees or supervised providers of an agency or person for at least one (1) year after they have evaluated such agency or person for accreditation or approval (see 22 CFR 96.6 (j)).

6.   Review and Approval of the Team

COA notifies the adoption service provider of the evaluation team assignment and permits the adoption service provider to present objections at that time.   COA changes an evaluator assignment only if the adoption service provider presents a valid objection (*e.g.*, the assignment creates a conflict of interest).

7.   Confidentiality

An adoption service provider's accreditation or approval process, including the site visit, is of a confidential nature (see 22 CFR 96.26).  Evaluators during the site visit have confidential information communicated to them and access confidential files of the adoption service provider, including the private information of consumers. COA requires evaluators to sign a confidentiality agreement and comply with its requirements.

**B.  Site Visit Activities**

1.   Scheduling of Activities

The team leader develops a tentative site visit agenda, consulting directly with the adoption service provider.   The adoption service provider is expected to provide access to information and documents and accommodate all reasonable requests of the team leader. The adoption service provider should contact its Accreditation Coordinator if it is unable to carry out a request.

The site visit includes, but is not limited to:

-       An entrance meeting of the evaluation team and the adoption service provider to which the individual adoption service provider or the chief executive officer/chief administrator invites, as applicable, governing/advisory body

Hague Accreditation and Approval Policies and Procedures Manual

members, management staff, and all other appropriate individuals. The purpose of the entrance meeting is to provide a formal platform to introduce the evaluation team and outline the site visit process.

- Facility visit(s), in accordance with COA's sampling guidelines.
- Staff interviews that include managerial and non-managerial employees, as requested.
- Governing/advisory body interviews, as applicable.
- Review of case records, personnel files, financial records, and, if applicable, minutes of governing body/advisory council and committee meetings, and other requested information in accordance with COA's sampling requirements. Pursuant to 22 CFR 96.25(b), in the case of first-time applicants for accreditation or approval COA may review adoption case records related to non-Convention cases for the purposes of assessing the adoption service provider's capacity, as required by the standards. COA shall permit the adoption service provider to redact/de-identify names and other identifying information pertaining to birth parent(s), prospective adoptive parent(s), and adoptee(s) from such non-Convention adoption records prior to their inspection by COA (see 22 CFR 96.25).
- The observation of routine adoption service provider activities.
- Consideration of complaints about the adoption service provider and follow up accordingly with the adoption service provider while on site.
- Consumer interviews, in accordance with the *Guide to Hague Accreditation and Approval* and as deemed necessary by the evaluation team.
- Community representative interviews, when deemed necessary by the evaluation team.
- An exit meeting with the individual adoption service provider or the management and governing body/advisory council of an agency providing adoption services. The purpose of the exit meeting is to provide a formal platform to conclude the on-site review. The evaluator team highlights their findings and explains the next steps in the process.

2.  Site Visit Duration

COA determines the site visit duration by considering the scope of adoption services provided and service delivery locations.  COA reserves the right to extend the length of a site visit to determine an adoption service provider's compliance with applicable Hague standards if necessary.  The team leader may request that COA lengthen the site visit if, in preparing for or conducting a site visit, the evaluation team determines that additional time is necessary to make an appropriate determination or assessment of the adoption service provider's level of compliance with applicable Hague standards. The adoption service provider is responsible for all fees and other charges associated with extending a site visit.

3.  Consideration of Additional Information

The evaluation team reviews any "additional information" about an adoption service provider supplied by COA (see also *§IX Commission Decision-Making,* section A (4)). When possible, COA provides the adoption service provider with the opportunity to respond to the "additional information" before the site visit.  COA provides any adoption service provider response to "additional information" to the evaluation team for review. COA also provides the adoption service provider with the opportunity to respond to the evaluation team's conclusions about "additional information."

**C.  Pre-Commission Report Preparation and Distribution**

1.  Ratings

After the conclusion of the site visit, the evaluation team prepares ratings and comments for inclusion into the Pre-Commission Report.   The evaluation team determines the Pre-Commission Report ratings by assessing substantial compliance with applicable Hague standards, in accordance with the substantial compliance system.  The *Guide to Hague Accreditation and Approval* discusses the substantial compliance system and the rating methodology approved by the U.S. Department of State.  See also *§VIII Substantial Compliance System*.

2.  Pre-Commission Report Completion

Upon receiving the completed rating sheets and comments from the evaluation team, COA prepares the Pre-Commission Report. The Pre-Commission Report is sent to the adoption service provider for review and response based on guidelines provided by COA.

3.  Opportunity to Respond to Pre-Commission Report

COA requires that the adoption service provider to respond in writing to applicable Hague standards in the Pre-Commission Report with ratings not meeting the substantial compliance system. Failure of the adoption service provider to respond can result in COA ceasing the adoption service provider's accreditation or approval process.
COA provides the adoption service provider's response to the Pre-Commission Report to the team leader on behalf of the evaluator team for comment. The Pre-Commission Report and the adoption service provider's response, along with any team leader comment, are the primary sources of information for the Commission during its review and decision-making process.

4.  Non-disclosure of Pre-Commission Report

The Pre-Commission Report is a document that is internal to the accreditation or approval decision-making process and may not be disclosed by the adoption service provider outside of the context of its accreditation or approval process or be used by the adoption service provider as evidence of performance or an indication of a likely accreditation or approval decision.

## D.  Evaluator and Adoption Service Provider Responsibilities

1.   Role and Function

The role of the evaluator team is to assess an adoption service provider's substantial compliance with applicable Hague standards, in accordance with the substantial compliance system.  The evaluators gather and review data and other information to assess the adoption service provider's compliance level with individual standards.

At the time of the exit meeting, the evaluation team comments generally about the adoption service provider's strengths and weaknesses. The adoption service provider is also made aware of standards for which ratings may be at a level of non-compliance.  Evaluators are prohibited, however, from discussing the actual numerical ratings with the adoption service provider.  COA provides the adoption service provider a Pre-Commission Report after the site visit, which details the adoption service provider's standard-by-standard ratings.

Evaluators are also prohibited from stating whether an adoption service provider will or will not be accredited, or approved and, in fact, do not know whether an adoption service provider will be accredited or approved. The evaluation team does not have the authority to make a decision about an adoption service provider's accreditation or approval, as an accreditation or approval decision is based not only on the Pre-Commission Report, but also on the adoption service provider's response to the Pre-Commission Report, evaluator comments, and any additional information related to compliance with the Hague standards.

Evaluators are prohibited from providing advice to the adoption service provider as part of the site visit process.  Evaluators are also prohibited from providing or receiving any consultation or other services to or from an adoption service provider they review for a one-year period dating from the date the adoption service provider is accredited, approved, denied accreditation or approval, or has an adverse action of cancellation or suspension imposed.

The site visit process begins when the evaluation team receives the self-study for pre-site visit review/assessment and continues through all on-site review activities. Adoption service providers are prohibited from contacting the evaluation team for additional information after the site visit has concluded.  Any additional information

needed by the adoption service provider must be requested from the Accreditation Coordinator.

2. Duty of Evaluators to Report Observations

While evaluators are obligated to report non-compliance with applicable Hague standards and concerning performance to COA for inclusion in the Pre-Commission Report, an evaluator or COA may also have a legal or ethical obligation to report information to a regulatory authority (see 22 CFR 96.72) in accordance with law or professional codes of ethics.

3. Evaluation

COA employs a post-site visit evaluation process to improve evaluator performance and the site visit process for all stakeholders.

The site visit experience, evaluators, and team leaders are systematically evaluated after each site visit by:

a.  the adoption service provider;
b.  the team leader; and,
c.  the evaluators themselves.

Team leader performance is also evaluated by:

a.  the adoption service provider; and,
b.  the evaluators.

COA provides evaluators with a report of the overall evaluation results and also addresses concerns, as needed, with a specific evaluator's performance on an individual basis.  COA does not provide an adoption service provider with these evaluation results.

# VIII:  Substantial Compliance System

*The Guide to Hague Accreditation and Approval sets forth a substantial compliance system that specifies the relative values or weights of the Hague standards and defines the process that will be used to assess substantial compliance with the standards. The substantial compliance system and the value assigned to each standard (or the elements of each standard) are available to all potential and actual applicants for accreditation/approval on COA's website at www.COAnet.org.*

*The substantial compliance system and its rating methodology are governed by 22 CFR 96.27 and have been approved by the U.S. Department of State.*

# IX:  Decision-Making

*The decision-making making process utilized by COA is governed by 22 CFR Part 96. COA's review and decision-making affords applicants seeking Hague accreditation or approval or a renewal of Hague accreditation or approval a fair and impartial decision-making process. COA's decision-making process incorporates multiple levels of review and the collective exercise of professional judgment.*

**A.  Commission**

1.  <u>Composition</u>

    The Commission is the decision-making body that reviews Pre-Commission Reports and responses of the adoption service provider to the report for purposes of reaching accreditation or approval decisions.

    All participants in the Commission are Commissioners, team leaders, evaluators or COA senior managers.  Decision-making participants are qualified individuals with professional backgrounds that enable thoughtful and skillful participation in the decision-making process.

    COA's President/CEO approves individuals nominated to serve as Accreditation Commissioners.

    An internal committee process, chaired by a COA manager, is authorized by the President/CEO and the Commission to perform the decision-making functions and is authorized to make accreditation or approval decisions on behalf of the Commission.

2.  <u>Responsibility</u>

    The Commission is responsible for cyclical accreditation or approval decision-making.

3.  <u>Accreditation or Approval Decision-Making</u>

    The Commission meets regularly to render accreditation or approval decisions and reviews the following information in connection with making an accreditation or approval decision:

    a.  The Pre-Commission Report
    b.  "Additional information," as described in paragraph four (4)
    c.  Additional evidence of compliance submitted by the adoption service provider in response to the Pre-Commission Report, if any
    d.  Evaluator comments about the adoption service provider's responses, if any

The Commission reviews all documentation in a manner free from conflict of interest. Any Commissioner with an actual or apparent conflict of interest must recuse himself/herself from any decision on rating changes and voting. COA considers a Commissioner who served as one of the evaluators for the underlying site visit to have a conflict of interest.

4. Additional Information

COA reviews any "additional information" about an adoption service provider supplied to it and considers it appropriately as part of decisions on applicants for accreditation or approval. "Additional information" includes complaints (see 22 CFR 96.9) received by COA regarding matters and allegations of misconduct, which, if true, could have an impact on the adoption service provider becoming accredited or approved. When possible, COA provides the adoption service provider with the opportunity to respond to the "additional information" before providing it to the Commission. COA provides any adoption service provider's response to "additional information" to the Commission for consideration.

## B. Possible Decisions for New Applicants

New applicants include adoption service providers seeking accreditation or approval:

- for a first time,
- following a denial or cancellation of accreditation,
- following expiration of accreditation or approval, or
- following a voluntary withdrawal of a new application for accreditation or approval.

1. Accreditation and Approval

New applicants for accreditation or approval must meet the requirements of the substantial compliance system to be eligible for accreditation or approval (see 22 CFR 96.27). Following demonstration by the adoption service provider to the satisfaction of COA of its substantial compliance with the Hague standards, accreditation or approval is awarded.

All new applicants for accreditation/approval shall receive written notification (e-mail) from COA of accreditation or approval decision.

COA reserves the right not to provide a formal notification of accreditation or approval letter, certificate, and a final accreditation report until all fees incurred for accreditation or approval have been paid.

The accreditation or approval cycle is effective for a period of four years and from the date of the decision.

Hague Accreditation and Approval Policies and Procedures Manual

-21-

See the *§VIII Substantial Compliance System* or the *Guide to Hague Accreditation and Approval* for information on the substantial compliance system.

2.   Denial of a New Application for Accreditation or Approval

   a.   Reasons for Denial

   COA may decide to deny a new applicant accreditation or approval for any of the following reasons:

   ▪ The adoption service provider fails to make employees available as requested during the accreditation or approval review process, respond to requests for information or documentation by COA staff, evaluator, or the Commission, or provide or disclose any other information that is or would have been germane to an accreditation or approval decision (see 22 CFR 96.25).

   ▪ The adoption service provider is not in substantial compliance with applicable Hague standards, in accordance with the substantial compliance system (see 22 CFR 96.27).

   ▪ The adoption service provider's self-study materials or other information (written application and supporting information) could not be verified through examination of underlying information as necessary to evaluate the adoption service provider's eligibility for accreditation or approval (see 22 CFR 96.24).

   b.   Notification of Denial

   COA will provide all adoption service providers with a written and dated notification which will clearly describe the reason(s) for COA's decision to deny accreditation or approval. This notification will also include a final accreditation report detailing the ratings of compliance and reconsideration procedures.

   c.   Effective Date

   COA, through its President/CEO, will notify an adoption service provider in writing of the effective date for the denial. The effective date will be thirty (30) days from the date of the decision.

   d.   Effect of Denial

COA will notify the U.S. Department of State of the denial (see 22 CFR 96.93). Denial of accreditation or approval is public information (see 22 CFR 96.91) and will be published on the U.S. Department of State's website.

COA takes the reason(s) for its previous denial of temporary accreditation, accreditation, or approval of an adoption service provider into account when evaluating that provider's subsequent applications for accreditation or approval (see 22 CFR 96.27(e)).

e.   Petition for Reconsideration of Denial

A new applicant that is denied accreditation or approval may petition COA for reconsideration (see 22 CFR 96.59).

The adoption service provider must submit a written request to COA's CEO/President for reconsideration that sets forth evidence that:

- demonstrates to the satisfaction of COA that previously identified deficiencies have been corrected; and/or,
- there exist changed circumstances demonstrating the likelihood of substantial compliance with applicable Hague standards, in accordance with the substantial compliance system.

The adoption service provider must submit its petition within sixty (60) days of receiving the notification of the denial.

COA's Special Committee will review the adoption service provider's request and supporting evidence. COA will notify the adoption service provider of the date for its review of the petition. COA reserves the right to request additional information to determine if the deficiencies have been corrected.

COA, through its CEO/President, will notify in writing the adoption service provider of its decision regarding the adoption service provider's petition for reconsideration.

The decision of COA with regard to an adoption service provider's request for reconsideration is final and is not subject to further review.

f.   Re-application

An applicant that is denied accreditation or approval may reapply after the denial.  COA has the discretion to require the adoption service provider to wait for a period of up to one (1) year before recommencing (re-application) the accreditation/approval process. The one (1) year period of time for recommencing the accreditation/approval process begins from the date of COA's determination (upholding the denial) in response to the adoption

Hague Accreditation and Approval Policies and Procedures Manual

service provider's petition for reconsideration or the effective date of the denial, whichever is later.

If COA exercises its discretion to require the adoption service provider to wait a period of time up to (1) one year before recommencing the accreditation/ approval process, the adoption service provider may submit a written request for "early re-application" to COA's President/CEO. This written request must set forth evidence that there exist changed circumstances demonstrating the likelihood of sufficient compliance with the Hague standards.

The decision of COA's President/CEO with regard to the adoption service provider's request for "early re-application" is final and is not subject to further review.

3.   Deferral of Commission Decision

a.   Deferral of Decision to Allow Clarification

The Commission has the discretion to defer reaching an accreditation or approval decision in order to allow the adoption service provider to clarify its compliance with any Hague standards about which the Commission has a question (see 22 CFR 96.58).

The adoption service provider shall have the opportunity to provide the additional information within the time set by the Commission, subject to paragraph c below.

b.   Deferral of Decision to Allow Time to Correct Deficiencies

If adoption service provider is not in substantial compliance with applicable Hague standards, in accordance with the substantial compliance system, the Commission has the discretion to defer reaching an accreditation or approval decision in order to allow the adoption service provider to correct deficiencies and demonstrate substantial compliance.

The adoption service provider shall have the opportunity to respond to questions about substantial compliance with the particular Hague standards that are the subject of the deficiencies within the time set by the Commission, subject to paragraph c below.

c.   Time to Clarify and/or Demonstrate Correction of Deficiencies

An adoption service provider must provide clarification and/or correct deficiencies within the specified time-frame set by COA. An adoption service provider's failure to do so within the required time-frame, as specified in the written notification of

deferral, may result in the denial of accreditation/approval, unless COA has agreed to extend the time within which the adoption service provider is allowed to demonstrate clarification and/or correct deficiencies.

    d.   Remedial Site Visit and Commission Review

The Commission has the discretion to require a remedial site visit as part of the deferral process.

<center>&lt;Reserved.1&gt;</center>

The Commission reviews an adoption service provider at the conclusion of the deferral timeframe to determine whether the adoption service provider has corrected deficiencies and/or is now in substantial compliance with the Hague standards, in accordance with the substantial compliance system.

    4.   <u>COA's Recommendation to Place the Accreditation or Approval Process on Hold</u>

COA, through its President/CEO, reserves the right to recommend to an adoption service provider at any time that the accreditation/approval process should be placed on hold when COA is informed of deficiencies that warrant such recommendation. Following the adoption service provider's acknowledgment of its intent to correct the identified deficiencies to the satisfaction of COA, the accreditation or approval process will continue.

## C. Possible Decisions for Accredited or Approved Adoption Service Providers Seeking Renewal

    1.   <u>Renewal of Accreditation or Approval</u>

An adoption service provider must meet the requirements of the substantial compliance system to be eligible for renewal of accreditation or approval (see 22 CFR 96.63). In addition, COA will consider an accredited or approved adoption service provider's actual compliance during the accreditation cycle (including substantiated complaints) for the purposes of renewal (see 22 CFR 96.63).

All adoption service providers shall receive written notification (e-mail) from COA upon renewal of their accreditation or approval.

COA reserves the right to not provide a formal notification letter of accreditation or approval, certificate, and a final accreditation report until all fees incurred for accreditation or approval renewal have been paid.

The accreditation or approval cycle is effective for a period of four years commencing either on the date the provider's previous accreditation or approval

<center>Hague Accreditation and Approval Policies and Procedures Manual</center>
<center>-25-</center>

cycle ended, or six (6) months from the date of COA's renewal decision, whichever date is sooner (see 22 CFR 96.60(a)).

2.   <u>Decision or Intent to Refuse Renewal of Accreditation or Approval</u>

   a.   Reason for Refusal to Renew Accreditation or Approval

   COA may decide to refuse the renewal of an adoption service provider's accreditation or approval for any of the following reasons:

   ▪   The adoption service provider fails to make employees available as requested during the renewal review process, respond to requests for information or documentation by COA staff, evaluators, or the Commission, or provide or disclose any other information that is or would be germane to an accreditation or approval decision (see 22 CFR 96.25).

   ▪   The adoption service provider during the renewal review process is found to not be in substantial compliance with applicable Hague standards in accordance with the substantial compliance system (see 22 CFR 96.27).

   ▪   The adoption service provider's self-study materials or other information (*i.e.,* the written renewal application and supporting information) could not be verified through examination of underlying information, as necessary to evaluate the adoption service provider's eligibility for renewal of accreditation or approval (see 22 CFR 96.24).

   ▪   The adoption service provider's performance as identified during the most recent accreditation/approval cycle by COA's monitoring and oversight activities (including substantiated complaints), indicates patterns, trends, or lapses in compliance with the Hague standards or other concerning performance (see 22 CFR 96.66).

   b.   Notification of Decision or Intent to Refuse to Renew Accreditation or Approval

   COA's written and dated notification to an adoption service provider will clearly describe the reason(s) for its decision or intent to refuse renewal of accreditation or approval and include procedures for the adoption service provider to request a review (see 22 CFR 96.76(b)).

   c.   Opportunity for Review

   An adoption service provider wishing to challenge a decision or intent by COA to refuse renewal of accreditation or approval must follow the procedures set

forth in *§XIII Opportunity for Review of COA Decision or Intent to Impose Adverse Action.*  A request for review must be received by COA within ten (10) business days of the adoption service provider's receipt of the notification from COA.

d.   Effective Date

COA, through its President/CEO, will notify an adoption service provider in writing of the effective date of its refusal to renew accreditation or approval. This effective date shall be determined by COA following the adoption service provider's waiver to request a review or upon the review panel's decision to uphold the underlying decision.

e.   Effect of Refusal to Renew Accreditation or Approval

At the time of issuing a decision of refusal to renew accreditation or approval, the Commission may also issue an adverse action decision to cancel the adoption service provider's current accreditation or approval.

An adoption service provider that is refused renewal of accreditation or approval and has had its accreditation approval cancelled is prohibited from holding itself out as accredited or approved, whether orally or in writing (e.g., on stationery, a certificate, or by other display indicating accreditation or approval), from the effective date of the decision to cancel the accreditation or approval.

COA will notify the U.S. Department of State and the state licensing authority of its decision (see 22 CFR 96.77(d)) to not renew the adoption service provider's accreditation of approval. Refusal to renew accreditation or approval is public information.

COA, as part of its oversight responsibilities (see 22 CFR 96.77(c)), will require an adoption service provider that is refused renewal of accreditation or approval to:

- cease providing adoption services in all Convention cases upon expiration of its existing accreditation or approval;
- take all necessary steps to complete its Convention cases before its accreditation or approval expires; and,
- execute plans, under the oversight of COA as per 22CFR 96.33(e) and 96.42(d), for the transfer of its pending Convention cases and adoption records to other accredited agencies, approved persons, or a state archive, as appropriate.

f.   Re-application

An adoption service provider that is refused renewal of accreditation/approval may reapply for accreditation/approval after the refusal. COA has the discretion to require the adoption service provider to wait for a period of up to one (1) year before recommencing the accreditation/approval process (re-application). The one (1) year period of time for recommencing the accreditation/approval process begins from the date of COA's determination to uphold the decision to not renew accreditation or approval in response to the adoption service provider's request for review or the effective date of the decision.

If COA exercises its discretion to require the adoption service provider to wait a period of time up to (1) one year before recommencing the accreditation/approval process, the adoption service provider may submit a written request for "early re-application" to COA's President/CEO. This written request must set forth evidence that there exist changed circumstances demonstrating the likelihood of sufficient compliance with the Hague standards.

The decision of COA's President/CEO with regard to the adoption service provider's request for "early re-application" is final and is not subject to further review.

3.   <u>Deferral of Commission Decision</u>

a.   Deferral of Decision to Allow Clarification

The Commission has the discretion to defer reaching a renewal decision in order to allow the adoption service provider to clarify its compliance with any standards about which the Commission has a question.

The adoption service provider shall have the opportunity to provide the additional information within the time set by the Commission, subject to paragraph c below.

b.   Deferral of Decision to Allow Time to Correct Deficiencies

If an adoption service provider seeking renewal is not in substantial compliance with applicable Hague standards, in accordance with the substantial compliance system, the Commission has the discretion to defer reaching a renewal decision on its accreditation or approval in order to allow the adoption service provider to correct the deficiencies and demonstrate substantial compliance.

Hague Accreditation and Approval Policies and Procedures Manual

-28-

The adoption service provider shall have the opportunity to respond to questions about substantial compliance with the particular Hague standards that are the subject of the deficiencies within the time set by the Commission, subject to paragraph c below.

c.   Time to Clarify and/or Demonstrate Correction of Deficiencies

An adoption service provider must provide clarification and/or correct deficiencies within the specified time frame set by COA.  An adoption service provider's failure to do so within the required time frame, as specified in the written notification of deferral, may result in refusal to renew the adoption service provider's accreditation/approval, unless COA extends the time within which the adoption service provider is allowed to demonstrate clarification and/or correct deficiencies(see 22 CFR 96.24 and 96.25).

d.   Remedial Site Visit and Commission Review

The Commission has the discretion to require a remedial site visit as part of the deferral process.

<Reserved.3>

The Commission reviews an adoption service provider seeking renewal at the conclusion of the deferral timeframe to determine whether the adoption service provider has corrected deficiencies and/or now is in substantial compliance with the Hague standards, in accordance with the substantial compliance system.

## D.  Accreditation or Approval and Renewal Decision-Making Requirements

A quorum of the Commission (three Commissioners) must be present to review and act on an adoption service provider's application for accreditation or approval or renewal of accreditation or approval.  All Commission decisions must be reached by no less than a two-thirds majority.  When the Commission is unable to reach a two-thirds majority, COA's President/CEO appoints a panel of three (3) Hague Commissioners to review and resolve the decision.

## E.  Required Action of COA's Special Committee

1.   <u>Accreditation or Approval, Renewal, and Deferrals</u>

COA does not require the following decisions to be reviewed and approved by its Special Committee:

    a.   a decision to accredit or approve an adoption service provider, and
    b.   the deferral of an accreditation or approval or renewal decision.

COA provides an adoption service provider with written and dated notification for any of the above decisions.

2.   <u>Denial, Refusal to Renew, and Adverse Action</u>

COA presents the following decisions and the reasons for the same to its Special Committee for review and ratification at timely and specially convened meetings.

The following decisions require the approval of COA's Special Committee:

    a.  Denial of accreditation or approval,
    b.  Refusal to renew accreditation or approval,
    c.  Corrective action(s) required,
    d.  Suspension of accreditation or approval, and
    e.  Cancellation of accreditation or approval

The Special Committee may consist of the following individuals:

    a.  Commissioners,
    b.  COA senior managers, and
    c.  COA President/CEO

The Special Committee convenes in person, by conference call, or COA's President/CEO may poll the Special Committee members individually after informing them of the underlying decision and its reasons.

Decisions presented to the Special Committee for final action pursuant to this section require the presence of a quorum of the particular group. Upon obtaining a quorum, the Special Committee reviews the underlying decision and its reasons. Final action requires a two-thirds majority vote of the quorum.

COA, through its President/CEO, notifies the adoption service provider in writing within five (5) business days of Special Committee decision. COA provides the decision by a method which requires a signature on delivery (i.e., certified mail or UPS delivery). This written notification sets forth the reasons for the decision and, as applicable, COA's imposed adverse action or its intent to impose adverse action. It also includes reconsideration and petition for re-application procedures. (see *§XIII. Opportunity for Review of COA Decision or Intent to Impose Adverse Action and §X. Monitoring and Oversight of Accredited or Approved Adoption Services Providers. Paragraph G.)*

**F.  Public Disclosure of Accreditation or Approval Decisions**

COA discloses decisions to the public after formally notifying the adoption service provider, to the extent permitted in *§XVI Confidentiality and Disclosure of Information,* in accordance with 22 CFR 96.91.

**G.  Limitation of Liability**

COA's officers, directors, personnel, evaluators, Commissioners, or other persons involved in the accreditation or approval decision-making processes shall not be liable to an adoption service provider for the adoption service provider's failure to achieve or maintain accreditation or approval, or renewal even when the failure is temporary (e.g., as the result of an adverse action or when a decision is modified as result of an appeal or other review process).

**H.  Content of Deliberations**

The content of the deliberations related to COA accreditation or approval decision-making is confidential and is not considered public information. COA will not disclose the content of the deliberations to the adoption service provider under review.

# X. Monitoring and Oversight (M&O) of Accredited or Approved Adoption Service Providers

*COA is responsible for overseeing the conduct of adoption service providers with accreditation or approval, including their use of supervised providers (see 22 CFR 96.65). COA is also responsible for thoroughly reviewing/investigating complaints (see 22 CFR 96.71) or other information, including information, referred to it through the Hague Complaint Registry or from the U.S. Department of State.*

## A. Monitoring and Oversight Overview

Pursuant to the accreditation regulations, accredited or approved adoption service providers must maintain substantial compliance with applicable Hague standards throughout their accreditation or approval cycle. Accredited or approved adoption service providers are expected to cooperate with any requirements relating to accreditation/approval cycle review processes (monitoring and oversight), site visits, corrective action of deficiencies, and/or complaint investigation. As detailed in COA's accreditation and approval procedures, an accredited or approved adoption service provider must continue during its accreditation/approval cycle to timely self-report incidents, occurrences or changes, submit semi-annual reports on complaints received, provide an annual attestation of substantial compliance, and to provide other designated information as required by COA.

Required accreditation or approval cycle information must be submitted to COA within the time frames specified.   COA has the authority to impose adverse action or change an adoption service provider's accredited or approved status because of failure to submit complete, accurate, and timely information consistent with 22 CFR 96.25(c).

COA notifies an adoption service provider in writing if a required submission or other information COA receives raises a concern regarding substantial compliance with applicable Hague standards.  COA provides the adoption service provider with an opportunity to respond to any concerns and/or correct deficiencies.

An accredited or approved adoption service provider's actual performance during an accreditation cycle including its annual attestation and supporting documentation, semi-annual reports on complaints it has received, and substantiated complaints, will be considered by COA for the purposes of renewal of accreditation or approval decisions (see 22 CFR 96.24 (b)(3)).

## B.  Required Self-Reporting

An accredited or approved adoption service provider must notify COA any time there are incidents, significant occurrences, or changes, relevant to its substantial compliance with applicable Hague standards.  COA requires a prescribed reporting format to be used for the

self-reporting of such incidents, significant occurrences or changes. Accredited or approved adoption service providers are required to self-report in a timely manner in accordance with the time frames detailed below and via COA's web-based Self-Report Form located at: https://coa.formassembly.com/231862.

A self-report must include required attached supporting documentation attached as necessary, in accordance with submission instructions provided by COA. Upon receipt of a self-report, COA provides the adoption service provider with the opportunity to provide further information about the incident, significant occurrence, or change. COA may require that the adoption service provider to provide specific, relevant information and/or undergo a site visit (see 22 CFR 96.25(a)). Self-reporting requirements are found below. COA may request information in addition to the information that is described below.

| OCCURRENCE | EXPLANATION AND REQUIRED INFORMATION | REPORTING TIME |
|---|---|---|
| **Revocation of Domestic License or Authorization** (see 22 CFR 96.30(a)-(d) and 96.35(b)) | Explanation: Domestic licensing or regulatory authority notifies the adoption service provider of **loss, removal or termination** of a required license or authorization to operate. <br><br> Information to Be Provided to COA: <br> • Explanatory information for the action by the licensing or the regulatory authority <br> • A copy of the notification from the licensing or regulatory authority including any review and/or investigative findings from the licensing or regulatory authority <br> • A copy of the corrective action plan as it is developed by the adoption service provider, and, when received, a copy of the licensing or other investigative authority/entity's acceptance of the plan <br> • Any additional documentation that is relevant to the revocation or investigation and/or is requested by COA | Within **48 hours** from the effective date of the revocation on the licensing authority notification document. |
| **Action(s) by Licensing, Regulatory, Other Governmental Authority (*local, state, or federal*) or Other Investigative Entity** (see 22 CFR 96.30(a)-(d) | Explanation: Licensing or regulatory authority, other governmental authority *(local, state, or federal)*, or other investigative entity notifies the adoption service provider of **any** of the following actions: <br><br> • Suspension of license | Within five **(5) business days** from the effective date of the action on the licensing authority notification document. |

| | | |
|---|---|---|
| and 96.35(b)-(d)) | • Change to **a**. provisional, **b**. probationary, or **c**. other compromised status (*e.g.*, temporary, conditional)<br>• Application of financial or other sanctions or penalties<br>• Placement of a hold on referrals and/or new applicants for adoption services<br>• Initiation of investigation<br>• Request for corrective action resulting from investigation due to:<br>    • Financial malfeasance and/or irregularities (financial wrongdoing or misconduct),<br>    • Quality of service delivery,<br>    • Business ethics and/or regulatory compliance issues,<br>• Health and/or /safety,<br>• Substantiated complaints, and/or<br>• Other (provide description).<br><br>Examples of investigative entities include, but are not limited to: IRS, Federal Trade Commission, U.S. Citizenship and Immigration Service, Department of Justice (corporate integrity agreements), Office of Civil Rights, FBI, state attorney general (corporate integrity agreements), other law enforcement authorities, or other investigative entities such as legal right organizations<br><br>Information to Be Provided to COA:<br>    • A copy of the notification from licensing or regulatory authority, other governmental authority, or other investigative entity regarding the commencement of an investigation and/or request for corrective action<br>    • A copy of the adoption service provider's corrective action plan submitted in response<br>    • When received, documentation, documentation that the adoption service provider's corrective action plan has been accepted<br>    • When received, notification from the licensing/regulatory authority that license has been restored to "regular" status or equivalent | |
| **Initiation of Legal Action by Third-Parties:**<br><br>1. **Related to Child Welfare or Adoption Related** | Information to Be Provided to COA:<br>    • A detailed description, including the basis for the action by the third party<br>    • Names of party(ies) initiating | Within five **(5)** business days from the effective date on the notification document regarding |

| | | |
|---|---|---|
| **Services, or**<br><br>2. **Filing of Criminal Charges Related to Child Welfare, or Adoption Related Services or**<br><br>3. **Filing of Child Abuse Charges** (see 22 CFR 96.35(b)(6)) | • Names and titles of workforce members named in the legal action<br>• A copy of the notification received from the third party initiating the action | initiation of the legal action. |
| **Judgments, Violations or Convictions** (see 22 CFR 96.35(b)(7)) | The adoption service provider receives a civil judgment (*e.g.*, malpractice, professional liability), criminal or administrative violation, or conviction related to child welfare or adoption services.<br><br>Information to Be Provided to COA:<br>• A detailed description or copy of the judgment, violation, or conviction<br>• Action initiated or to be initiated by the adoption service provider in response to the judgment, violation, or conviction | Within five **(5)** business days from the effective date on the notification document regarding the judgment, violation or conviction. |
| **Loss of Authorization to Provide Adoption Services in a Foreign Country** (see 22 CFR 96.35(b)) | Information to Be Provided to COA:<br>• A detailed description of the basis for the action by a foreign on country<br>• Copies of any documents received from the foreign government pertaining to the loss of authorization | Within **48 hours** from the effective date on the notification document of loss of authorization. |
| **Completion of the Adoption Service Provider's Annual Financial Review or Audit (see** 22 CFR 96.33(c)) | Information to Be Provided to COA:<br>• A copy of the completed financial review or audit<br>• A copy of any management letter or qualified opinion letter completed by the financial reviewer or auditor | Within **30 calendar days** from the completion of the adoption service provider's annual financial review or audit. |
| **Bankruptcy** (see 22 CFR 96.33(a)-(e) and 96.35(b)) | Information to Be Provided to COA:<br>• Detailed description of reason(s) for the bankruptcy<br>• The adoption service provider's plan that addresses the need for ongoing service delivery to consumers and/or the discontinuing service delivery | Within five **(5)** business days from the decision to file for bankruptcy. |
| **For Lawyers, Change(s) in** | Information to Be Provided to COA: | Within **48 hours** from the |

Hague Accreditation and Approval Policies and Procedures Manual

-35-

| | | |
|---|---|---|
| **Good Standing Status or Initiation of Disciplinary Action by State Bar for Any Jurisdiction Where Admitted** (see 22 CFR 96.35(d)(3)) | • Detailed description of why the lawyer is not in good standing or why disciplinary action was initiated<br>• Copies of any documentation received from the state bar | effective date on the notification document. |
| **For Social Workers, Change(s) in Good Standing Status or Initiation of Disciplinary Action by State Licensing or Professional Social Work Review Body** (see 22 CFR 96.35(d)(4)) | Information to Be Provided to COA:<br>• Detailed description of why the social worker is not in good standing or why disciplinary action was initiated<br>• Copies of any documentation received from the state licensing and/or the professional review body | Within **48 hours** from the effective date on the notification document. |
| **Official Decision by the Adoption Service Provider to Close** (see 22 CFR 96.33(e) and 22 CFR 96.42(d)) | Explanation:<br>The adoption service provider is closing.<br>Information to Be Provided to COA:<br>• A listing of all Hague adoption service(s)<br>• Closing date<br>• Detailed description of reason(s) for the decision<br>• The transition and referral plan for consumers | Within five **(5)** business days of the official decision by the adoption service provider to close. |
| **Discontinuation by the Adoption Service Provider of Hague Convention Services** (see 22 CFR 96.33(e) and 22 CFR 96.42(d-e)) | Explanation:<br>The adoption service provider plans to cease providing a specific adoption service or services (see 22 CFR 96.2 for definition of "adoption service"), to cease providing services in a particular Convention country(ies), and/or to cease providing services in connection with either incoming or outgoing cases altogether. *See also Section XV of the Hague Accreditation Policies and Procedures Manual.*<br><br>Information to Be Provided to COA:<br>• Brief description of the service(s) being discontinued<br>• Discontinuation date(s)<br>• Detailed description of reason(s) for the decision<br>• Transition and referral plan for consumers | Within **48 hours** of the decision by the adoption service provider to discontinue service(s). |
| **Request to Seek** | Explanation: | Within five **(5)** business |

Hague Accreditation and Approval Policies and Procedures Manual

| | | |
|---|---|---|
| **Accreditation or Approval for the Addition of Incoming or Outgoing Cases** (see 22 CFR 96.47-96.52 and 96.53-96.55) | The adoption service provider, since receiving Hague accreditation or approval for either incoming or outgoing cases, has decided to seek accreditation or approval to provide services in connection with the cases for which it is not already accredited or approved.<br><br>Information to Be Provided to COA:<br>Formal request letter to COA with a brief description of reason(s) for the decision attached to the self-report form. | days of the decision by the adoption service provider to add either incoming or outgoing cases. |

| | | |
|---|---|---|
| **Opening or Closing of an Office(s)** (see 22 CFR 96.25) | Explanation:<br>The adoption service provider plans to open an additional office(s) or close an existing office(s) for providing adoption services in Convention cases.<br><br>Information to Be Provided to COA:<br><ul><li>A copy(ies) of any applicable license(s) and/or certificates for the new state or a copy of application for license in the new state</li><li>Tentative date(s) when the additional office(s) will begin providing services to consumers or an existing office will close</li><li>Upon opening, mailing address(es) of the office(s), name and contact information of the individual(s) responsible for managing the office(s)</li><li>A list of adoption services being provided in the additional office or closing office</li></ul> | Within thirty **(30)** business days from the decision by the adoption service provider to open an additional office(s) or close an existing office(s). |

| | | |
|---|---|---|
| **Change in Corporate Structure** (for adoption service providers who are for-profit or non-profit) (see 22 CFR 96.31) | Explanation:<br>The adoption service provider has decided to change from a non-profit to for-profit or from for-profit to non-profit *or* it has lost 501(c)(3) status.<br><br>Information to Be Provided to COA:<br><ul><li>Detailed description of any change</li><li>Reason(s) for the change or loss of 501(c)(3) status</li><li>Copy of the board resolution or a copy of the notification of loss of non-profit status received from the IRS</li><li>When received by the adoption service provider copies of the state and IRS response and/or approval for a filing for a change in corporate structure</li></ul> | Within five **(5)** business days of the decision by the adoption service provider to change corporate structure or receipt of notification of loss of 501(c)(3) status. |

Hague Accreditation and Approval Policies and Procedures Manual

| | | |
|---|---|---|
| **Significant Change in Compensation** (*e.g.* change greater than 10%) (see 22 CFR 96.34(b)) | Explanation:<br>The adoption service provider has decided to change compensation for services rendered by its directors, officers, employees and/or supervised providers.<br><br>Information to Be Provided to COA:<br>• Detailed description of any change(s) in compensation<br>• Reason(s) for the change(s)<br>• Amount of current compensation and the new compensation amount | Within **(30)** business days of the change(s) in compensation. |
| **Change in the Adoption Service Provider's Schedule of Adoption Fees** (see 22 CFR 96.40) | Explanation:<br>The adoption service provider has decided to change or increase fees charged to prospective adopting individual(s)/families. **NOTE**: Upon approval by the accrediting entity, the adoption service provider must update their fee schedule in the US Department of State's ATS.<br><br>Information to Be Provided to COA:<br>• A copy of the changed/revised fee schedule that is provided to a prospective adoptive parent(s)<br>• A description of the reason(s) for the change(s)/increase(s)<br>• A statement verifying that the adoption service provider has updated their changed fees in the ATS | Within **(30)** business days of the decision by the adoption service provider to change the schedule of adoption fees. |
| **Notification of Change in Supervised Provider(s)** (see 22 CFR 96.45 (a-b)) | Explanation:<br>The adoption service provider, since receiving Hague accreditation or approval, has decided to discontinue the use of a supervised provider or to begin using a new supervised provider. This requirement is not applicable if the adoption service provider discontinues the use of a supervised provider with whom they had established a case-specific supervised provider agreement and the reason for discontinuing the relationship is due to completion of the case.<br><br>Information to Be Provided to COA:<br>• Provide an updated Collaborative Relationships Profile indicating all current supervised providers.<br>• Provide a copy of the correspondence to the supervised provider documenting the discontinued or the new relationship. | Within **(30)** business days of the decision by the adoption service provider to discontinue using a supervised provider or to add a supervised provider. |

Hague Accreditation and Approval Policies and Procedures Manual

-38-

| Notification of Initiation of Primary Provider Activities (see 22 CFR 96.44(a-b), 96.45 and 96.46) | Explanation: During the accreditation/approval review process, the adoption service provider certified in its Executive Verification Form that the agency/person would not act as a primary provider in any case for the duration of the accreditation/approval cycle, unless accredited or approved to do so in advance.  The adoption service provider has decided to act as the primary provider in Hague adoption cases. | Within (30) business days of the decision by the adoption service provider to act as a primary provider. |
| | Information to Be Provided to COA: <br> • Provide an updated Executive Verification Form <br> • Provide a narrative describing the adoption service provider's plans to act as a primary provider.  Specify the type and volume of cases the provider plans to be the primary provider for; and the additional resources that will be obtained and other changes that will be implemented to fulfill the responsibilities of a primary provider. | |

| Official Decision by the Adoption Service Provider to Merge with or Acquire another Party/Entity (see 22 CFR 96.32(e)) | Explanation: The adoption service provider has decided to merge with, or be acquired by, another provider/ organization/entity, regardless of whether the other provider/organization/entity is Hague accredited or approved.  *See Section XV of the Hague Accreditation Policies and Procedures Manual for required documentation to be provided to COA.* | Within five (5) business days from the date of the adoption service provider's official decision to merge with or be acquired by another party/entity. |
| Change in the Adoption Service Provider's: CEO, Executive Director, Contact Person, or Change in Address (see 22 CFR 96.32(a)) | Explanation: The adoption service provider has an interim, acting, or new CEO/executive officer/leader, a new individual is designated as the adoption service provider's accreditation/approval contact person, **or** the adoption service provider has a new address. | Within 48 hours prior to the effective date of the change or earlier. |
| | Information to Be Provided to COA: <br> • Name of interim, acting, or new CEO/Executive <br> • Name of new contact person for the adoption service provider <br> • New address <br> • Effective date of the change | |

| Disruption or Dissolution of | Information to Be Provided to COA: | Within (30) business |

Hague Accreditation and Approval Policies and Procedures Manual

-39-

| a Hague Convention Adoption (see 22 CFR 96.50(c)-(f)) | • Detailed description of the occurrence<br>• Actions taken/to be taken in response to the occurrence | days of the disruption/dissolution occurring. |
|---|---|---|
| **Allegations of Child Buying or Fraud by an Employee or Associate of the Adoption Service Provider or** Arrest of an Employee or Associate of the Adoption Service Provider Related to Adoption Services (see 22 CFR 96.36(a)) | Explanation:<br>The adoption service provider learns about someone with whom they are associated, i.e., an employee, supervised provider or an exempted provider being charged with, under investigation for, arrested for or having been convicted of child buying or fraud.<br><br>Information to Be Provided to COA:<br>• A detailed description<br>• Copy of any notification received about the child buying or fraud | Within **48 hours** of learning of child buying or fraud allegations/ arrests/convictions. |
| **Death of a Child** (see 22 CFR 96.50(a)-(f)) | Explanation:<br>A minor child dies while being accompanied from the country of origin; **or** during the adoption service provider's post-placement service delivery; **or** the death is learned of by the adoption service provider after the finalization of the adoption.<br><br>The death is attributed to an undisclosed medical condition(s); or, it resulted from an occurrence such as abuse, neglect, endangerment, homicide, etc.). *Death resulting from natural causes or from an accident should NOT be reported.*<br><br>Information to Be Provided to COA:<br>• A detailed description of the occurrence<br>• Any action taken/to be taken | Within **48 hours** of learning of a death of an adoptee child. |
| **Serious Injury of a Child** (see 22 CFR 96.50(a)-(f)) | Explanation:<br>• A minor child sustains a serious injury while being accompanied from the country of origin; **or** during the adoption service provider's post-placement service delivery; **or** the injury is learned of by the adoption service provider after the finalization of the adoption.<br>• The injury resulted from an occurrence such as abuse, neglect, endangerment, etc.<br>• The injury resulted in debilitating or permanent loss of function (*e.g.*, paralysis, brain trauma, loss | Within **48 hours** of learning of a serious injury to an adoptee child. |

| | of limb, etc.) or serious physical or psychological injury (*e.g.,* abuse, assault, rape, etc.). Information to Be Provided to COA: <br>• A detailed description of the occurrence <br>• Any action taken or to be taken | |
|---|---|---|

### C. Semi-Annual Report on Complaints Received

In accordance with 22 CFR 96.41(f), accredited or approved adoption service providers are required to provide to COA and the U.S. Department of State on a semi-annual basis a report of all complaints received during the preceding six (**6**) months.   In accordance with 22 CFR 96.41(f), the adoption service provider submits this report of complaints semi-annually during the provider's accreditation period:  1) within **10** business days of the date six months after the provider's accreditation or approval and on each anniversary of this date[1], and 2) within **10** business days of each anniversary of the provider's accreditation or approval.

Summary elements must include:

- Number of complaints received during the preceding six (6) months (*indicate if no complaints were received*)
- Comprehensive summary of *each* complaint received that includes:
  a.    Description of the complaint
  b.    Description of who made the complaint
  c.    Findings from review of the complaint
  d.    Action(s) taken to resolve the complaint
- Assessment of any discernable patterns identified in the complaints for the six-month period
- Description of systematic changes taken or planned for in response to discernable patterns

COA will provide the adoption service provider via e-mail a customized web-hosted link for entering the **Semi-Annual Report on Complaints Received** information electronically. The adoption service provider will have ten (10) business days from the date that they receive COA's e-mail request to submit the information described above.

### D. Annual Attestation of Substantial Compliance

---

[1] The *preceding six months* begins from the adoption service provider's date of accreditation/approval. The date for an adoption service provider that achieved accreditation/approval prior to April 1, 2008 is April 1, 2008. The anniversary date for an adoption service provider that achieved accreditation/approval prior to April 1, 2008 is April 1st.  For an adoption service provider who achieved accreditation/approval after April1, 2008, the date of accreditation/approval is the date on the notification letter received from COA and the *anniversary date* is also the date on that letter.

In accordance with 22 CFR 96.66(c), the adoption service provider must annually attest to that it remains in substantial compliance with applicable Hague standards. The annual attestation is to be submitted to COA by the adoption service provider within ten (**10**) business days of **each anniversary of the provider's accreditation or approval**[2] and in accordance with 22 CFR 96.66(c).

The **Annual Attestation of Substantial Compliance for Hague Accredited and Approved Adoption Service Providers** is available on COA's website at: https://coa.my.salesforce.com/sfc/p/300000000aAUeRWKpy7boIW29WD7.Kcu3Huuczw

### E.  Site Visits During the Accreditation and Approval Cycle

COA may conduct site visits of an accredited or approved adoption service provider, either announced or unannounced (see 22 CFR 96.66(b)), during the accreditation or approval cycle for purposes of random verification of its continued substantial compliance, including under the following circumstances:

- at any time when COA is aware of reliable information that raises a concern regarding the adoption service provider's substantial compliance with applicable Hague standards;
- at any time in the course of investigating and acting upon complaints against the accredited or approved adoption service provider;
- at any time from the effective date of an imposed corrective action; or,
- at any time upon random selection of accredited or approved adoption service providers to verify ongoing substantial compliance with applicable Hague standards.

See *§XII Site Visits During the Accreditation or Approval Cycle* regarding the remedial or compliance assurance site visit process.

### F.  Required Cooperation by Accredited or Approved Adoption Service Providers

COA expects an accredited or approved adoption service provider to cooperate fully with all accreditation or approval cycle review processes, including investigation of complaints, to enable COA to determine the adoption service provider's level of compliance with applicable Hague standards.  Cooperation includes, but is not limited to, timely submission of required documents, or requested information, and the facilitation of any site visits (see 22 CFR 96.25(a) and 22 CFR 96.66(b)).

---

[2] The date for an adoption service provider that achieved accreditation/approval <u>prior</u> to April 1, 2008 is April 1, 2008. The anniversary date for an adoption service provider that achieved accreditation/approval prior to April 1, 2008 is April 1st.  For an adoption service provider that achieved accreditation/approval <u>after</u> April 1, 2008, its date of accreditation/approval and the subsequent anniversary date is the date on the notification letter received from COA.

**G. Right to Review and Act on an Adoption Service Provider's Accredited or Approved Status**

1. <u>Authority and Discretion to Review and Act Immediately</u>

COA may review an adoption service provider's accreditation or approval status at any time and may take an adverse action against an adoption service provider as warranted (see 22 CFR 96.7(a)(5)). In the course of its oversight of an accredited or approved adoption service provider, COA considers any information about the adoption service provider that becomes available regarding substantial compliance with applicable Hague standards.

*COA's President/CEO may take immediate action to require corrective action, or suspend, or cancel an adoption service provider's accreditation or approval where he or she has sufficient evidence of conditions that warrant such action.*

2. <u>Failure to Substantially Comply with Applicable Standards</u>

COA determines the need to review and/or act upon any possible or alleged failure to maintain substantial compliance with applicable Hague standards on the part of an accredited or approved adoption service provider. This decision is reached upon taking into consideration the information source and the seriousness of the information, allegations, and/or substantiated complaint(s).

COA may refer a concern or issue regarding substantial compliance with applicable Hague standards to a regularly scheduled Commission or Compliance Review Committee meeting to determine if an adverse action should be taken against an adoption service provider.  However, consistent with 22 CFR 96.76, COA's President/CEO may exercise his or her discretion to notify an adoption service provider of COA's decision or intent to take adverse action prior to any Commission or Compliance Review Committee review, when, in the President/CEO's judgment, immediate action is necessary.

A decision to take adverse action, whether by a Commission, Special Committee, or by COA's President/CEO, requires ratification as set forth in *§IX Decision-Making.*

3. <u>Adverse Action and Termination of Adverse Action</u>

In accordance with 22 CFR 96.74-96.79, COA may impose adverse action on a accredited or approved adoption service provider. In such an instance, COA provides the adoption service provider with an opportunity to respond to an adverse action that is under consideration or has been imposed (see *§XIII Opportunity for Review of a COA Decision or Intent to Impose Adverse Action).*

COA imposes adverse actions when it determines that an accredited or approved adoption services provider has failed to:

- Demonstrate continued substantial compliance with applicable Hague standards
- Correct deficiencies about which it has been previously informed, including the remediation and resolution of complaints
- Provide requested documents or information, or make employees available as requested (see 22 CFR 96.25(c))

In accordance with 22 CFR 96.75 COA has the discretion to determine which adverse action to take.  This decision is based on the extent and specifics of the adoption service provider's lack of substantial compliance, including the seriousness and level of non-compliance and type of violation.  Further, COA has the discretion to determine which of the following adverse actions to take:

- Suspending accreditation or approval
- Canceling accreditation or approval
- Refusing to renew accreditation or approval
- Requiring specific corrective action
- Imposing other sanctions including, but not limited to, requiring an accredited or approved adoption service provider to cease providing adoption services in a specific Convention country

Specific adverse actions are not required for any particular behavior, activity, or event. Instead, consistent with the *Hague Accreditation Policies and Procedures Manual,* COA has the discretion and flexibility to examine the factual circumstances underlying the conduct and to determine whether adverse action is appropriate and what action to take.

COA decides which adverse action to take based on the seriousness and type of violation and on the extent to which the adoption service provider has corrected or failed to correct deficiencies of which it has been previously informed.

Additionally, if a specific violation does not in and of itself warrant an adverse action, but is part of a *pattern of behavior* that is inconsistent with protecting the best interests of children, adverse action may be appropriate.  Persistent or flagrant violations may warrant more severe adverse actions.

It is impossible to list every type of non-conforming or unethical behavior that would warrant an adverse action, or all of the standards that may be potentially implicated, which would depend on the specific facts. The chart below provides examples of types of behaviors, activities or events and the corresponding adverse action that *may* be appropriate. The following chart is for illustrative purposes only and does not create any obligation on the part of COA to take a specific action nor does it create an entitlement on the part of a complainant or injured/aggrieved party.  Repeated violations and/or a behavior, activity or an event that constitutes multiple violations may warrant more serious adverse action than that cited in the example.

Hague Accreditation and Approval Policies and Procedures Manual

-44-

| EXAMPLES OF ADVERSE ACTION | | | |
|---|---|---|---|
| Concern | Related Standards[1] | Possible Actions upon Review of a Complaint or Report of an Occurrence | Example of Appropriate Adverse Action for a Substantiated Violation[2] |
| **Level 1** | | | |
| The adoption service provider (ASP) actions or failure to act caused imminent danger to child or prospective/adoptive parent or put child or prospective/adoptive parent at risk of imminent danger | 96.35(a)[m] 96.36(a)[m] 96.50(a)[c] | As appropriate: <br>• consult with DOS regarding referral to law enforcement and/or child protective services <br>• report to licensing; <br>• report to DOS and Foreign Central Authority (FCA); <br>• suspension [3] | Cancellation |
| The ASP and/or its foreign agent(s) has engaged in bribery, fraud, and/or have provided compensation in exchange for adoptions | 96.34(a-c)[m] 96.35(a)[m] 96.36(a, b)[m] | As appropriate: <br>• consult with DOS regarding referral to law enforcement; <br>• report to licensing; <br>• report to DOS and FCA; <br>• suspension [3] | Cancellation |
| The ASP and/or its foreign agents falsified or deliberately withheld medical/social information on a child | 96.35(a)[m] 96.49(a, d, e, f, g, j)[c] 96.49(b, c, h, I, k)[f] | As appropriate: <br>• consult with DOS regarding referral to law enforcement; <br>• report to licensing; <br>• report to DOS and FCA; <br>• suspension [3] | Cancellation |
| The ASP and/or its foreign agents failed to adequately investigate the medical and social information on a child knowing that there is a significant risk of fraud and/or child buying | 96.35(a)[m] 96.36(a)[m] 96.36(b)[c] 96.49(j)[c] | As appropriate: <br>• consult with DOS regarding referral to law enforcement; <br>• report to licensing; <br>• report to DOS and FCA; <br>• suspension [3] | Cancellation |
| Failure to include required/ pertinent information in a home study that is repeated or done deliberately to approve an applicant who does not meet eligibility criteria | 96.35(a)[m] 96.47(a-c)[c] (see also P.L. 106-279 Section 204 (e)) | As appropriate: <br>• consult with DOS regarding referral to law enforcement; <br>• report to licensing; <br>• report to DOS and FCA; <br>• suspension [3] | Cancellation |
| Failure to correct the deficiencies that led to suspension | 96.78(b) | • Cancellation | Not applicable |
| **Level 2** | | | |
| The ASP is providing services without proper authorization (*e.g.*, in a state or country) and/ or has failed to provide sufficient transparency related to partnership arrangements. | 96.35(a)[m] 96.30[m] 96.46[f] | • report to licensing; <br>• report to DOS and FCA, as appropriate | Suspension with closure of the state or country program until correction is completed |

| EXAMPLES OF ADVERSE ACTION | | | |
|---|---|---|---|
| **Concern** | **Related Standards[1]** | **Possible Actions upon Review of a Complaint or Report of an Occurrence** | **Example of Appropriate Adverse Action for a Substantiated Violation[2]** |
| The ASP provides unreasonably high compensation | 96.34(a-c)[m] (d, f)[f] 96.35(a)[m] | • report to licensing; • report to DOS and FCA, as appropriate | Suspension with no acceptance of new clients until fee schedules and compensation conforms to the requirements of the standards |
| The ASP failed to obtain missing medical/social information or failed to request additional information | 96.49(a, d, e, f, g, j)[c] 96.49(b, c, h, I, k)[f] | • report to licensing; • report to DOS and FCA, as appropriate | Suspension with no acceptance of new clients until retraining of employees is completed |
| The ASP routinely charges additional fees that were not disclosed; fees are unreasonably high and are unrelated to the services provided; or the ASP fails to provide refunds in accordance with its refund policy | 96.35(a)[m] 96.39(a)[c] 96.40(a, b, c, d, g)[c] (h)[f] | • report to licensing; • report to DOS and FCA, as appropriate; • report to law enforcement, as appropriate | Suspension with no acceptance of new clients until fee schedules/ policies are revised and refunds of funds collected in violation of the standards are issued |
| Failure to include required/ pertinent information in a homestudy | 96.35(a)[m] 96.47(a-c)[c] (see also P.L. 106-279 Section 204 (e)) | • report to licensing; • report to DOS and FCA, as appropriate | Suspension with no acceptance of new clients until retraining of employees is completed |
| Failure to submit an acceptable corrective action plan or failure to complete corrective action that has been required by COA | 96.76(a) | | Suspension with no acceptance of new clients until corrective action is completed |
| **Level 3** | | | |
| Inadequate training or preparation for an individual child | 96.48(a)[c] (b-h)[f] | • report to licensing | Corrective Action required |
| Inadequate number of qualified employees to perform clinical services and/or the functions of a primary provider. | 96.44(b) 96.37(a-g)[c] | • report to licensing | Corrective Action required |
| Lack of familiarity with adoption laws, process, or timeframes in foreign countries | 96.44(a)[c] | • report to licensing; • report to DOS and FCA, as appropriate | Corrective Action required |
| Failure to recognize client concerns as a complaint and/or failure to respond in a timely manner | 96.41(c)[c] | • report to licensing | Corrective Action required |

Hague Accreditation and Approval Policies and Procedures Manual

-46-

[1] The weight assigned to each standard by the accrediting entity's substantial compliance system – mandatory, critical, or foundational – is indicated by "m," "c," or "f, "respectively, in a superscript to each standard reference. Related standards may vary depending on the specific details of the concern.
[2] The chart provides examples of types of adverse action that *may* be appropriate.  COA's action in any particular case will be dependent upon the specific facts.
[3] *COA's President/CEO may take immediate action to require corrective action, or suspend, or cancel an adoption service provider's accreditation or approval where he or she has sufficient evidence of conditions to warrant such action.*

The adoption service provider will be notified in writing of COA's effective date for the adverse action. COA will promptly notify the U.S. Department of State and the relevant state licensing authority(ies) of an imposed adverse action that changes the accreditation status of an adoption service provider (see CFR 22 96.77(d)).

COA, pursuant to 22 CFR 96.78(b), may only terminate an adverse action it has taken if the adoption service provider demonstrates to the satisfaction of COA that the deficiencies that led to the adverse action have been corrected.

COA, pursuant to 22 CFR 96.78(f), may withdraw an adverse action it has taken if COA determines that an imposed adverse action was based upon a mistake of fact or was otherwise in error.

The adoption service provider will be notified in writing of the effective date for termination or withdrawal of an adverse action. COA will promptly notify the U.S. Department of State and state licensing authority(ies) of a termination or withdrawal of an imposed adverse action that changed the accreditation or approval status of an adoption service provider.

4. Corrective Action

   a. Reason for Corrective Action
   Reasons for imposing corrective action on an accredited or approved adoption service provider may include, but are not limited to the fact that the adoption service provider's performance as identified during the accreditation or approval cycle from COA's monitoring and oversight activities (including substantiated complaints), demonstrates lapses in substantial compliance with certain Hague standards.

   b. Notification of Corrective Action

   COA's written and dated notification to an accredited or approved adoption service provider will clearly describe the reason(s) for deciding or intending to impose corrective action, including any deficiencies in substantial compliance with certain Hague standards.

   c. Effective Date

Hague Accreditation and Approval Policies and Procedures Manual

-47-

COA, through its President/CEO, will notify an adoption service provider of the effective date of the corrective action and include procedures for the adoption service provider to dispute the deficiencies.

d.   Correction of Deficiencies

COA sets forth in writing the requirements for maintaining accreditation or approval and identifies the specific action(s) that the adoption service provider must take to correct any deficiencies and the required date(s) by which the action(s) must be completed.

An accredited or approved adoption service provider required to take corrective action during the accreditation or approval cycle must demonstrate correction of all deficiencies within the time frame set by and to the satisfaction of COA (see 22 CFR 96.75 (d)).

e.   Monitoring of Corrective Action

COA has the discretion via its Compliance Review Committee, the Commission or its Special Committee to review the adoption service provider's accreditation or approval status at any point during the corrective action period.  COA may elect to approve an extension of an adoption service provider's due date(s) for completion of corrective action.

COA's Compliance Review Committee, on behalf of COA's President/ CEO or the Commission, actively monitors the adoption service provider's progress with corrective action. This committee will determine whether all identified deficiencies have been corrected to the satisfaction of COA and the accredited or approved adoption service provider is in substantial compliance with applicable Hague standards.

The Compliance Review Committee is composed of COA senior managers or other members of the workforce experienced in compliance management and knowledgeable about the Hague standards and intercountry adoption.

<Reserved.4>

f.   Remedial or Compliance Assurance Site Visit

COA has the discretion to require a remedial or compliance assurance site visit at any point during or following corrective action to determine if the adoption service provider has corrected all deficiencies (see 22 CFR 96.66(b)).

g.   Effect of Corrective Action on Accreditation or Approval Status

COA will notify the U.S. Department of State that corrective action has been required (see 22 CFR 96.93(a)).

An adoption service provider that has been required to take corrective action is considered to be accredited or approved during the corrective action period.

h.   Completion of Corrective Action

COA's Compliance Review Committee, upon satisfaction that an adoption accredited or approved service provider has corrected all deficiencies that lead to the corrective action, will notify COA's President/CEO or Commission that the corrective action has been completed. COA, through its President/CEO, will notify an adoption service provider in writing of the effective date for the completion of corrective action.

COA will notify the U.S. Department of State that corrective action has been completed.

5.   <u>Suspension</u>

a.   Reason for Suspension of Accreditation or Approval

The reasons for the suspension of the accreditation or approval of an adoption service provider (and the denial of any pending application for renewal of accreditation or approval) may include, but are not limited to:

▪ The adoption service provider's failure to take required corrective action
▪ The adoption service provider fails to correct identified problems with its operations.
▪ The adoption service provider's failure to demonstrate substantial compliance with applicable Hague standards

See also *§IX Decision-Making* for additional information on suspension.

b.   Notification of Suspension

COA, through its President/CEO, will notify in writing an accredited or approved adoption service provider of its decision or intent to suspend its accreditation or approval.

COA, as part of the dated notification to the adoption service provider, sets forth in writing the deficiencies on the part of the adoption service provider.

Hague Accreditation and Approval Policies and Procedures Manual

-49-

c.   Opportunity to Demonstrate Suspension as Unwarranted

An accredited or approved adoption service provider wishing to challenge COA regarding its decision or intent to suspend its accreditation or approval must follow procedures, including adherence to all timeframes, as set forth in *§XIII Opportunity for Review of a COA Decision or Intent to Impose Adverse Action.* A request for review must be received by COA within ten (10) business days of the adoption service provider's receipt of written notification from COA regarding suspension.

d.   Suspension Effective Date

Following the decision by COA to uphold its decision or intent to suspend, the adoption service provider will be notified in writing of the effective date for the suspension. This notification will include procedures for petitioning COA for termination of suspension.

e.   Effect of Suspension

An adoption service provider's whose accreditation or approval is suspended (see CFR 22 96.75 (a)) is not considered accredited or approved and is prohibited from holding itself out as such, whether orally or in writing (*e.g.*, on stationery, on its website, or by any other display indicating accreditation or approval).

COA will notify the U.S. Department of State and the state licensing authority(ies) that the adoption service provider's accreditation or approval has been suspended (see 22 CFR 96.93). Suspension is public information (see *§XVI Confidentiality and Disclosure of Information*).

An adoption service provider whose accreditation or accreditation has been suspended must:

- immediately cease providing adoption services in all Convention cases; and,
- consult with COA whether to transfer all or designated Convention cases and adoption records.

COA takes the reason(s) underlying an adoption service provider's suspension during the most current accreditation or approval review cycle into account when determining whether to reaccredit/reapprove the adoption service provider (see 22 CFR 96.63(d)).

f.   Petition for Termination of Suspension

Hague Accreditation and Approval Policies and Procedures Manual

-50-

An adoption service provider whose accreditation or approval has been suspended may petition COA to terminate the suspension by submitting a written request to COA's President/CEO, along with evidence that it has corrected the deficiencies that led to the suspension.

COA will review the adoption service provider's request and supporting evidence within fifteen (15) business days of receiving of the petition. COA may request additional information to determine if the deficiencies have been corrected.

COA, through its President/CEO, will notify in writing the adoption service provider of its decision regarding the adoption service provider's petition for the termination of suspension.

g.      Termination of Suspension

COA's Compliance Review Committee, Commission, or Special Committee upon satisfaction that an adoption service provider has corrected all deficiencies that lead to the suspension of its accreditation or approval, will recommend to COA's President/CEO or Commission that the suspension be terminated. If the President/CEO or the Commission agrees, COA, through its President/CEO, will notify an adoption service provider in writing of the effective date for the termination of suspension.

COA will notify the U.S. Department of State and the state licensing authority(ies) that suspension has been terminated and accreditation or approval reinstated.

6. Cancellation

a.      Reason for Cancellation of Accreditation or Approval

Reasons for the cancellation by COA of an accredited or approved adoption service provider's accreditation or approval (and the denial of any pending application for renewal of accreditation or approval) may include, but are not limited to:

▪ The adoption service provider's failure to take required corrective action
▪ The adoption service provider fails to correct identified problems with its operations.
▪ The adoption service provider's failure to demonstrate substantial compliance with applicable Hague standards

See also *§IX Decision-Making* for additional information on cancellation.

Hague Accreditation and Approval Policies and Procedures Manual

-51-

59

b.      Notification of Cancellation

COA, through its President/CEO, will notify in writing the adoption service provider of its decision or intent to cancel accreditation or approval.

COA, as part of the dated notification to the adoption service provider, sets forth in writing the deficiencies on the part of the adoption service provider.

c.      Opportunity to Demonstrate Cancellation as Unwarranted

An adoption service provider wishing to challenge COA regarding its decision or intent to cancel accreditation or approval must follow procedures, including adherence to all timeframes, as set forth in *§XIII Opportunity for Review of a COA Decision or Intent to Impose Adverse Action*.  A request for review must be received by COA within ten (10) business days of the adoption service provider's receipt of written notification from COA regarding cancellation.

d.      Cancellation Effective Date

Following the decision by COA to uphold its decision or intent to cancel, the adoption service provider will be notified in writing of the effective date for the cancellation. This notification will include procedures for petitioning COA for termination of the cancellation and procedures for requesting permission to re-apply accreditation or approval.

e.      Effect of Cancellation

An adoption service provider whose accreditation or approval is canceled is not accredited or approved and is prohibited from holding itself out as such, whether orally or in writing (e.g., on stationery, on a website, or by other display indicating accreditation or approval).

COA will notify the U.S. Department of State and the state licensing authority(ies) that the adoption service provider's accreditation or approval has been canceled (see 22 CFR 96.93). Cancellation is public information (see *§XVI Confidentiality and Disclosure of Information*).

An adoption service provider whose accreditation or accreditation has been cancelled must:

▪  immediately cease providing adoption services in all Convention cases; and,
▪  execute plans for the transfer of Convention cases, under the oversight of COA, in accordance with 22CFR 96.33 (e) and 96.42 (d).

COA takes the reason(s) underlying an adoption service provider's cancellation during the most current accreditation or approval review cycle into account when determining whether to reaccredit or reapprove the adoption service provider (see 22 CFR 96.78(d)).

f.      Petition for Termination of Cancellation

An adoption service provider whose accreditation or approval is canceled during an accreditation or approval cycle may petition COA to terminate the cancellation by submitting a written request to COA's President/CEO along with evidence that it has corrected the deficiencies that led to the cancellation.

COA will review the adoption service provider's request and supporting evidence within fifteen (15) business days of receiving the petition. COA may request additional information to determine if the deficiencies have been corrected.

COA through its President/CEO will notify in writing the adoption service provider of its decision regarding the adoption service provider's petition for termination of cancellation.

g.      Termination of Cancellation

COA upon satisfaction that an adoption service provider has corrected all deficiencies that lead to cancellation, will recommend to COA's President/CEO or Commission that the cancellation be terminated. If the President/CEO or the Commission agrees, COA, through its President/CEO, will notify an adoption service provider in writing of the effective date for the termination of cancellation.

COA will notify the U.S. Department of State and the state licensing authority(ies) that cancellation has been terminated and accreditation or approval reinstated.

**H. Review of Complaints against Accredited or Approved Adoption Service Providers**

1. <u>Introduction</u>

In accordance with 22 CFR 96.71(e), COA must not take any action to discourage an individual from, or retaliate against any individual for making a compliant, expressing a grievance, questioning the conduct of, or expressing an opinion about the performance of an accredited, or approved adoption service provider, or about COA as an accrediting entity.

The purpose of COA's investigative activities is to determine whether complaints, if substantiated, would affect the accreditation or approval status of an adoption service provider. COA will determine whether the information provided with the complaint or uncovered during the course of COA's complaint investigation demonstrates a lack of substantial compliance with applicable Hague standards.

COA provides adoption service providers with an opportunity to respond to any complaints as set forth in these procedures. In addition, COA posts written information about these procedures on its website at: www.COAnet.org.

2.   Complaint Investigation/Review

COA has established written procedures, including deadlines, for recording, investigating and acting upon complaints about an accredited or approved adoption service provider (including its use of supervised providers).

Complaints received by COA directly from a third-party as well as through the U.S. Department of State's Complaint Registry are subject to investigation and/or review in accordance with these procedures. COA will enter these complaints received directly from third-parties into the U.S. Department of State's Complaint Registry.

Upon receiving a complaint, COA initiates timely investigative activities. Complaints filed with the Complaint Registry by a federal, state, or local government official or a foreign Central Authority in accordance with  to 22 CFR 96.69(d) will receive priority (in accordance with 22 CFR 96.71(b)(2)). If a complaint relates to the imminent safety of a child, investigation by COA will begin immediately.

If the complaint raises an issue of compliance with the Convention, the IAA, or the regulations implementing the IAA, COA will verify with the primary provider and the accredited or approved adoption service provider, if different, that the complainant has already attempted to resolve the complaint in accordance with 22 CFR 96.69(b). If not, COA may refer the complaint to the primary provider and the accredited or approved adoption service provider, if different, for attempted resolution through its internal complaint procedures in accordance with 22 CFR 96.71(b)(1). If it is verified that the complainant has already attempted to resolve the complaint, COA may conduct its investigative activities.

Consistent with 22 CFR 96.71(b)(2), COA's investigative activities may include, but is not limited to:

-   Requesting that written information or response, including specific documentation, be provided within ten (10) business days or by an earlier date, following the receipt of COA's verbal or written request to the adoption service provider (see 22

CFR 96.25 and 96.26),
- Requesting and conducting interviews with the adoption service provider's employees (see 22 CFR 96.25 and 96.26),
- Actively monitoring progress by the adoption service provider with resolving the complaint, including implementation of specific actions required by COA, and/or
- Conducting a site visit to evaluate compliance with Hague standards implicated by the complaint and/or to observe first-hand the adoption service provider's practices.

Possible complaint investigation outcomes may include, but are not limited to, the following:

– Unsubstantiated because of insufficient documentation or other information
– Unsubstantiated because the facts uncovered do not support the complaint
– Substantiated in whole or in part, but no adverse action is imposed
– Substantiated in whole or in part, and corrective action is required (see Part (4)(a-h) of this section regarding corrective action
– Substantiated in whole or in part, and accreditation or approval is suspended (see Part (5)(a)-(g) of this section regarding suspension
- Substantiated in whole or in part, and accreditation or approval is cancelled (see Part (6)(a)-(g) of this section regarding cancellation)

Upon conclusion of the complaint review/investigation, COA will provide written notification regarding the outcome of its investigation to the complainant or to any other entity that referred the information pursuant to 22 CFR 96.71(c) as well as to the primary provider and/or the accredited or approved adoption service provider. This notification will include:

- any actions that COA requests that the primary provider and/or the adoption service provider to take in order to remediate/resolve the complaint, and/or
- any adverse action imposed by COA

If the complaint does not implicate the Convention, the IAA or other regulations implementing the IAA, COA, will refer the complainant, to other resources, as appropriate, (*e.g.*, Better Business Bureau, state licensing authority)

COA will enter information about each complaint investigation, complaint outcome, and any actions taken on the complaint into the Complaint Registry as provided in its agreement with the U.S. Department of State.

COA will maintain a record of each complaint received for investigation including any documentation produced from the investigation, and the records of any action taken as the result of its investigation in the adoption service provider's record.

All substantiated complaints on accredited or approved adoption service providers will be provided to the evaluator team at the time of the adoption service provider's next accreditation or approval review.

3.   <u>Dissemination of Information to the Public about Substantiated Complaints</u>

Upon inquiry from any member of the public, COA will verify whether there has been a substantiated complaint(s) against an accredited or approved adoption service provider, including the status and the nature of the complaint (see 22 CFR 96.92(a)). See *§ XVI Confidentiality and Disclosure of Information.*

# XI:  Request for Renewal of Accreditation or Approval

*An adoption service provider's renewal of accreditation or approval provides an in-depth review of an adoption service provider's performance and is the process by which COA determines an adoption service provider's continuing, substantial compliance with applicable Hague standard (see 22 CFR 96.63(d), 96.24, 96.25, 96.26, and 96.27).*

*An adoption service provider must undergo a review for the renewal of its accreditation or approval prior to the expiration date of its certificate of accreditation or approval.*

COA advises in writing each accredited or approved adoption service provider that it monitor's of the date by which it should seek renewal of its accreditation or approval so that the renewal process can reasonably be completed prior to the expiration of its current accreditation or approval (see 22 CFR 96.63(a) and *§II Application and Renewal Application*). Any adoption service provider that does not complete the process prior to its expiration date ceases to be accredited or approved on that date.

COA notifies an adoption service provider sufficiently in advance of its expiration date of the date by which it should file for renewal of its accreditation or approval (see 22 CFR 96.63(c)). This affords the adoption service provider sufficient time for the completion of its renewal process.  An accredited or approved adoption service provider is expected to complete all renewal process milestones in a timely manner and the entire renewal review process prior to its expiration date.

If an accredited or approved adoption service provider does not wish to seek renewal of accreditation or approval, it must immediately notify COA in writing of its intent and take all necessary steps to complete its Convention cases and to transfer its pending Convention cases and adoption records to other accredited or approved providers or to a State archive, as appropriate, under COA's oversight before its accreditation or approval expiration date (see 22 CFR 96.63(a)).

If the accredited or approved adoption service provider elects to seek renewal of its accreditation or approval with a different accrediting entity, it must immediately notify COA in writing of its decision (see 22 CFR 96.63(b)).

Upon receipt of the adoption service provider's renewal application, COA confirms the accreditation or approval fee in an accreditation or approval agreement.  The fee to undergo the renewal process is based on the fee schedule in effect at the time of signing the accreditation or approval agreement (see also *§III Accreditation or Approval Fees* and *§IV Accreditation or Approval Agreements*).

COA evaluates an adoption service provider's seeking renewal of accreditation or approval by applying the Hague standards in effect at the time the adoption service provider submits its renewal application.

In addition, COA will consider an accredited or approved adoption service provider's actual performance during the previous accreditation or approval cycle including its annual

attestation and supporting documentation, semi-annual reports on complaints it has received, and substantiated complaints for the purposes of renewal of accreditation or approval decisions (see 22 CFR 96.24(b)(3)). Consistent with 22 CFR 96.63(d), if an adoption service provider has had its accreditation or approval suspended, COA may take the reasons underlying the suspension into account when determining whether to renew the accreditation or approval of the adoption service provider and may refuse to renew the accreditation or approval based on the prior suspension.

An adoption service provider's accreditation or approval is effective for four (4) years, commencing either on the date that the provider's previous accreditation or approval cycle expired or six (6) months from the date of COA's renewal decision, whichever date is sooner.

# XII. Site Visits During the Accreditation or Approval Cycle

*Remedial and compliance assurance site visits enable COA to conduct on-site reviews of adoption service providers during the accreditation or approval cycle. Such site visits are necessary to ensure the adoption service provider's substantial compliance with applicable Hague standards or to further evaluate or ensure the correction of identified deficiencies pursuant to a corrective action or other adverse action (see 22 CFR 96.66(b)).*

## A. Remedial or Compliance Assurance Site Visits

1. Circumstances

   COA may require a remedial or compliance assurance site visit (see 22 CFR 96.66) for an accredited or approved adoption service provider any time upon receipt of information that the adoption service provider is not maintaining substantial compliance with applicable Hague standards, which is best determined by a site visit.

   In addition, COA may identify, via random selection, adoption service providers to receive a remedial/compliance site visit.

2. Process

   COA may require the adoption service provider to provide pre-site visit materials, as appropriate. COA provides the adoption service provider with reasonable notice of an upcoming remedial or compliance assurance site visit.  The length of the notice depends on the level of compliance with applicable Hague standards, the time necessary to provide the requested pre-site materials, and/or the scope of the remedial or compliance assurance site visit.

<Reserved 5.1.>

   Generally, COA sends one evaluator to conduct a remedial or compliance assurance site visit, but may require more than one evaluator, if that is necessary to review the adoption service provider's level of compliance with applicable Hague standards.

<Reserved 5.2.>

3. Site Visit Report

   Upon receiving the completed rating sheets and comments from the evaluation team, COA prepares a Pre-Commission Report. The Pre-Commission Report is sent to the

adoption service provider for review and response based on guidelines provided by COA.

See *§VII Site Visit* and *§IX Decision-Making* regarding site visit reports and the decision-making process.

4.   <u>Accreditation or Approval Expiration Date</u>

A remedial or compliance assurance site visit does not change the expiration date of the adoption service provider's accreditation or approval.

**B.  Interim Site Visits for Delays to the Accreditation or Approval Review Process (Reserved)**

See *§XIV Delays to the Accreditation or Approval Review Process*. < Reserved>

**C.  Merger or Acquisition Site Visits**

See *§XV Changed Adoption Service Provider Status*.

# XIII:  OPPORTUNITY FOR REVIEW of COA DECISION or INTENT to IMPOSE ADVERSE ACTION

*COA's provides an opportunity for an adoption service provider to submit information for the purposes of demonstrating that COA's decision or intent to impose an adverse action is not warranted and should be withdrawn (see 22 CFR 96.76 and 96.105).*

*Accredited or approved adoption service providers are afforded a fair and impartial written process for challenging a decision by COA that impacts their accreditation or approval status.*

## A.  Opportunity for Review of COA Decisions

An accredited or approved adoption service provider may request a review of the following decisions by COA:

- Notification of intent or decision to take an adverse action (e.g., corrective action, suspension, or cancellation)(see 22 CFR 96.76 and 96.105).
- Notification of intent to refuse the renewal of accreditation or approval as a result of COA's review process, and/or monitoring and oversight activities (see 22 CFR 96.76).

## B.  Time within Which to Request a Review

An accredited or approved adoption service provider that wishes to request a review must submit its request and all supporting material(s) to COA within ten (10) business days of the date on which the adoption service provider receives notification from COA.  COA, at its discretion, may consider written requests for reasonable extensions of the ten (10) business-day period.

Unless an extension has been granted, an adoption service provider's failure to request a review within ten (10) business days will result in the adoption service provider's loss of the opportunity for review.

## C. Content of and Filing a Request for Review

A written request for review and all supporting material must be sent to the following address by a method requiring signature on delivery (*e.g.*, certified mail or UPS delivery).

President/CEO
Council on Accreditation
45 Broadway, 29th Floor
New York, New York 10006

The adoption service provider's request must contain written grounds for the requested review and all supporting documentation and evidence.

Hague Accreditation and Approval Policies and Procedures Manual

**D.  Grounds for Review**

An accredited or approved adoption service provider may request a review of COA's decision or intent to take action for either of the following reasons (see 22 CFR 96.76):

- The adoption service provider disagrees with COA's application of the substantial compliance system to its performance as set forth in the notification letter pertaining to the adverse action.
- The adoption service provider contends that COA failed to consider information or materials, which, in its opinion, should have been considered during the accreditation or approval monitoring cycle or the accreditation or approval renewal process.

The adoption service provider must identify the grounds for the review request and the specific information that supports these grounds.

**E.  Timing and Method for Review**

  1.  Review of Received Requests

  COA reviews the request for review no later than fifteen (15) business days after it receives the adoption service provider's written request, supporting documents and/or evidence. If additional information is required, COA will notify the adoption service provider; COA will review the additional information no later than fifteen (15) business days after receipt of the new information.

  2.  Method of Review

  The designated review panel either meets in person or by conference call, or COA's President/CEO polls the individual members.

**F.  COA Review Panels**

  1.  Review Panel Composition

  COA's President/CEO designates a review panel composed of three persons, each of whom is a Commissioner, evaluator, or COA senior manager.

  2.  Conflict of Interest

  An individual must recuse himself/herself from a review panel if there would be an actual or perceived conflict of interest.  An individual who participated in any way in the underlying accreditation, approval, or renewal of accreditation or approval decision-making process is considered to have a conflict of interest.

## G.  Review Decision

1.  <u>Possible Review Decisions</u>

    The review panel either:

    a.  upholds the underlying decision to take an action or continue an imposed action; or
    b.  overturns the underlying decision to take an action or continue an imposed action.

2.  <u>Upheld Decisions</u>

    When the review panel upholds the original decision or intent to take an action, COA's President/CEO notifies the adoption service provider of the review outcome. This written notification contains the effective date for imposing the action as, appropriate.

3.  <u>Overturned Decisions</u>

    When the review panel overturns the original decision or intent to take an action, it provides a written explanation for its decision to COA's President/CEO. COA then notifies in writing the adoption service provider of the decision. The notification letter informs the adoption service provider of the effective date for withdrawal of an action already in effect, as appropriate.

## H.  Standard of Review and Requirement of Unanimity

The review panel must determine whether the alleged conduct, condition, or situation supports the decision or intent to impose an action, and, if so, whether the adoption service provider has presented information that would undermine such a determination, based on the underlying documentation and the adoption service provider's written arguments and evidence.

Review of the adoption service provider's request requires the participation and vote of all three (3) designated panel individuals.   The decision of an appeal review panel requires a two-thirds majority vote.

Action by a review panel is final and not subject to further review.

## I.  Content of the Deliberations and Review Panel Vote

The content of all review deliberations, including the individual votes of the review panel members, is confidential.  COA does not consider the deliberations or votes to be public information, nor does COA disclose them to the party requesting review.  Review decisions are also governed by *§XVI Confidentiality and Disclosure of Information* and in accordance with 22 CFR 96.26.

**J.   Request for Review Expenses**

Costs and expenses incurred by an accredited or approved adoption service provider as part of pursuing a request for review, including attorney fees, if any, are the adoption service provider's full responsibility.

**K.   Limitation of Liability**

COA's officers, directors, personnel, evaluators, commissioners, and other persons involved in the accreditation and/or approval decision-making processes shall not be liable to an adoption service provider for its failure to achieve or maintain accreditation and/or approval, even when the failure is temporary (*e.g.*, when a decision is modified as the result of a request for review or other review process).

# XIV: Delays to the Accreditation or Approval Review Process

<Reserved>

# XV:  Adoption Service Provider Changed Status

*Where consistent with 22 CFR 96, an adoption service provider ceases to be accredited or approved by COA in the event of any of the following:*

- *Closure of the adoption service provider*
- *Discontinuation of all Convention adoption services*
- *Merger or acquisition*

*An adoption service provider that is no longer accredited or approved by COA is not entitled to hold itself out as Hague accredited or approved and is expected to take reasonable steps not to mislead its stakeholders or the public.   An adoption service provider's former accredited or approved status and change in status is public information.*

## A.  Closure of an Adoption Service Provider

1.  <u>Notification</u>

   An accredited or approved adoption service provider must notify COA no later than forty-eight (48) hours of its formal decision to close providing the effective date of the closure (see 22 CFR 96.42).   The accredited/approved adoption service provider must detail in writing to COA all steps it intends to take to complete or transfer its pending Convention cases and Convention adoption case records to other accredited agencies, approved persons, or an appropriate custodian (see 22 CFR 96.42).

   An adoption service provider that closes or ceases to operate is not eligible to continue as an accredited or approved adoption service provider.

2.  <u>Reimbursement of Fees by COA</u>

   An adoption service provider that closes is not entitled to reimbursement of any paid accreditation, approval or monitoring and oversight fees.

3.  <u>Future Eligibility</u>
   An adoption service provider that closes may reapply for accreditation or approval, in accordance with the procedures of 22 CFR 96, if it later reopens and resumes provision of such services.

4.  <u>Disclosure of Accredited or Approved Status</u>

a.  Adoption Service Provider Responsibilities

An adoption service provider that plans to cease operating will be prohibited from holding itself out as accredited or approved. An adoption service provider that ceases to operate is also prohibited from holding itself out as accredited or approved.  Adoption service providers must take steps to prevent stakeholder confusion, including, but not limited to:

–  Notifying all staff and volunteers of the change in its accredited or approved status
–  Taking purposeful actions to prevent or mitigate any stakeholder confusion about or adverse impact from closure
–  Discontinuing all references to Hague Convention accreditation or approval on stationery, a website, or on adoption service provider literature
–  Removing any written references and symbols of Hague Convention accreditation or approval

b.  COA Actions

COA will remove an adoption service provider's name from any publications or other listings of accredited or approved adoption service providers upon the effective date of the adoption service provider's closure.  An adoption service provider's former accredited or approved status and the reason(s) for the status change is public information.

COA will inform the U.S. Department of State of the adoption service provider's closure (see 22 CFR 96.93).

**B. Discontinuation of Adoption Services**

a.  <u>Notification</u>

An accredited or approved adoption service provider must notify COA no later than forty-eight (48) hours of its formal decision to cease providing any adoption service(s) in Convention cases, providing the effective date of the discontinuation (see 22 CFR 96.2  for definition of "adoption service"). An accredited or approved adoption service provider should notify COA in connection with any decision to cease providing a specific adoption service or services, to cease providing services in a particular Convention country(ies), and/or to cease providing services in connection with either incoming or outgoing cases altogether.

The accredited or approved adoption service provider must detail in writing to COA all steps it intends to take to complete or transfer any pending Convention cases and

Convention adoption case records to other accredited agencies, approved persons, or an appropriate custodian, as appropriate (see 22 CFR 96.42).

An adoption service provider is not eligible to continue as an accredited or approved adoption service provider if it ceases to provide all adoption services.

b.  <u>Reimbursement of Fees by COA</u>

An adoption service provider that discontinues all or any Convention adoption services is not entitled to reimbursement of any paid accreditation, approval or monitoring and oversight fees.

c.  <u>Future Eligibility</u>

An adoption service provider that discontinues all or any Convention adoption services may reapply for accreditation or approval, in accordance with the procedures of 22 CFR 96, if it later resumes provision of such services.

d.  <u>Disclosure of Accredited or Approved Status</u>

a.  Adoption Service Provider Responsibilities

An adoption service provider that discontinues all or any Convention country adoption service is prohibited from holding itself out as accredited or approved to provide such services and must take steps to prevent stakeholder confusion, including, but not limited to:

– Notifying all staff and volunteers of the change in services and, as applicable, any impact on its accredited, or approved status.
– Taking purposeful actions to prevent or mitigate any stakeholder confusion about or adverse impact from the discontinuation of all or any Convention country adoption services.
– Discontinuing all references to Hague Convention accreditation or approval for the discontinued service(s) on stationery, a website, or on adoption service provider literature.
– Removing any written references and symbols of Hague Convention accreditation or approval.

An adoption service provider that ceases to provide adoption services in a specific Convention country (ies) must also take steps to prevent stakeholder confusion, including, but not limited to:

– Notifying all staff and volunteers of the change in adoption services and, as applicable, any impact on its accredited, or approved status

Hague Accreditation and Approval Policies and Procedures Manual

-68-

- Taking purposeful actions to prevent or mitigate any stakeholder confusion about or adverse impact from the discontinuation of a specific Convention country adoption service(s).
- Discontinuing all references to Hague Convention accreditation or approval for the discontinued services on stationery, a website, or on adoption service provider literature.
- Removing any written references and symbols of Hague Convention accreditation or approval.

b.  COA Actions

COA will inform the U.S. Department of State of the adoption service provider's discontinuation of all or any convention adoption service (see 22 CFR 96.93).

## C. Merger or Acquisition

1.  Notification

An applicant for Hague accreditation or approval or an accredited or approved adoption service provider must notify COA within forty-eight (**48**) hours of its formal decision to merge with, acquire, or be acquired by another adoption service provider. It must provide the information required in paragraph 2 below.

Accreditation or approval is not transferable.  An applicant for Hague accreditation or approval, or an accredited or approved adoption service provider that decides to merge with, acquire, or be acquired by an adoption service provider who is not accredited or approved must follow notification procedures in section A or B.

2.  Required Information

| TYPE OF INFORMATION | CONTENT |
|---|---|
| **Identification** of the adoption service provider with which the applicant for Hague accreditation or approval or an accredited or approved ASP has decided to merge with, acquire or be acquired by ("**Other Adoption Service Provider**"). | • Other adoption service provider's name and address.<br>• Whether the other adoption service provider is an applicant for accreditation or approval or is currently accredited or approved by COA or another designated accrediting entity, identifying the other accrediting entity, if any. |
| A detailed **narrative** that | • The reasons for the merger/acquisition. |

| TYPE OF INFORMATION | CONTENT |
|---|---|
| explains the **reasons for** and the **expected impact of** the merger/acquisition. | <ul><li>The extent to which the merger/acquisition will result in a significant change in the delivery of adoption services (*e.g.*, new or discontinued services and policies).</li><li>The extent to which the merger/acquisition will have a significant impact on the successor adoption service provider's financial position.</li><li>The impact of the merger/acquisition on existing adoption cases.</li><li>Change(s) in country programs and fees.</li></ul> |
| Additional information to be provided post-notification to COA regarding the merger or acquisition | <ul><li>A copy of the amended by-laws, "articles of incorporation," or other comparable, legally effective statements of the merger/ acquisition, as soon as available (to update documents previously provided to COA and to describe the new entity).</li><li>Copies of all required licenses for the successor adoption service provider, with written confirmation from the applicable regulatory authorities confirming the status of the required licenses (after merger/acquisition).</li></ul> |
| Additional information about the **other adoption service provider's** programs (an adoption service provider who is not accredited or approved or an applicant for Hague accreditation may not have some of the required content). | <ul><li>A description of the adoption services being provided by the other adoption service provider at the time of the formal decision to merge/acquire (enclosing copies of descriptive service brochures).</li><li>The other adoption service provider's most recent annual report.</li><li>The other adoption service provider's most recent financial audit (with management letter), if applicable.</li><li>Revised Organizational Chart, identifying those management positions that will be filled by management of the other adoption service provider.</li><li>An explanation of the extent to which the merger/acquisition will significantly impact the job responsibilities of non-</li></ul> |

Hague Accreditation and Approval Policies and Procedures Manual

-70-

| TYPE OF INFORMATION | CONTENT |
|---|---|
|  | management staff.<br>• If applicable, written confirmation from the other accrediting entity to the services for which the other adoption service provider is seeking accreditation or approval and the other adoption service provider's applicant status at the time of the formal decision to merge/acquire. |

3.  <u>Additional Requirements</u>

After reviewing the written information required in paragraph (2) above, COA notifies the adoption service provider and/or successor adoption service provider of the need for:

a.  Additional information
b.  A site visit
c.  rescheduling of a site visit date as a result of the merger/acquisition

<Reserved 6.>

COA may reassess the applicant's accreditation and approval process and schedule for a site visit based on the review of requested information.

COA will inform the adoption service provider of all applicable Hague standards that should a site visit be necessary due to the merger/ acquisition decision or activity. See *§VII Site Visit* and *§IX Decision-Making* regarding site visit reports and the decision-making process.

COA provides an adoption service provider with reasonable notice of a required site visit and has the discretion to require the adoption service provider to provide pre-site visit material. Reasonable notice for the site visit depends on the site visit's scope and the time necessary to provide the requested pre-site visit material.

COA will assign two (2) evaluators to conduct the review and will send at least one (1) evaluator to conduct the merger/acquisition site visit.  COA reserves the right to assign more than one evaluator to conduct the site visit if necessary.

4.  <u>Issuance of New Certificate</u>

<Reserved>

Hague Accreditation and Approval Policies and Procedures Manual

COA issues a certificate in the successor adoption service provider's name after the accredited or approved adoption service provider or successor adoption service provider demonstrates the successor adoption service provider's substantial compliance with applicable Hague standards.

# XVI:  Confidentiality and Disclosure of Information

*COA maintains and protects information learned, accessed, received or created during the accreditation or approval process consistent with the Convention, the IAA, and the regulations implementing the IAA and other applicable laws, including but not limited to, laws required to protect children from serious harm or injury.*

*COA protects all information and documents (including, but not limited to, documents and proprietary information) of the adoption service provider from unauthorized use or disclosure by applying reasonable and appropriate administrative procedures, physical safeguards and technical security mechanisms. All COA workforce members, volunteers and, as applicable, business associates are required to sign a confidentiality agreement upon joining the workforce or providing contracted services to COA.*

*The accreditation or approval process and the COA relationship with either an accredited/approved adoption service provider or adoption service provider, first-time applicant, re-applicant, or applicant for renewal is of a confidential nature, except for disclosure of information about accreditation or approval review decisions and information about the current status of an applicant, or about an adoption service provider that is currently or has been formerly accredited or approved.*

*COA provides the public with access to information concerning an adoption service provider's accredited or approved status, including any adverse actions taken, the reason(s) for the adverse action, and substantiated complaints against accredited/approved adoption service providers. Dissemination of information to the public on the accredited and approved status of adoption services providers is governed by 22 CFR 96.91and 96.92.*

## A.  Confidential Information

1.  <u>Introduction</u>

COA holds in confidence all information learned, accessed, received, or created about adoption service providers during the accreditation or approval review process, accreditation or approval cycle (i.e., monitoring and oversight activities), re-application and renewal, except under the following circumstances:

-   As authorized in the accreditation or approval agreement
-   As authorized in a written consent, release, or request for disclosure
-   As required by law, including applicable state and federal laws

- As required to be reported by COA's agreement with the U.S. Department of State, the IAA, or the regulations implementing the IAA
- Upon receipt of reliable information that raises a serious concern about the adoption service provider's substantial compliance with applicable Hague standards
- To the extent necessary to conduct investigative activities per 22 CFR 96.71(b)(2)
- As otherwise permitted in the *Hague Accreditation and Approval Policies and Procedures Manual*

2. <u>Information Acquired in the Course of Accreditation/Approval Review, Renewal, and During an Accreditation/Approval Cycle through Monitoring and Oversight Activities</u>

Information accessed, learned, collected, and created about an adoption service provider in the course of an accreditation/approval review process, during a accreditation/approval cycle (i.e., monitoring and oversight activities), or renewal review process includes, but is not limited to, the following:

- Financial information
- Data, documents, reports, and narrative descriptions about management and professional practices
- Ratings and evaluator comments
- Forms and evaluations
- Legal and regulatory compliance information
- Public comment information received on the adoption service provider[3]
- Decision-making and deliberation records, including work notes or votes
  COA staff notes and records referencing such information in any way
- Other information that would not have been available but for the accreditation or approval review, monitoring or oversight (including complaint investigation), first-time application, re-application and application for renewal.

Subject to paragraph 1 above, COA considers the above information confidential. COA requires that the information and its contents be discussed only as necessary among individuals participating in accreditation, approval, renewal, monitoring and oversight activities, or as required by COA's memorandum of agreement with the U.S. Department of State.

3. <u>Limited Use of Documents and Proprietary Information/Right to Use Non-Identifying Data</u>

---

[3] COA, as required by its memorandum of agreement with the U.S. Department of State, posts on its website the names of first-time applicants, re-applicants, and applicants for renewal of accreditation or approval for the purpose of soliciting public comment about the adoption service provider.

Hague Accreditation and Approval Policies and Procedures Manual

-74-

Any appropriation or use of an adoption service provider's proprietary information by COA, including by its evaluators, Commissioners, or anyone else engaged in the accreditation or approval review process on behalf of COA, requires the prior, written consent of the individual adoption service provider or the president/chief executive officer or chief administrator.  The consent must describe the intended purpose for the appropriation or other use.

Notwithstanding the above consent requirement for use of an adoption service provider's self-study material, COA has the authority to extract non-identifying adoption service provider information submitted as part of the application, self-study tools, monitoring or oversight reports of accredited/approved adoption service providers, and initial and final accreditation or approval ratings, for internal study/ analysis and for publication or other disclosure in the aggregate ("de-identified"), without obtaining the adoption service provider's permission or consent, provided COA's President/CEO has authorized such extraction or disclosure.

4. Evaluation Team and Commission Deliberations

Except as otherwise provided for in these policies and procedures, the deliberations of the evaluator team and the Commission, including any written notes reflecting the accreditation or approval decision-making process, are confidential, except that any and all such materials may be provided to the U.S. Department of State at any time.

5. Information Retention

COA maintains an accurate record of the adoption service provider's application, supporting documentation, and the basis for its decision-making. COA retains records of the adoption service provider's application and all information supporting the decision-making process, including: self-study, the Pre-Commission Report; Final Accreditation/Approval Report; evaluator comments; accreditation/approval cycle documents and correspondence; decision or intent to take adverse action notification(s) or notifications of imposed adverse actions; any actions taken governing denial or deferral; and all corrective action, suspension, or cancellation correspondence and response materials.   The retention of this information is governed by COA's written information retention procedures.

**B. Dissemination of Information to the Public**

1. Public Information

COA makes available to the public on no less than a monthly basis the following information on its website and provides the information to the U.S. Department of State for posting on its website (see subpart M of 22 CFR and 22 CFR 96.91):

- The name, address, and contact information for each accredited or approved adoption service provider.
- The names of adoption service providers denied accreditation or approval that have not subsequently been accredited or approved.
- The names of adoption service providers who have been the subject to withdrawal of temporary accreditation, suspension, cancellation, refusal to renew accreditation or approval, or debarment.
- For an accredited or approved adoption service provider, the effective dates of its accreditation or approval and the adoption services for which it is accredited or approved.
- Information specifically authorized in writing by the accredited or approved adoption service provider.
- Other information available to the public pursuant to the *Hague Accreditation and Approval Policies and Procedures Manual* and governed by subpart M of 22 CFR.

In addition, COA also makes available to the public on no less than a monthly basis on its website the following information (see subpart M of 22 CFR, 22 CFR 96.91, and 96.92):

- The names of adoption service providers that have a pending application for accreditation or approval, and if so, the date of application, whether the application is under active consideration or whether a decision on the application has been deferred.
- The names of the adoption service providers that have been subject to withdrawal of temporary accreditation, suspension, cancellation, refusal to renew accreditation or approval, or debarment, and a brief statement of the reasons for the action(s).
- The names of the adoption service providers that have discontinued their accreditation or approval and the reason for the discontinuation (*e.g.*, voluntary decision to discontinue the accreditation or approval process; voluntarily termination of its accreditation or approval, closure).
- For an accredited or approved adoption service provider, information about the status of adverse actions and the nature of substantiated violations of the Hague standards resulting from investigation of complaints and other monitoring and oversight activities (see 22 CFR 96.92 (b)).

## C.  Disclosure of Information to Others

1.  <u>Disclosure to Evaluators and Commissions</u>

COA has the discretion to share information with evaluators and Commissioners, in addition to self-study and accreditation or approval decision-making documents,

when the information is germane to the accreditation/approval, renewal, or adverse action decision-making processes.

2.   <u>Exchange of Information with Licensing/Regulatory/Governmental Authorities</u>

COA has the authority to disclose necessary information about an applicant or accredited/approved adoption service provider to licensing/regulatory and/or governmental officials, in order to:

a. respond to inquiries;
b. cooperate with investigative activities; and/or
c. conduct investigative activities as per  22 CFR 96.71(b)(2).

COA will report to a state licensing authority any adverse actions taken against an accredited or approved adoption service provider that changes its accreditation or approval status.

Following consultation with the U.S. Department of State and governed by 22 CFR 96.72, COA must refer, as appropriate, to a state licensing authority, Attorney General, or other law enforcement authorities any substantiated complaints that involve conduct that is:

a.   subject to the civil or criminal penalties imposed by section 404 of the IAA;
b.   in violation of the Immigration and Nationality Act; or,
c.   otherwise in violation of federal, state or local law.

3.   Disclosure of Third-Party Information

COA may disclose information obtained from third-parties about an applicant or accredited/approved adoption service provider to other third-parties in order to corroborate information in connection with the accreditation/approval the renewal process, the investigation of complaints pursuant to 22 CFR 96.71, or other processes for which such sharing is necessary and appropriate to fulfill COA's duties under 22 CFR Part 96 and memorandum of agreement between the U.S. Department of State and COA regarding the performance of duties as an accrediting entity under the IAA.

COA also may provide such information obtained from third-parties with the applicant or accredited/approved adoption service provider in order to corroborate such information or permit such applicant or adoption service provider the opportunity to provide an explanation for or response to such information. COA takes the privacy of third-parties seriously and will generally not disclose the source of third-party information.

Hague Accreditation and Approval Policies and Procedures Manual

4.   Serious Conditions

COA personnel, evaluators, Commissioners and trustees may have an ethical responsibility or legal duty to disclose information learned during an accreditation or approval review process to appropriate authorities if the information raises a serious concern about stakeholder health or safety.  The COA representative notifies COA's President/CEO of the situation and the necessary steps to be taken.

5.   State or Other Confidentiality Laws

COA requires adoption service providers to provide COA with copies of any state or federal confidentiality law, which, in the adoption service provider's opinion, prohibits COA from disclosing information pursuant to these procedures. COA's President/ CEO will review the information presented by the adoption service provider and will seek the opinion of legal counsel.

## D.  Dissemination of Information to Adoption Service Providers

1.   Accreditation or Approval Notifications

COA notifies the adoption service provider in writing of their accreditation or approval.

COA provides the adoption service provider a marketing toolkit with sample news releases and letters to use in publicizing its accreditation or approval.

2.   Accreditation or Approval Certificate/Logo

COA provides an accredited or approved adoption service provider with a Hague Convention accreditation or approval certificate for display, as well as copies of a certification mark for use on adoption service provider stationery, while accredited or approved by COA.

If an accredited or approved adoption service provider becomes unaccredited or unapproved, it must not represent itself as an accredited or approved provider during the applicable period.  Specifically, the adoption service provider must discontinue using any documentation that states or implies that it is Hague accredited or approved, including the use of stationery with the Hague Convention certification mark and the display of a Hague Convention certificate.

3.   Accredited or Approved Status Disclosure

In addition to responding to inquiries regarding the accreditation or approval status from individuals, organization, and entities (Part (B)(1)), COA provides lists of

accredited or approved adoption service providers to the media, regulators, funders, and other stakeholders upon receipt of applicable requests, in addition to posting this list on its website.  COA may also list its accredited or approved adoption service providers in its publications, such as its annual report or conference program.

**E.   Reporting to the U.S. Department of State about Accredited/Approved Adoption Service Providers and Their Activities**

1.  Annual and Semi-Annual Reporting

COA submits annual reports to the U.S. Department of State on information it collects from accredited or approved adoption service providers (see 22 CFR 96.93). This information includes:

a.   The total number of intercountry adoptions undertaken (cases involving children immigrating to the United States) by the adoption service provider each year in both Convention and non-Convention cases, and for each case:

   i.   the Convention country or other country from which the child immigrated;
   ii.  the State to which the child immigrated;
   iii. the State, Convention country, or other country in which the adoption was finalized;

   iv.  the age of the child; and,

   v.   the date of the child's placement for adoption.

b.   The total number of intercountry adoptions undertaken (cases involving children emigrating from the United States) by the adoption service provider each year in both Convention and non-Convention cases, and, for each case:

   i.   the State from which the child emigrated;
   ii.  the Convention country or other country to which the child immigrated;
   iii. the State, Convention country, or other country in which the adoption was finalized;
   iv.  the age of the child; and,
   v.   the date of the child's placement for adoption.

c.   For each disrupted placement involving a Convention adoption, information and reports about the disruption, including information on:

   i.   the Convention country from which the child emigrated;
   ii.  the State to which the child immigrated;
   iii. the age of the child;
   iv.  the date of the child's placement for adoption;

Hague Accreditation and Approval Policies and Procedures Manual

-79-

v.   the reason(s) for and resolution(s) of the disruption of the placement for adoption, including information on the child's re-placement for adoption and final legal adoption;

vi.   the names of the agencies or persons that handled the placement for adoption; and,

vii.   the plans for the child.

d.   Wherever possible, for dissolution of each Convention adoption, information and reports on the dissolution, including information on:

i.   the Convention country from which the child emigrated;

ii.   the State to which the child immigrated;

iii.   the age of the child;

iv.   the date of the child's placement for adoption;

v.   the reason(s) for and resolution(s) of the dissolution of the adoption, to the extent known by the adoption service provider;

vi.   the names of the agencies or persons that handled the placement for adoption; and,

vii.   the plans for the child.

e.   information on the shortest, longest, and average length of time it takes to complete a Convention adoption, set forth by the child's country of origin, calculated from the time the child is matched with the prospective adoptive parent(s) until the time the adoption is finalized by a court, excluding any period for appeal.

f.   information on the range of adoption fees, including the lowest, highest, average, and the median of such fees, set forth by the child's country of origin, charged by the adoption service provider for Convention adoptions involving children immigrating to the United States in connection with their adoption.

g.   if the adoption service provider provides adoption services in cases not subject to the Convention that involve a child emigrating from the United States for the purpose of adoption or after an adoption has been finalized, it demonstrates to COA that it has provided such information as required by the U.S. Department of State directly to the U.S. Department of State.

COA submits no less than semi-annual reports to the U.S. Department of State that summarize for the preceding six-month period the following information:

a.   the accreditation and approval status of applicants, accredited agencies, and approved persons;

b.   any instances where it has denied accreditation or approval;

    c.  any adverse actions taken against an accredited or approved adoption service provider;

    d.  all substantiated complaints against accredited or approved adoption service providers and the impact of such complaints on their accreditation or approved status;

    e.  the number, nature, and outcome of complaint investigations carried out by COA, as well as the shortest, longest, average, and median length of time expended to complete complaint investigations; and,

    f.  any discernible patterns in complaints received about specific adoption service providers, as well as any discernible patterns of complaints in the aggregate.

2.  <u>30-Day Reporting</u>

COA reports to the U.S. Department of State within thirty (30) days from the time it learns that an accredited or approved adoption service provider has:

    a.  ceased to provide adoption services; or,

    b.  transferred its Convention cases and adoption records.

3.  <u>Immediate Notification</u>

COA will immediately notify the U.S. Department of State in writing of the following when it:

    a.  accredits or approves an adoption service provider;

    b.  denies an application for accreditation or approval;

    c.  renews the accreditation or approval of an adoption service provider;

    d.  takes an adverse action against an accredited or approved adoption service provider that impacts its accreditation or approval status; or,

    e.  substantiates a complaint that:

        i.  reveals that an accredited or approved service provider has engaged in a pattern of serious, willful, grossly negligent conduct, or has repeatedly failed to comply with the standards; or,

        ii.  indicates that continued accreditation or approval would not be in the best interests of the children and families concerned.

# XVII. Complaints

1. <u>COA's Policy and Procedure for Receipt and Review of Complaints Against Itself</u>

   COA's policy for receiving and reviewing complaints against itself is located in *Hague Accreditation and Approval Policies and Procedures Manual,* under section *XVII. Complaints.* This manual is available on COA's website at: http://www.COAnet.org.

   COA believes in accessible complaint procedures and simply states the process a party needs to take to raise a concern regarding COA's own actions and/or performance as an accrediting entity to COA's attention.

   COA manages and responds to all complaints it receives about its own actions and performance as an accrediting entity for Hague accreditation and approval. Any applicant for accreditation or approval, an accredited or approved adoption service provider, or any other complaining party may make a complaint. All complaints will be dealt with objectively and expeditiously. All complaining parties deserve and will receive conscientious respect.

   A party with a concern about COA is encouraged to speak directly with the person(s) involved in the concern and attempt to resolve the concern through discussion before filing a complaint.  If COA determines the concern is urgent or very serious, COA will not wait to take action until receipt of a written complaint. COA ensures that all urgent issues are brought to the immediate attention of COA's President/CEO.

   In accordance with 22 CFR Part 96.71(e), COA may not take any action to discourage an individual from, or retaliate against an individual for, making a complaint, expressing a grievance, questioning the conduct of, or expressing an opinion about the performance of a Hague accredited or approved adoption service provider or COA as an accrediting entity.

Step 1

Complaints must be submitted in writing and must include: the complainant's name, address, email address and telephone number; and brief description of the situation being complained about (including any COA staff, contractors, or volunteers involved) and the requested remedy.

Complaints can be submitted to COA by any one of the following methods:
email to: the Director of Quality Services Management at: reportaconcern@coanet.org;
mail to: COA, 45 Broadway, 29th Floor, New York, NY 10006, ATTENTION: QSM; or
fax to:  212.797.1428, ATTENTION: QSM:

Step 2

COA will acknowledge in writing the receipt of the complaint.  COA will take reasonable steps to verify the information in the complaint, weighing facts as well as intangible factors to

determine merit of the complaint.  If necessary and appropriate, COA will implement appropriate corrective or improvement actions internally to prevent reoccurrence.

Step 3

COA will provide the complainant a written response to the complaint, generally within thirty (30) calendar days of receipt of the complaint.  If COA is not able to resolve the complaint within that timeframe, COA will explain the reason for the need for additional time and will provide a timeframe for its response to the complainant.

Step 4

If the complainant is dissatisfied with COA's response, he/she may file a complaint directly with the U.S. Department of State, to the attention of the Accrediting Entity Liaison, at: AdoptionUSCA@state.gov or via fax at: 202.736.9080.

Please contact COA's Director of Quality Services Management with any questions about COA's procedure for responding to complaints against itself at: jfulmer@coanet.org or 212-797-3000 ext. 241.

2.  Complaints Received against Evaluators/Site Visit Concerns

   a.   Bringing Forth Evaluator Complaints/Site Visit Concerns

        COA encourages an adoption service provider or other complaining party to bring any complaints or concerns about an evaluator or site visit experience to COA's attention for resolution.   The complaining party may bring an evaluator/site visit complaint or concern to the attention of COA as discussed in the following paragraphs.

   b.   Initiation of Evaluator Complaints/Time Constraints

        An adoption service provider, during or after the site visit, may initiate a complaint against an evaluator(s) due to an occurrence/incident, including evaluator(s) conduct during the site visit process, by first notifying COA verbally of the complaint/concern. All complaints by telephone or e-mail should be directed to COA's Director of Volunteer Services. If the complaint is initially submitted by the methods above, COA will request the complaint in writing.

        A written complaint must:

        –   Describe clearly the evaluator(s) action(s) that are in question.
        –   Be signed by the complaining party (individual adoption service provider or the chief executive officer or chief administrator of an agency).
        –   Be received by COA within ten (10) business days after completion of the site visit.
        –   Be addressed to the attention of COA's Director of Volunteer Services.

Hague Accreditation and Approval Policies and Procedures Manual

-83-

COA does not consider an evaluator complaint as having been filed until the complaining party complies with all of the above requirements.

COA acknowledges the receipt of an evaluator complaint in writing after the adoption service provider complies with all filing requirements.

c.      Requirement of Cooperation

COA expects the complaining party to cooperate with its evaluator complaint procedures (*e.g.*, by responding to any requests).  An adoption service provider's failure to cooperate with the established process is grounds for COA dismissing the evaluator complaint.

d.      Notification of Evaluator/Opportunity to Respond

COA notifies the evaluator of a received complaint in writing by a form of transmission by which COA can demonstrate receipt by the addressee (*e.g.,* certified mail or any other trackable delivery system).   COA provides the evaluator with the opportunity to respond to the evaluator complaint within a specific period of time that is determined by COA.

e.      Complaint Review

COA, upon receipt of a complaint, reviews the complaint and contacts the complaining party with any preliminary questions.  An evaluator complaint is reviewed by COA in a timely manner.  COA reviews all information provided regarding the complaint including, but not limited to, the complaint, supporting material(s), if provided, and the evaluator(s) response.

f.      Possible Decisions/Additional Site Visits

COA either substantiates or does not substantiate a complaint against an evaluator.  When COA does not substantiate a complaint against an evaluator, COA proceeds with the accreditation or approval process.

When COA substantiates an evaluator complaint, COA determines whether the actions of the evaluator(s) require the need for an additional site visit.  The adoption service provider is not charged a fee for any site visit necessitated by evaluator conduct but must cooperate with COA in connection with facilitating an additional site visit.  When COA substantiates an evaluator complaint, COA must set forth as part of the written response to the complaining party the impact of the substantiated evaluator complaint, including whether evaluator actions require the need for an additional site visit.

COA notifies the complaining party and evaluator(s) of its decision in writing.  Complaint decisions by COA are final and not subject to additional review.

# XVIII:  COA Required Posting for the Adoption Service Provider's Website

COA requires all applicants for Hague Accreditation or Approval and applicants for renewal of Hague Accreditation or Approval to post on their own website information explaining how the public may access and provide comment about the adoption service provider's inter-country adoption services.

The posting must be placed on the adoption service provider's website within thirty (**30**) calendar days from the date on which the adoption service provider has signed the accreditation/approval agreement.

The posting may be removed from the adoption service provider's website upon date of notification from COA of the adoption service provider's accreditation or approval or renewal of accreditation or approval.

The posting must be displayed in a conspicuous location on the main page of the adoption service provider's website.

This posting must be in the following standardized format:

**PUBLIC COMMENT OPPORTUNITY**

**The Council on Accreditation (COA), a national accrediting body approved by the United States Department of State to conduct Hague accreditation and approval reviews, invites the public to provide comment on intercountry adoption service providers seeking Hague accreditation or approval or renewal of Hague accreditation or approval. You may provide comment by clicking on: <link to be inserted by COA>.**

# XIX. COA WEB-BASED ACCREDITATION/APPROVAL

Effective April 1, 2012, COA's accreditation/approval and renewal of accreditation/approval processes, inclusive of all phases, will be an online process.  All consumers that apply for accreditation/approval or renewal beginning August 13, 2012 must submit all accreditation related documents and information via their assigned MyCOA Portal accounts.

Only employees of an applicant seeking Hague accreditation/approval or renewal of Hague accreditation/approval are eligible to receive MyCOA Portal accounts.

All consumers that are in-process on April 1, 2012 will transition to an online process based on their self-study due dates.